you who filed a report of concern, nor am I able to release any information except that which you provided to us directly; as we did not interview you as part of our investigation, there is little information that I am able to release to you.

However I can tell you the following: <u>our office has received only one report, on January 18, 2012, listing you as the alleged perpetrator of elder abuse, against your mother, Carol Oulton. There were no accompanying police reports. We investigated the allegations against you, but they were unsubstantiated</u> (emphasis added).

386.    On May 31, 2013, Attorney Sweeney-2 filed a bond in the matter of the Estate of

Donald. He fraudulently estimated the value of personal estate at $30,000 (**Exhibit 118**)

because, although he is the author of Donald's Will, he and others have refused to honor

Donald's last wishes, including the 30-Day Survivorship Clause in Donald's Will..

387.    On June 3, 2013, Plaintiff mailed a second letter (**Exhibit 119**) to April Evans at

Springwell Protective Agency. This letter requested three additional pieces of information as

follows:

1. Given that nobody from Springwell contacted me to discuss the complaint that was filed against me, how did Springwell investigate the allegations that were made against me and determine that they were unsubstantiated?

2. Did Springwell notify the Reporting Party ("RP") that the investigation conducted by Springwell concluded that the allegations against me were unsubstantiated?

3. If Springwell did, in fact, notify the RP of the results of the investigation, on what date and through what medium (mail, telephone, email, etc.) were the results of the Springwell's investigation of me transmitted to the RP?

388.    Note that Plaintiff was never contacted by the investigative authority, even

though the complaint against Sarah came from a mandated reporter.

95

389.    On June 6, 2013, April Evans of Springwell mailed Plaintiff a letter (Exhibit 120)
in response to her June 3, 2013, letter requesting further information. The letter stated as
follows:

> 1. An investigation was completed in your mother's case;
> collateral sources of information were interviewed and provided
> information leading to our unsubstantiation of the case.
>
> 2. Springwell is required to alert mandated reporters to the
> outcome of the investigation that was based on their report. Non
> mandated reporters may or may not receive a follow up from
> Springwell, depending on many factors. I am not able to tell you
> who made the report to Springwell and thus cannot tell you
> whether or not we alerted them to the outcome.
>
> 3. I can only answer this question by repeating the information
> above in number two. Sometimes we alert reporters to the
> outcome by phone, sometimes by email, sometimes by letter,
> sometimes in person, and, as stated above, sometimes not at all.

390.    On June 10, 2013, a Petition for Appointment of Special Personal Representative

(Exhibit 121) was filed by Attorney Masterson in the matter of the estate of Carol Oulton, on

behalf of creditor Colonial Health Group-Westridge, LLC. The petition states that to protect the

short statute of limitations, in regard to creditors, the creditor seeks the appointment of a special

personal representative given that both the petition for informal probate and the petition for

formal probate are objected to and thus there will be a delay in the appointment of a personal

representative. The petition also states that a bond without sureties has been filed and is

permissible because the Will waives sureties on the bond and no interested person has demanded

that a bond with sureties be filed.

391.    In contrast with Masterson's false statement, Plaintiff had asked for a bond to be

filed.

392.    On June 10, 2013, Probate of Donald's Will (allegedly executed on June 28, 2000) commenced (Exhibit 122), after Attorney Sweeney-2 filed for formal probate and appointment of personal representative. Again Sweeney is desperately seeking to be appointed PR of one of the Oultons' estates, despite the wills having a named executor.

393.    Note that Attorney Sweeney-2 probated the Will of Donald on the same day that the Defendants moved to appoint Attorney Couture as Special Personal Representative, almost 7 months after the Oultons had passed away.

394.    As of the present date, no Personal Representative has been appointed for the Estate of Donald. Attorney Sweeney-2 is currently the "Proposed Fiduciary."

395.    **Key issues with Donald's Probate File** are that

(1) the dates on Will and Codicil are handwritten without initials of Dad;

(2) Sweeney and Moylan purposely state in their petitions to the Court that the children are not devisees under the Will when, in fact, ONLY the children inherit under Dad's Will because Mom did not survive him by 30 days, as is required under Paragraph Seven of the Will that Sweeney drafted for Dad; and

(3) Judge Abber wrote that Mom's Probate must be closed completely before Dad's can proceed; and

(4) the ink used in the date appears to be different from that used in the rest of the document.

396.    On July 17, 2013, Attorney O'Regan and Susan Searles mailed Plaintiff affidavits (**Exhibit 123**) in regards to the telephone conversations with Michael Lincoln. The affidavit of O'Regan states that Michael Lincoln stated that there were no restrictions on Plaintiff's ability to visit her parents.

397.    NOTE – of key importance is that Lincoln, is his call to O'Regan on February 23, 2012, never mentioned the alleged January 18, 2012, incident at Marlborough Hills. Instead,

97

Lincoln informed Attorney O'Regan that there was no problem with Plaintiff visiting her parents.

398.    On July 19, 2013, Attorney Couture filed a bond with corporate surety (**Exhibit 124**) Bond # 1000962445 with the Middlesex Probate and Family court in docket # MI13P1828EA In re the estate of Carol Oulton. The bond states that the estimated value of personal estate is $250,000.

399.    Of importance to note is that the bond filed by Attorney Couture was not paid at the time he filed it and, in fact, Attorney Couture paid this bond with assets of the Estate of Carol.

400.    On July 19, 2013, an invoice (**Exhibit 125**) from A.A. Dority to Couture, was sent to Michael Couture. On this invoice Michael Couture handwrote "Pay from Executor Estate Account" The Bond Invoice says, "This is an annually renewable premium. Court judgment needed to release bond."

401.    On July 22, 2013, an outstanding invoice (**Exhibit 126** ) from Clifford G. Risk, M.D. was sent to Carol Jane Oulton at 54 Macarthur and then (by hand) forwarded to Carol B. Hladick at 20 Causeway Street, Medway, MA. The invoice billed for a procedure on December 5, 2012. —The charges on the invoice are as follows: $300..00 — Paid by Primary: $0.00 — Paid by Secondary: $111.86 — Adjustments: $136.86 — Total Due: $51.28.

402.    Note that the date of last payment by insurance company was May 18, 2013. This shows, yet again, that the Oultons had not been paying their bills on time, contrary to the fallacious statements of the Defendants above.

98

403.   On July 25, 2013, a hearing was held before Judge DiGangi at the Middlesex

County Probate and family Court (Exhibit 127). The parties at the hearing were sworn and

stated the following under oath:

**JEROME SWEENEY**: I'm, an attorney and I'm, uh, opposing the, uh, Petition but
I'm also asking to be the, uh, Personal Representative. I was the author of the Wills, the
Codicils, and named in the, uh, Wills as the... nominated to be the, uh...

**JUDGE DIGANGI**: Personal?

**JEROME SWEENEY**: Personal Representative.

**JUDGE DIGANGI** [ADDRESSING **MICHAEL COUTURE**]: And you, please?
What's your involvement in this case?

**DEBORAH MASTERSON**: This is **ATTORNEY COUTURE**. He is the proposed
SPR.

**JUDGE DIGANGI**: Okay. And you?

**DEBORAH MASTERSON**: I am the counsel for the creditor. My name is
**DEBORAH MASTERSON**.

**SARAH OULTON**: And I'll make one other correction to his introductory remark.
The... he's not the named Personal Representative or Executor in the Will that's
currently been filed. The most recent Will, executed on April 19, 2001, named another
attorney [REFERRING TO **GERARD MAHANEY**] as the Executor of my mom's
estate.

**JEROME SWEENEY**: That's not correct, Your Honor. I think the, uh, issue here is
the Codicil of the deceased, uh, was in some, uh, contention because of a scrivener's
error that put the date of it different than the signature date on the, uh, Codicil. And the
reason was that both were prepared together – husband and wife – and then the
reference was made to the date on the husband's signature. That date was thought to be
they signed them together but they didn't. The wife signed them nine months later. But
both Codicils were signed properly except that the dates were not identical.

**JUDGE DIGANGI**: What's before me today?

**DEBORAH MASTERSON**: What's before you today, Your Honor, is I represent the
creditor. And there are dueling cross-petitions for formal probate, both of which have
been objected to. I want to get on with filing my suit to protect my statute of
limitations. Marlborough Hills, uh, filed nursing, uh, gave nursing home services to
both Mr. and Mrs. Oulton. They both died within a week of each other, um, and so I'm
trying to perfect my client's right to be paid. We're owed over seventy thousand dollars
($70,000). Nothing's going to happen with these dueling cross-petitions that have been

99

objected to. Um, I'm proposing Attorney **MICHAEL COUTURE**, who has filed a corporate bond for two hundred and fifty thousand dollars ($250,000). It's a temporary appointment for ninety (90) days, as you know. An SPR has to be renewed every ninety (90) days. Um, my understanding is that Attorney Sweeney's objecting because he thinks he should be the SPR and um, Ms. Oulton is objecting because she doesn't even think it should be heard today. So I don't know how you want to go about this. We're all here. The other Oulton siblings are here. I'd like it to be heard today but she does have a Motion, so I don't know....

**JEROME SWEENEY:** Your Honor, I would like to have this thing ended today. I thought that it would be appropriate that I be the Special Personal Representative because I hoped to be the Personal Representative and I have no opposition to the payment of this bill to the creditor. I wish to get it paid immediately and go forward with it and end this thing. I certainly do oppose any continuance or extension. I received this....

**JUDGE DIGANGI:** Well let me hear her Motion first and then I'll let you respond to her Motion, okay? Let's put things in order. So what do you want to, why should this be continued?

**SARAH OULTON:** Well, I'll preface this by saying I am a former client of **JEROME SWEENEY** the Second, Your Honor, and I have not waived my Attorney-Client Privilege with this attorney, nor have I given up my right to the Duty of Confidentiality that he owes me under the law. Furthermore, pursuant to the Rules of Professional Conduct I have not waived my right or given him consent to represent the other Devisees in this matter, which, through his actions, he has done up until this point. They have conspired, since the admission of my parents to the nursing home, to remove me from the lives of my parents. And I heard you speak [REFERRING TO A HEARING HELD BEFORE **JUDGE DIGANGI** EARLIER IN THE DAY], just a while ago, about a dad who was not allowed to see the son when there was no Order in effect. Similarly, there was never a court order in effect barring me from the relationship with my parents. Rather, they effected that separation of my mom and dad and me through defamatory statements, fraud....

**JUDGE DIGANGI:** I can't un-ring a bell.

**SARAH OULTON:** I understand that, Your Honor.

**JUDGE DIGANGI:** What do you want me to do about that?

**SARAH OULTON:** Well, but, because they utilized that so that they can split the estate into an estate divided by three rather than by four, which was in accordance with the testator's wishes, under the Wills that this gentleman [POINTING TO **JEROME SWEENEY**] drafted. And Your Honor, furthermore, during the course of my parents'' hospitalization at Marlborough Hills, my dad was in the Alzheimer's Unit and my mother was who knows where? She had been, experienced at least two comas and a drug overdose administered by the hospital. I'd like to continue this so that evidence

related to these matters can be introduced. And furthermore, they executed Powers of Attorney giving my sister the authority to sign the house over to whomever she wanted and up until now, again, I just discovered this evidence last night but the POAs should be voidable, or are voidable, due to the incapacity of my parents at time that they executed them.

**JUDGE DIGANGI:** In reality. I can understand where somebody might say there might be a conflict of interest in this case. Is it im.... I don't know that it's imperative that you be the PR in this case. I think what's imperative that we move this case along.

**JEROME SWEENEY:** I agree with you 100%, Your Honor.

**JUDGE DIGANGI:** And I, I, uh, you know, I don't doubt your credentials. And I'm not, uh, this isn't an aspersion, I'm not casting any aspersions on your integrity or any.... I just want to avoid, uh, the image of impropriety, so to speak. And, again, it's no reflection on you, sir.

**JEROME SWEENEY:** I understand that, Your Honor....

**JUDGE DIGANGI:** But I think, to keep this clean, I think we need to get somebody else.

**JUDGE DIGANGI:** How does this gentleman come into this case? You found him, or... ?

**DEBORAH MASTERSON:** I, I suggested... [ADDRESSING **MICHAEL COUTURE**] Do you want me to answer that?

**MICHAEL COUTURE:** Well, I was nominated by the creditor's attorney, by Attorney Masterson. I'm an independent party. I don't know the family.

**JUDGE DIGANGI:** You're an attorney, sir?

**MICHAEL COUTURE:** I'm an attorney.

**DEBORAH MASTERSON:** Okay, well, so then, I, I'm thrilled to hear that you're, you'll, you're gonna want to hear my Motion. I think that an SPR is in order. Obviously there's a lot of intra-family disputes and while they're playing out and trying to decide who is the appropriate PR in the Will I wanna get on with my filing of the suit. You should also know that I had asked Attorney Sweeney to file the will of Mister Oulton which, there was a big delay in that.... I believe it has been filed? I think that this is all gonna play out also in Mr. Oulton's estate so I was hoping to get both Mr. and Mrs. Oulton's bill paid from Mrs. Oulton's estate. So I don't know if the cases should be consolidated? I know it's not on today. I don't know whether I'm going to be moving for an SPR in that. I'm, I'm just trying to keep costs down. I, I, he [POINTING TO **MICHAEL COUTURE**] has no dog in the race. I just wanna...

**JUDGE DIGANGI:** [TO **MICHAEL COUTURE**] Are you sure you want to be involved in this?

**MICHAEL COUTURE:** I am up for the challenge.

**SARAH OULTON:** Your Honor, if I may please be heard? As I mentioned, there were Powers of Attorney granting powers to transfer the property through fraudulent....

**JUDGE DIGANGI:** I'm not hearing the case today, Ma'am.

**SARAH OULTON:** I understand. But it's imperative that you know, from my perspective, please, that this gentleman [gesturing to **MICHAEL COUTURE**] is not a disinterested third party. He's the classmate of [JASON PORT] the lawyer who put that whole scheme together, Your Honor, and I don't trust, I've not seen, as a Devisee, I've not seen...

**JUDGE DIGANGI:** Do you know anything that she's talking about?

**SARAH OULTON:** ... as a Devisee under the Will.... [LOOKING AT **MICHAEL COUTURE**]... you're a friend of **JASON PORT**...

**MICHAEL COUTURE:** I am not a friend, I am not a friend of Jason Port's [LAUGHING]

**SARAH OULTON:** Well, that's not what I understand.

**JUDGE DIGANGI:** Okay, folks....

**JEROME SWEENEY:** Your Honor, I withdraw my objection to him [GESTURING TO **MICHAEL COUTURE**] being appointed as Special Personal Representative.

**SARAH OULTON:** May I be heard on one other matter, Your Honor?

**JUDGE DIGANGI:** Yes, Ma'am.

**SARAH OULTON:** Because, truly, through their campaign of defamation, which they will be held accountable for in another forum, and I'll file Motions to Strike with this Honorable Court to deal with those defamatory statements and lies, um, through that, they effectively barred me from seeing my folks. They kept me from attending the funerals. Again, no Court Order in place. No history that anyone can prove. It's simply that three children got together and said, "Let's exclude the fourth.... "

**JUDGE DIGANGI:** Well, that might've been the wishes of your parents. I don't know.

**SARAH OULTON:** But if it were, Your Honor, they were surrounded by lawyers during the last 14 months of their lives....

**JUDGE DIGANGI:** So what?

**SARAH OULTON**: They never disinherited me from the Will. They had ample opportunity....

**JUDGE DIGANGI**: What does the Will provide you?

**SARAH OULTON**: It provides me with an equal portion of the estate.

**JUDGE DIGANGI**: Okay.

**JEROME SWEENEY**: It was never changed!

**JUDGE DIGANGI**: Allright.

**SARAH OULTON**: It was never changed, and Your Honor....

**JUDGE DIGANGI**: So what are you contesting?

**SARAH OULTON**: What I'm contesting is that they've already sold the house, they've distributed all of the personal effects, they've made *inter vivos* transfers, they've avoided the hotch-potting of the estate, and I have not been notified of any of those actions that they've taken.....

**JUDGE DIGANGI**: Did they, has she been given any Accounting?

**SARAH OULTON**: No.

**JUDGE DIGANGI**: Have any Accountings been filed? Nobody's been appointed yet.

**JEROME SWEENEY**: Nobody's been appointed yet, Your Honor. This was all done with their wishes and it was done while they were still alive. [LAUGHS]

**SARAH OULTON**: But under the law the Devisees were to be notified of the distribution of the estate, Your Honor.

**DEBORAH MASTERSON**: Your Honor, I want to say that the Police Report is in the Creditor's Affidavit and the facility did issue a No Trespass Order because of her antics and it was at the suggestion of the Marlborough Police Department.

**SARAH OULTON**: And I will, Your Honor...

**JUDGE DIGANGI**: PLEASE. I'm not trying the case today. There are only a couple of Motions in front of me. I have other people waiting. I'm going to appoint this gentleman [POINTING TO **MICHAEL COUTURE**] as the, uh, Personal Representative. Period of 90 days. He has a bond ready?

**DEBORAH MASTERSON**: Yes, it's with you, Your Honor. Corporate.

**JUDGE DIGANGI**: Allright, and you have, uh, your Motion to be heard or I'm gonna accept your...

*Oulton v. Illadick, et al. – Verified Complaint and Demand for Jury Trial*

**DEBORAH MASTERSON**: I do, and I have a Proposed Order.

**JUDGE DIGANGI**: Allright then. Mr. Couture, Attorney Couture is appointed.

**SARAH OULTON**: May I ask you a question, Your Honor?

**JUDGE DIGANGI**: Yes, Ma'am.

**SARAH OULTON**: With respect to the Accounting, then?

**JUDGE DIGANGI**: Yes?

**SARAH OULTON**: When will I receive an Accounting?

**JUDGE DIGANGI**: When you're entitled to it.

404.     None of the Defendants in this matter have, to date, ever answered Plaintiff's questions regarding the delay in probating the Will of Donald.

405.     The Defendants willfully and knowingly violated the 30-Day Survivorship Clause in the Will of Donald and they refused – until they learned of this lawsuit – to submit even one Accounting to the Middlesex County Probate and Family Court in either the Estate of Carol or the Estate of Donald.

406.     As of the filing date of this lawsuit, Attorney Couture has been the appointed fiduciary for the Estate of Carol for 881 days.

407.     On July 25, 2013, the court issued an order (**Exhibit 128**) appointing Couture as Special Personal Representative for a period of 90 days. A hearing was scheduled for October 31st.

408.     On August 2, 2013, Mirick sent an invoice (**Exhibit 129**) to the Estate of Carol Jane Oulton c/o Michael Couture.  .

104

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

**MIRICK O'CONNELL**
ATTORNEYS AT LAW
100 FRONT STREET
WORCESTER, MASSACHUSETTS 01608-1477
508-791-8500 FAX 508-791-8502
FED. EMPLOYMENT I.D. NO. 04-2303147

Estate of Carol Jane Oulton
c/o Michael Couture, Esq.
440 Broadway
Somerville, MA 02145

Date          08/02/13
Invoice Number 287055

| 24520 | Oulton, Carol and Donald, Estate of | 222 | Bergeron |
|-------|-------------------------------------|-----|----------|

| Matter # | Matter Name | Services | Disbursements |
|----------|-------------|----------|---------------|
| 00001 | Estate Administration | $1,855.00 | $109.63 |
| | | $1,855.00 | $109.63 |

Total Services and Disbursements. . . . . . . . . . . . . . .   $1,964.63

(This invoice does not show any unpaid previous invoices)

The Firm's practice is to annually review and consider adjustments
to hourly rates effective at the end of June. If the hourly rates of
attorneys and paralegals providing services for you are increased, those
increases will be reflected on invoices for work on and after July 1st.

PLEASE REMIT PAYMENT ON OR BEFORE AUGUST 31, 2013

105

MIRICK, O'CONNELL

24520   Oulton, Carol and Donald, Estate of
00001   Estate Administration

| Date | Services |
|------|----------|
| 12/05/12 | Email to and call from Brenda Costa regarding prepaid funerals; email to Nancy Williams and Carol Hladick regarding same. |
| 12/05/12 | Review status of funeral contract. |
| 12/11/12 | Review status of Application and D(4)(c). |
| 12/17/12 | Review discharge from Middlesex Savings; correspondence with opposing counsel regarding discharge. |
| 12/19/12 | Email to and calls to and from Nancy Williams regarding insurance matter; obtain advice from Attorney Port regarding same; review file for Social Security numbers for children; telephone to Nancy Williams regarding same. |
| 12/19/12 | Conference regarding life insurance and probate issues. |
| 12/20/12 | Calls from and to Nancy Williams regarding funeral contracts; obtain advice from Attorney Port regarding the same. |
| 12/20/12 | Conference regarding MassHealth Application. |
| 12/26/12 | Conference with client regarding probate issues. |
| 12/26/12 | Emails with Jason Port regarding MassHealth strategy issues. |
| 12/27/12 | Advice regarding probate of Mrs. Oulton's estate. |
| 12/27/12 | Conference with Attorney Moore regarding probate issue. |
| 12/28/12 | Conference with N. Williams regarding funeral arrangements; review invoices; conference with funeral director regarding costs; conference with Dolphin Restaurant regarding costs; correspond with all regarding checks for payment. |
| 12/31/12 | Conference regarding payments to vendors and probate. |
| 01/07/13 | Conference with N. Williams regarding probate issues. |
| 01/08/13 | Draft spreadsheet detailing assets in Oulton estates. |
| 01/08/13 | Conference with Marlborough Hills regarding payment; review account balances; correspond with Nancy Williams. |
| 01/29/13 | Correspond with client regarding status of probate; conference regarding status of estates. |
| 02/01/13 | Review correspondence from client regarding Probate; conference with Attorney Sweeney regarding Probate of Estates. |
| 02/13/13 | Review status of matter; contact client to review status of probate of estate. |

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

MIRICK, O'CONNELL

Page 3
Invoice Number 287055

24520   Oulton, Carol and Donald, Estate of
00001   Estate Administration

| Date | Services | |
|---|---|---|
| 03/30/13 | Review correspondence from Marlborough Hills; correspond with Marlborough Hills regarding probate of estates. | |
| 04/10/13 | Conference with Attorney Masterson regarding Marlborough Hills issues and estates. | |
| 05/06/13 | Review correspondence from N. Williams; correspond with N. Williams regarding status of estate administration. | |
| 05/23/13 | Correspond with Attorney Masterson regarding status. | |
| 05/28/13 | Conference with Attorney Masterson regarding Special Personal Representative. | |

Total Services . . . . . . . . . . . . . . . . . . . . . . .    $1,855.00

| Date | Disbursements | | | | |
|---|---|---|---|---|---|
| | Photocopies | ( | 17 | at 0.10   per page) | 1.70 |
| | Fax | | | | 1.50 |
| | Mailing Costs | | | | 5.75 |
| 11/27/12 | Federal Express - - VENDOR: Federal Express Corporation/jjp | | | | 14.04 |
| 11/27/12 | Federal Express - - VENDOR: Federal Express Corporation/jjp | | | | 12.04 |
| 12/28/12 | Federal Express - - VENDOR: Federal Express Corporation | | | | 8.78 |
| 12/28/12 | Federal Express - - VENDOR: Federal Express Corporation | | | | 67.82 |

Total Disbursements . . . . . . . . . . . . . . . . . . . . .    $109.63

Total Services and Disbursements. . . . . . . . . . . . . . . .    $1,964.63

409.  On August 2, 2013, Mirick O'Connell sent a DEMAND for payment of $1,964.63

and stated that Mirick wanted the payment by end of month.  "Please remit payment

on or before August 31, 2013." The demand attached a copy of the invoice listed above and described in the table above.

410.  On August 5, 2013, seven months after the Oultons passed away, Mirick O'Connell issued a check (**Exhibit 130**) payable to Carol Jane Oulton in the amount of $184,449.10. This check was drawn from an attorney's IOLTA account at People's United Bank.

411.  On August 5, 2013, a Marlborough Hills invoice, for services allegedly rendered to Donald Oulton ("Resident No. 126866) (**Exhibit 131**), was mailed to Carol Hladick at 20 Causeway Street, Medway, MA 02053 by Marlborough Hills. The amount of the invoice BILLED TO CAROL HLADICK, who fraudulently executed the invalid contracts with Marlborough Hills, is $36,755.71

412.  The Marlborough Hills invoice is addressed to C. Hladick because C. Hladick was the obligor on the Marlborough Hills contract. C. Hladick, without legal authority, executed the contract with Marlborough Hills, and Marlborough Hills knew or should have known that C. Hladick did not have legal authority to contract on behalf of Donald or Carol. Note, however, that both parties to the Oultons' Admissions Contracts knowing entered into the contracts when C. Hladick clearly had no authority to contract for the incapacitated Oultons.

413.  NOTE – DATES OF SERVICE — Start: 2011-12-08 — End: 2012-12-18

414.  A screenshot of the invoice sent from Marlborough Hills to C. Hladick for services Marlborough Hills allegedly rendered to Donald follows:

108

## Statement of Account

MARLBOROUGH HILLS
121 NORTHBORO ROAD EAST
MARLBOROUGH, MA 01752
508-485-4040

RE: Oulton, Donald

Resident No.   126866

Mail check or money order payable to location above.

Carol Hladick
20 Causeway Street
Medway, MA 02053

INVOICE DATE     8/5/2013
AMOUNT DUE:    $   32,670.83

| Description | Date | Days | Charges | Payment/ Credits | Balance |
|---|---|---|---|---|---|
| | | | $ | $ | $ |
| Medicare co-pay @141.50 | 12/08-12/22/2011 | 14 | $ 1,981.00 | | $ 1,981.00 |
| Medicare co-pay @144.50 | 01/01-01/31/2012 | 31 | $ 4,479.50 | | $ 6,450.50 |
| Medicare co-pay @144.50 | 02/01-02/14/2012 | 14 | $ 2,023.00 | | $ 8,483.50 |
| 3-Bed Room @316 | 2/15-02/29/2012 | 15 | $ 4,740.00 | | $ 13,223.50 |
| 3-Bed Room @316 | 3/1-03/31/2012 | 31 | $ 9,796.00 | | $ 23,019.50 |
| 3-Bed Room @316 | 4/1-04/30/2012 | 30 | $ 9,480.00 | | $ 32,499.50 |
| 3-Bed Room @316 | 5/1-05/31/2012 | 31 | $ 9,796.00 | | $ 42,295.50 |
| 3-Bed Room @316 | 06/01-06/07/2012 | 7 | $ 2,212.00 | | $ 44,507.50 |
| 3-Bed Room @319 | 08/20-06/30/2012 | 11 | $ 3,476.00 | | $ 47,983.50 |
| Payment- chk# 8790 | February 23, 2012 | | | $ (2,399.00) | $ 45,584.50 |
| Payment -Chk# 8808 | June 12, 2012 | | | $ (5,000.00) | $ 40,584.50 |
| 3-Bed Room @316 | 7/1-07/31/2012 | 31 | $ 9,796.00 | | $ 50,380.50 |
| 3-Bed Room @316 | 8/1-08/31/2012 | 31 | $ 9,796.00 | | $ 60,176.50 |
| 3-Bed Room @316 | 9/1-09/31/2012 | 30 | $ 9,480.00 | | $ 69,656.50 |
| 3-Bed Room @316 | 10/1-10/31/2012 | 31 | $ 9,796.00 | | $ 79,452.60 |
| 3-Bed Room @316 | 11/1-11/30/2012 | 30 | $ 9,480.00 | | $ 88,932.50 |
| 3-Bed Room @316 | 12/1-12/18/2012 | 18 | $ 5,688.00 | $ (61,949.67) | $ 32,570.83 |
| | | | $ 102,019.50 | $ (69,348.67) | $ 32,670.83 |

Payable In Full
Upon Receipt      $   32,670.83

415.  On August 5, 2013, an invoice, for services allegedly rendered by Marlborough

Hills to Carol Oulton ("Resident No. 126126851) (**Exhibit 132**), was mailed to Carol Hladick at

20 Causeway Street, Medway, MA 02053 by Marlborough Hills. The amount of the invoice

<u>BILLED TO CAROL HLADICK</u>, who fraudulently executed the invalid contracts with

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

Marlborough Hills, $36,755.71. It fraudulently lists the start date of service as:

Start - **2012-01-06** - End: 2012-12-18.

416. Carol was overdosed at Marlborough Hills on December 1, 2011, and was residing at UMass Memorial Hospital in Worcester on January 6, 2012, the date that Marlborough Hills claims is Carol's admission date.

417. Marlborough Hills likely did not report Carol's life-threatening overdose and has, therefore, also likely altered its records in an attempt to bury the evidence of the overdose.

418. A screenshot of the invoice sent from Marlborough Hills to C. Hladick for services Marlborough Hills allegedly rendered to Carol follows:

110

## Statement of Account

MARLBOROUGH HILLS
121 NORTHBORO ROAD EAST
MARLBOROUGH, MA  01752
508-485-4040

RE: Oulton, Carol

Resident No.   126851

Mail check or money order payable to location above.

Carol Hladick
20 Causeway Street
Medway, MA 02053

INVOICE DATE ·          8/5/2013
AMOUNT DUE:       $    38,755.71

| Description | Date | Days | Charges | Payments/ Credits | Balance |
|---|---|---|---|---|---|
| | | | | | $ |
| Medicare co-pay @144.50 | 01/06-01/23/2012 | 18 | $   2,601.00 | | $      2,601.00 |
| Medicare co-pay @144.50 | 03/14-03/31/2012 | 18 | $   2,601.00 | | $      5,202.00 |
| Medicare co-pay @144.50 | 04/1-04/18/2012 | 18 | $   2,601.00 | | $      7,803.00 |
| Medicare co-pay @144.50 | 05/01-05/12/2012 | 12 | $   1,734.00 | | $      9,537.00 |
| Medicare co-pay @144.50 | 05/28-05/31/2012 | 4 | $      578.00 | | $    10,115.00 |
| Payment check #8790 | | | | $   (2,601.00) | $      7,514.00 |
| Semi-Private Room @327 | 05/23-05/27/2012 | 5 | $   1,635.00 | | $      9,149.00 |
| Semi-Private Room @327 | 06/1-06/30/2012 | 30 | $   9,810.00 | | $    18,959.00 |
| Semi-Private Room @327 | 07/1-07/31/2012 | 31 | $ 10,137.00 | | $    29,096.00 |
| Semi-Private Room @327 | 08/1-08/31/2012 | 31 | $ 10,137.00 | | $    39,233.00 |
| Sam-Private Room @327 | 09/1-09/30/2012 | 30 | $   9,810.00 | | $    49,043.00 |
| Semi-Private Room @327 | 10/1-10/31/2012 | 31 | $ 10,137.00 | | $    59,180.00 |
| Semi-Private Room @327 | 11/1-11/30/2012 | 30 | $   9,810.00 | | $    68,990.00 |
| Semi-Private Room @327 | 12/1-12/24/2012 | 24 | $   7,848.00 | $ (40,082.29) | $    36,755.71 |
| | | | $ 79,439.00 | $  (42,683.29) | $    36,755.71 |
| | | | Payable in Full Upon Receipt | | $    38,765.71 |

419.    On August 5, 2013, Attorney Masterson transmitted a lawsuit (**Exhibit 133**)

Colonial Health Group-Westridge, LLC, d/b/a Marlborough Hills Healthcare Center v. Michael

Couture, Esq. Special Personal Representative Of The Estate Of Carol Jane Oulton.  Attached to

the lawsuit is the admission agreement signed by Carol Hladick on 2011-12-09 and also a Civil

Docket Sheet (Exhibit 133). A screenshot of the Civil Docket Sheet follows:

| MASXP-20110425 pinkneym | | | Commonwealth of Massachusetts<br>MIDDLESEX SUPERIOR COURT<br>Case Summary<br>Civil Docket | | | | 03/11/2014<br>11:37 AM |
|---|---|---|---|---|---|---|---|

**MICV2013-03501**

th Group-Westridge LLC d/b/a Marlborough Hills v Couture, Esq. Special Personal Representative Of

| File Date | 03/05/2013 | | Status | Disposed: by Settlement (dispsett) | | | |
|---|---|---|---|---|---|---|---|
| Status Date | 10/16/2013 | | Session | J - Civ J CtRm 420 (Woburn) | | | |
| Origin | 1 - Complaint | | Case Type | A01 - Services, labor, materials | | | |
| Track | F - Fast track | | Lead Case | | | Jury Trial | No |

| | Service | Answer | Rule12/19/20 | Rule 15 | Discovery | Rule 56 | Final PTC | Judgment |
|---|---|---|---|---|---|---|---|---|
| Served By | | | 12/04/2013 | 12/04/2013 | 06/02/2014 | 07/02/2014 | | |
| Filed By | 11/04/2013 | 12/04/2013 | 01/03/2014 | 01/03/2014 | | 08/01/2014 | | 05/28/2015 |
| Heard By | | | 02/02/2014 | 02/02/2014 | | | 11/28/2014 | |

**DEADLINES**

**PARTIES**

Plaintiff
Colonial Health Group-Westridge LLC d/b/a
Marlborough Hills
Healthcare Center
Dismissed by agreement of parties 10/16/2013

Private Counsel 548340
Deborah C Masterson
Law Office of Deborah Masterson
675 Massachusetts Ave. Ste 5
Cambridge, MA 02139-3309
Phone: 617-492-2424
Fax: 617-492-2425
Active 03/06/2013 Notify

Defendant
Michael Couture, Esq. Special Personal
Representative Of The Estate Of
Somerville, MA 02145
Carol Jane Oulton.
Served: 08/20/2013
Answered: 08/22/2013
Dismissed by agreement of parties 10/16/2013

Private Counsel 674048
Michael Couture
Winston Law Group LLC
440 Broadway
Cambridge, MA 02140
Active 08/23/2013 Notify

**ENTRIES**

| Date | Paper | Text |
|---|---|---|
| 02/08/2013 | 1.0 | Complaint & civil action cover sheet filed |
| 08/09/2013 | | Origin 1, Type A01, Track F. |
| 08/22/2013 | 2.0 | ANSWER by Michael Couture, Esq. Special Personal Representative Of The Estate Of to COMPLAINT (claim of trial by jury reqstd) |
| 09/03/2013 | 3.0 | SERVICE RETURNED: Michael Couture, Esq. Special Personal Representative Of The Estate Of(Defendant), 8/20/13, Service accepied by Michael Couture, agent. |
| 10/16/2013 | 4.0 | Stipulation of dismissal with prejudice, all parties waiving their right of appeal |

Page 1 of 1

112

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

420.    On August 5, 2013, (the same day Marlborough Hills billed C. Hladick for payment in full on Donald's and Carol's allegedly outstanding balances), Attorney Masterson filed a lawsuit on behalf of Colonial Health Group-Westridge LLC d/b/a Marlborough Hills against the Estate of Carol Jane Oulton. The Complaint contains numerous fraudulent misrepresentations of statements of material fact. Indeed, it contains lies. Attorney Masterson and Michael Couture used the lawsuit to extract the entire amount of money allegedly owing to Marlborough Hills from the assets of the Estate of Carol Jane Oulton so that C. Hladick – the obligor who fraudulently entered into the contracts with Marlborough Hills– would not be held liable for the contracts.

421.    Specifically, Attorney Masterson states that Carol was admitted to Marlborough Hills on or about November 29, 2011, which is in direct conflict with the admission date stated on Invoice that Marlborough Hills sent to its alleged obligor, C. Hladick, on August 5, 2013. In that Invoice Marlborough Hills claims that Carol's date of admission was January 6, 2012.

422.    Carol was, in fact, admitted to Marlborough Hills on November 29, 2011, and then removed from the facility late on November 30, 2011, after the Marlborough Hills staff administered an overdose of Lorazepam to Carol.

423.    Attorney Masterson makes the highly suspect claim that

6.    Carol Jane Oulton entered into an agreement with Marlborough Hills on March 15, 2012, in which she agreed to pay for nursing home services rendered to her. See a copy of the Admission Agreement attached hereto and incorporated herein by reference as Exhibit "A".

424.    A signed Admissions Agreement appears below:

113

THE PARTIES HEREBY EXECUTE THIS RESIDENT ADMISSION AGREEMENT

3/14/12
Date

KI Tefehu
Representative of Marlborough Hills Healthcare Center

3/15/12
Date

Carol J. Oulton
Resident

Date

Resident's Legal Representative
(If Applicable)

Source of Legal Authority:
copy provided)

Execution solely for the purposes of payment using Resident funds

Date

Resident's Responsible Party (If Applicable)

425.   Carol lacked capacity by this time in her life and the signature on this document appears to be a forgery. Marlborough Hills knew of these deficiencies and yet chose to execute the contract, anyway, and then unlawfully held Carol in the facility until the end of her life.

426.   Attorney Masterson fails to account for the period of time between November 29, 2011, and March 14, 2012, although Attorney Masterson states, in Paragraph 3 of the Facts, that Carol was admitted to Marlborough Hills on November 29, 2011.

427.   Quite noteworthy is the fact that that the Marlborough Hills Invoice sent , on August 5, 2012, to C. Hladick for payment makes a demand for services rendered for Carol's allegedly entire stay at Marlborough Hills ("January 6, 2012, through December 24, 2012") minus the period of time during which Marlborough Hills staff overdosed Carol).

428.   Given that on August 5, 2013, which was 11 days after Attorney Couture had been appointed as Special Personal Representative, it is quite significant that Marlborough Hills

114

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

sent its Invoice for all dates of service to C. Hladick, rather than to Attorney Couture:  C.
Hladick fraudulently executed the Admissions Contract with Marlborough Hills in
December 2011.

429.    The signature on the Admissions Contract dated March 15, 2012,that Attorney
Masterson proffered, appears to be a forgery.

430.    Another of Attorney's fraudulent misrepresentations is in the Marlborough Hills
Invoice sent to C. Hladick itself: the Invoice indicates that Carol was an in-patient at
Marlborough Hills on May 23, 2012, when, in fact, Plaintiff visited Carol for the last time at
Marlborough Hospital that day.

431.    It is also quite noteworthy that Marlborough Hills was billing Medicare from
January 6, 2012, through May 31, 2012.  Carol was in the Intensive Care Unit from at least May
22, 2012, and Plaintiff visited Carol at Marlborough Hospital on May 23, 2012.

432.    Similarly, the claims that Attorney Masterson makes about the Admissions
Contract allegedly executed for Donald are equally perjurious.  In the Complaint she wrote:

    16. On or about December 29, 2011, Donald Oulton entered in to an
    agreement with Marlborough Hills, through his Legal
    Representative, Carol Hladick, in which he promised to pay for
    nursing home services rendered to him. A copy of the Admission
    Agreement is attached hereto and incorporated herein by reference
    as Exhibit "C".

115

THE PARTIES HEREBY EXECUTE THIS RESIDENT ADMISSION AGREEMENT

12/8/11
Date

K. Fletcher
Representative of Marlborough Hills Healthcare Center

_____
Date

_____
Resident

12/29/11
Date

Carol B Hladick
Resident's Legal Representative
(If Applicable):

Source of Legal Authority,
copy provided)

_____

Execution solely for the purposes of payment using Resident funds

_____
Date

_____
Resident's Responsible Party (If Applicable)

433.    Attorney Masterson is lying in this Complaint. She refers to C. Hladick as

Donald's "Legal Representative" when, in fact, C. Hladick had no such authority.

434.    On December 29, 2011, C. Hladick was merely Donald's Health Care Agent, not

his Attorney-In-Fact. The Admissions Agreement has a line where one should indicate the

"Source of Legal Authority" and provide a copy, and on Donald's Admission Agreement that

line is left blank. Marlborough Hills knew of these deficiencies and yet chose to execute the

contract, anyway, and then unlawfully held Donald in the facility until the end of his life.

435.    C. Hladick did not provide a copy of the "Source of Legal Authority" because no

such legal authority existed. C. Hladick illegally contracted with Marlborough Hills so that the

Oultons would remain there, leaving the Oultons' assets vulnerable to the misappropriation and

conversion that forms the foundation of this lawsuit.

116

436. The criminal enterprise at the heart of this lawsuit was put in place solely to relieve C. Hladick from the obligation that she incurred with Marlborough Hills when C. Hladick executed fraudulent contracts with Marlborough Hills. Given that Marlborough Hills willfully and knowingly executed the Admissions Agreements with C. Hladick when Marlborough Hills employees (Lincoln, Queieros, et al.) knew that C. Hladick was merely a Health Care Agent, it is likely that the Admissions Agreements that are the subject of this lawsuit are voided by their illegality.

437. Attorney Couture's Answer to Attorney Masterson's lawsuit is just as troubling as Attorney Masterson's fraudulent misrepresentations of material fact in the Complaint are.

438. Proof that Attorney Couture is a willing participant in the conspiracy at the heart of this case is found in Attorney Couture's Answer to Attorney Masterson's lawsuit. His willingness to admit to everything set forth by Attorney Masterson in the Complaint, including – indeed, especially – the perjurious statements that Attorney Masterson makes to the court, is proof that Attorney Couture's only job as in this matter has been to unjustly enrich Marlborough Hills and spare C. Hladick from any additional invoices on the Admissions Agreements that C. Hladick fraudulently executed in December 2011.

117

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                          Superior Court
                                                       Docket No. 13-3501J

```
-----------------------------------------)
COLONIAL HEALTH GROUP-WESTRIDGE )
LLC, d/b/a MARLBOROUGH HILLS        )
HEALTHCARE CENTER,                  )
        Plaintiff,                  )
                                    )         ANSWER TO COMPLAINT
V.                                  )
                                    )
MICHAEL R. COUTURE, SPECIAL         )
PERSONAL REPRESENTATIVE OF          )
THE ESTATE OF CAROL JANE OULTON     )
        Defendant                   )
-----------------------------------------)
```

1. Admits.
2. Admits.
3. Admits.
4. Admits Carol Jane Oulton accrued the balance as alleged in this paragraph.
5. Admits.
6. Admits.
7. Admits.
8. Admits.
9. Admits.
10. Admits.
11. No response required.
12. Admits.
13. Admits.
14. Admits.
15. Admits.
16. Admits.
17. Admits.
18. Admits.
19. Admits.
20. Admits.
21. Admits.
22. Admits.
23. Admits.
24. Admits.

OFFICE OF THE
CLERK OF COURTS
MIDDLESEX COUNTY OF MIDDLESEX
AUG 22 2013
CLERK

1

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

25. Admits.
26. Admits.
27. Admits.
28. Admits.
29. Agree to incorporation by reference.
30. Admits.
31. Admits.
32. Admits.
33. Admits.
34. Admits.
35. Agree to incorporation by reference.
36. Admits.
37. Admits.
38. Admits.
39. Admits.
40. Agree to incorporation by reference.
41. Admits.
42. Admits.
43. Admits.
44. Admits.
45. Admits.
46. Admits.

Respectfully submitted,

Michael R. Couture, Esq.
BBO# 674046
Special Personal Representative of
the Estate of Carol Jane Oulton
Winston Law Group, LLC
440 Broadway
Somerville, MA 02140

Dated: August 21, 2013

439.    On October 16, 2013, to solidify their fraudulent transaction, Attorney Masterson

and Attorney Couture executed a Stipulation of Dismissal which dismissed Attorney Masterson's

lawsuit filed on behalf of Colonial Health Group-Westridge LLC (Marlborough Hills) with

prejudice (stipulated by Attorney Couture),

## "ALL PARTIES WAIVING THEIR RIGHT OF APPEAL".

119

| Date | Paper | Text |
|------|-------|------|
| 03/03/2013 | 1.0 | Complaint & civil action cover sheet filed |
| 08/03/2013 | | Origin 1, Type A01, Track F. |
| 08/27/2013 | 2.0 | ANSWER by Michael Couture, Esq. Special Personal Representative Of The Estate Of to COMPLAINT (claim of trial by jury reqstd) |
| 09/03/2013 | 3.0 | SERVICE RETURNED: Michael Couture, Esq. Special Personal Representative Of The Estate Of(Defendant), 8/20/13. Service accepted by Michael Couture, agent, |
| 10/16/2013 | 4.0 | Stipulation of dismissal with prejudice, all parties waiving their right of appeal. |

440.    On August 22, 2013, an invoice was sent from Winston Law Group re:

Conservatorship. This invoice (Exhibit 134), in the amount of $2,712.50.

120



WINSTON LAW GROUP

440 Broadway
Somerville, MA 02145
Tel: (617) 841-4000
Fax (617) 629-7900

| Michael R. Couture, Esq. | Invoice Date: | August 22, 2013 |
|---|---|---|
| Winston Law Group, LLC | Invoice No.: | 20723 |
| 440 Broadway | Client/Matter No.: | 7350.000 |
| Somerville, MA 02145 | Client/Matter Name: | Carol Jane Oulton |
| | | Page: 1 |

RE: Conservatorship

## For Professional Services

|  |  | Hours |  |
|---|---|---|---|
| **06/11/2013** | | | |
| MC | Telephone conference with Deb Masterson, re: Oulton intake. | 0.50 | 125.00 |
| **07/19/2013** | | | |
| GM | Probate Bond Application | 0.50 | 62.50 |
| MC | Telephone conference with paralegal, re: Oulton bond; Read and reply to emails re: date of birth for bond. | 0.30 | 75.00 |
| **07/22/2013** | | | |
| MC | Telephone conference with AA Dority regarding bond, Read and reply to email from Deb Masterson. | 0.10 | 25.00 |
| **07/23/2013** | | | |
| MC | Retrieve bond from AA Dority. | 0.30 | 75.00 |
| **07/24/2013** | | | |
| MC | Telephone conference with Deb Masterson, re: hearing preparation. Review bond and forward to Atty. Masterson. | 0.30 | 75.00 |
| MC | Telephone conference with Atty. Masterson, re: issues for court hearing. | 0.30 | 75.00 |
| **07/25/2013** | | | |
| MC | Travel to Middlesex for hearing on Special Personal Representative before Judge DiGangi, Meetings with Atty. Masterson and Jerome Sweeney. Obtain certified copy of Letters and decree. | 4.00 | 1,000.00 |
| **07/26/2013** | | | |
| MC | Forward Letters of SPR to Atty. Masterson, Research SPR authority to pay debts of the decedent and to marshall assets. | 0.50 | 125.00 |
| **08/01/2013** | | | |
| MC | Telephone conference with Atty. Jason Port, re: appointment of SPR, facts | | |

| | | Invoice Date: | August 22, 2013 |
| | | Invoice No. | 20723 |
| | | Client/Matter No.: | 7360.000 |
| Michael R. Couture, Esq. | | | Page: 2 |

| | | Hours | |
|---|---|---|---|
| | of case, and request for funds in IOLTA. Forward copy of letters of authority. | 0.50 | 125.00 |
| **08/07/2013** MC | Telephone conference with Atty. Deb Masterson, re: payment of fees, timing of motion, and permanent personal representative. | 0.40 | 100.00 |
| **08/09/2013** MC | Prepare forms to open account, follow up with accounting department, email to Jason Port. | 0.10 | 25.00 |
| **08/12/2013** MC | Email to Deb Masterson for coy of death certificate. | 0.10 | 25.00 |
| **08/13/2013** GM | Preparation of SS-4 and completion of EIN | 0.20 | 25.00 |
| MC | Follow up with accounting and Deborah Masterson on death certificate. | 0.10 | 25.00 |
| MC | Telephone conference with Atty. Masterson, re: assents for motion to pay fees and Jerome Sweeney's status as PR. | 0.10 | 25.00 |
| **08/15/2013** AO | Obtain death certificate from probate court. | 0.30 | 75.00 |
| **08/21/2013** GM | Deborah Masterson and Middlesex Superior Court mailings. | 0.20 | 25.00 |
| MC | Prepare Answer to Complaint and Certificate of Service for Atty. Masterson. Accept Service on Summons and return original to Atty. Masterson. | 1.00 | 250.00 |
| **08/22/2013** MC | Legal Research for motions and forms. Prepare Motion for Fees and to Pay Creditor's Claims. | 1.50 | 375.00 |
| | **Total Fees** | **11.30** | **2,712.50** |

|  | Timekeeper Recap | | |
|---|---|---|---|
| Timekeeper | Hours | Rate | Total |
| Michael Couture | 10.10 | $250.00 | $2,525.00 |
| Gisella Menendez | 0.90 | 125.00 | 112.50 |
| Andrea O' Brion | 0.30 | 250.00 | 75.00 |

| | | |
|---|---|---|
| TOTAL DUE THIS INVOICE | | 2,712.50 |
| **BALANCE NOW DUE** | | **$2,712.50** |

441.    On August 22, 2013, Michael Couture filed a motion (Exhibit 135) to allow special personal representative fees and payment of creditors' claims in Middlesex County Probate and Family Court. The motion requests payment of creditor claims for Colonial Health Group-Westridge and for payment for services by Mirick, O'Connell, DeMallie, & Lougee, LLP and states please see exhibits 2 and 3 respectively.

122

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

442.    NOTE – The document that Attorney Couture provided to Plaintiff was MISSING ATTACHMENT.

443.    NOTE - Attorney Couture sent this to Attorney Port, who is not a party to the Estate of Carol.

444.    On August 22, 2013, Michael Couture filed an answer to complaint (Exhibit 136) in the matter of Colonial Health v. Couture. Attorney Couture admits to every.... in the Complaint.

445.    If Attorney Couture were truly acting in the best interests of the Estate of Carol, he should have challenged the fraudulent contracts attached at the end and the perjurious statements made by Attorney Masterson in the body of the Complaint.

446.    In his 881 day long tenure, Attorney Couture has never acted in the best interests of the Estate of Carol but, rather only in the best interests Marlborough Hills, C. Hladick, and himself.

447.    On August 28, 2013, Attorney Masterson sent a letter to the Middlesex County Superior Court transmitting the lawsuit – Colonial Health Group-Westridge, LLC v. Michael Couture, Esq. Special Personal Representative of the Estate of Carol Jane Oulton, — Docket No.: MICV2013-03501-J – that Attorney Masterson filed against the Estate of Carol on behalf of Marlborough Hills (Exhibit 136).

448.    On August 29, 2013, Attorney Couture mailed a letter (Exhibit 137) to Plaintiff informing her that a hearing for a motion of fees had been scheduled for September 12, 2013, in Middlesex County Probate Court.

123

449.     On September 3, 2013, Attorney Masterson filed a Summons (Exhibit 138) with

the Middlesex County Superior Court in Woburn in the matter of Colonial Health Group-

Westridge, LLC v. Couture as Special Personal Representative of the Estate of Carol Jane

Oulton. **NOTE** that Attorney Couture voluntarily waives service of process by Masterson.

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on ...........................................................................................
20........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

I, Micheal Couture, am voluntarily accepting service
of this Complaint in my capacity as Personal Representative,
received on August 13, 2013.

_[signature]_   as Personal Representative of
Carol Jane Oulton

Dated: August 22

450.     On September 11, 2013, Michael Couture issued a check (Exhibit 139) payable to

A.A. Dority Bond in the amount of $1260. The check was drawn from Century bank and is a

starter check with the Estate of Carol Jane Oulton handwritten in the top.

451.     On September 12, 2013, a hearing was held before Judge DiGangi at the

Middlesex County Probate and Family Court (Exhibit 140). The parties at the hearing were

sworn and stated, inter alia, the following:

**MICHAEL COUTURE:** Allright, I've filed motions to, uh, one, pay attorney's fees
and my special representative fees and to also pay creditors' claims [UNTILLEGIBLE]
Sarah Oulton went into the nursing home where her and her husband resided at and
another to the law firm [UNTILLEGIBLE].... And the invoice for my fees are Two
Thousand, Seven Hundred and Twelve Dollars and ($2,712) and I have an invoice with
[UNTILLEGIBLE] time record records attached and Mirick O'Connell is One
Thousand Nine Hundred Sixty Four Dollars and 63 Cents ($1,964.63). And
Marlborough Hills, the nursing home, has a, uh, invoice for, uh, Sixty Nine Thousand,
Four Hundred Twenty Six Dollars and 54 Cents ($69,426.54), and that's the
[UNTILLEGIBLE]....

**JUDGE DIGANGI:** And you represent the Estate of, uh....

**MICHAEL COUTURE:** Sarah. Sorry. Carol.

124

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

**JUDGE DIGANGI:** Right, and, uh, is there a representative of the fath... of the husband's estate?

**MICHAEL COUTURE:** So, no, probate hasn't been filed on his behalf. There was no probate so, actually, <u>one of the goals is to have, uh, to avoid a probate for the husband.</u> Um, Doctrine of Necessities requires that a surviving spouse pays for medical necessities of the predeceding [sic] spouse so that is the, uh, statute or alignment to pay for the, uh, late husband's bills at the nursing home. [emphasis added]

**JUDGE DIGANGI:** How much time? Who preceded.... the, uh, husband preceded the wife?

**MICHAEL COUTURE:** Correct.

**JUDGE DIGANGI:** By how much?

**MICHAEL COUTURE:** I'm gonna say a couple of weeks?

**SARAH OULTON:** Five days.

**JUDGE DIGANGI:** Five days? Okay. Uh, is that it, Counsel?

**JUDGE DIGANGI:** What's the size of the estate?

**MICHAEL COUTURE:** Uh.... We... Uh... The um...received payment from the.... Mirick O'Connell is holding the client's funds in escrow of One Hundred Eight Four Thousand, Four Hundred Forty Nine Dollars and Ten Cents ($184,449.10). So there's plenty of money to pay these claims.

**SARAH OULTON:** My concern, Your Honor, is simply that the medical records are necessary in this case. My mo.... When my mother was admitted to that nursing home she was admitted on November 30th of 2011, and was overdosed on her first day there, December 1st of 2011. So she was in a comatose state. I can't fathom, without seeing any documentation, how she could have executed all these legal documents in a comatose condition. She was rushed from Marlborough Hills to UMass Memorial on December 1st. I know that because I was with my dad in Natick, caring for him, and we were called by the nursing home staff at 11 o'clock at night, and they said, *"Drive your dad to UMass. Your mom is unresponsive."* From that point on the nursing home staff has been very adversarial to me, as I have outlined in my claim, not letting me visit.... They didn't let me visit them. They have filed a number of perjurious claims against my character, which is why I took time to give "the other side" to the court and have it in the record. My concern is that the nursing home's lawyer is Mirick O'Connell.

**JUDGE DIGANGI:** Mmmm hmmm.

125

**SARAH OULTON:** I, I've looked at the, um, the documents, Your Honor, that are some of the exhibits. For example, uh, when Jerome Sweeney, the attorney representing my siblings currently, when he filed, um, [UNTILLEGIBLE] to, uh, put this into informal probate, he valued the estate at $250,000 with no real estate. My concern is that there was a home in which my parents dwelled in Natick. And I, as the interested daughter who had been caring for them for months – all through 2011, in fact, all through my law school days I would drive out and see them a couple of times a week. I did their errands and all that and, uh, nobody looked out for them. You know? Nobody, there was, uh, nobody to read, read the contract when they got to the nursing home and that type of the thing. So, when I knew she was comatose and my dad was in a state of dementia – diagnosed by his doctor – I simply filed a Petition for Conservatorship with this court and it was fought vigorously by Mirick O'Connell. My concern is that after I, uh, assented to a di, dismissal because I was told I'm still not allowed to visit anyone in the nursing home. May I remind you, Your Honor, you've been informed of heinous things about me, but I don't have any criminal record at all. I've never been in any trouble. They've manufactured a bunch of lies and I, I provided an Affidavit of Attorney Robert O'Regan, of Burns and Levinson, to counter some of that. The ultimate question I have is, *"What happened to the house?"* My concern is they...

**JUDGE DIGANGI:** You've done a deed search?

**SARAH OULTON:** I surely did, and those are the exhibits....

**JUDGE DIGANGI:** What does that indicate?

**SARAH OULTON:** It's here. It indicates, and I can read the numbers to you [shuffling papers]....

**JUDGE DIGANGI:** Nah, I'm just asking you. What did the...when did the house get transferred [UNTILLEGIBLE]?

**SARAH OULTON:** The house was, uh, initially what they did, from the Alzheimer's Unit of, um, Marlborough Hills....

**JUDGE DIGANGI: MA'AM I'M JUST ASKING YOU. WHAT DOES THE TITLE SAY? I'M NOT ASKING FOR A DIATRIBE ABOUT THE BACKGROUND. WHAT DOES THE DEED SAY?**

**SARAH OULTON:** The deed says a woman named Cynthia Bracciale owns it now.

**JUDGE DIGANGI: DID SHE PAY A CONSIDERATION FOR IT?**

**SARAH OULTON:** She says she did. The dee… it, it, the....

**JUDGE DIGANGI: DOES THE DEED SAY IT DID?**

**SARAH OULTON:** Right.

126

**JUDGE DIGANGI: HOW MUCH?**

**SARAH OULTON:** Um, Three... Oh, Three Fifty One Five Hundred.

**JUDGE DIGANGI: WAS THE DEED NOTARIZED?**

**SARAH OULTON:** By Mirick O'Connell's own attorneys.

**JUDGE DIGANGI: IT WAS NOTARIZED.**

**SARAH OULTON:** It was.

**JUDGE DIGANGI:** Allright.

**SARAH OULTON:** But my concern, Your Honor, is that it was, it was sold under a Power of Attorney that was executed from the Alzheimer's Unit. And, as you know, under the Uniform Probate Code, the first pri... the first criterion is that the person executing the POA be competent person, and my father was not. He had been residing in the Alzheimer's Unit for nine months when the Mirick lawyers showed up and said, *"Sign this document,"* and there was no witness.

**JUDGE DIGANGI:** Well, that's beyond the pale here. You, you don't take that here. If you have a complaint about the, uh, there being a, uh, some sort of a, uh, misrepresentation or whatever, that's....

**SARAH OULTON:** I do.

**JUDGE DIGANGI:** .... that's Superior Court.

**SARAH OULTON:** I understand that. My concern is simply, why pay them at this point? I have asked for an Accounting, Your Honor. You may recall, we've met before. Exhibit 38 shows the home in which my parents resided stripped in la.... in, uh, August of last year, and I'm a one-quarter beneficiary. I'm a devisee, equal to the others, who's not seen a thing because of the looting.

**JUDGE DIGANGI:** Anybody else objecting today?

**MICHAEL COUTURE:** No, and there's three other children, siblings, or children to the decedent. One of them....

**JUDGE DIGANGI:** Do you want to respond to any of this?

**MICHAEL COUTURE:** Um. Let's see. Well, the... There was a Power of Attorney and Health Care Proxy appointed for the father, Donald Oulton. The mother, I don't think, was ever deemed incompetent. And they were caring for her father and her mother and the fact of the matter is that they were both residing at this nursing home for, for, probably over a year and they approved the bills and the only way to pay the bills was to sell the home. And, I don't think she's disputing the existence of the debt.

127

I think she's, this, there's a lot of disputes in here, such as how the house was sold, and that's really irrelevant here. It's uh, the debt exists, and there are assets in the estate to pay the debt.

**JUDGE DIGANGI: IF YOU FEEL SOMEBODY'S STOLEN SOMETHING, REPORT IT TO THE POLICE.** <u>HIS JOB, RIGHT NOW, IS TO GET MY PERMISSION, IF I FEEL, IF I FEEL THAT IT'S, UH, WARRANTED, TO PAY CERTAIN CREDITORS OF THE ESTATE.  NOT ONLY YOUR MOTHER'S ESTATE BUT YOUR FATHER'S ESTATE.</u>  **THEY PROVIDED SERVICES. NOW, IF YOU DIDN'T WANT THEM TO GO TO A NURSING HOME, WHERE WERE THEY SUPPOSED TO GO?**

**SARAH OULTON:** Well, I tried to have them live with me, I mean, I fought....

**JUDGE DIGANGI:** BUT THAT DIDN'T HAPPEN, DID IT?

**SARAH OULTON:** No, it did not.

**JUDGE DIGANGI:** SO I HAVE TO RESPOND TO WHAT DID HAPPEN, NOT WHAT COULDA, SHOULDA, OR WOULDA HAPPENED, RIGHT? I'll read your, uh, I'll read your, uh, Opposition, and I'll see where it goes. I'll take this under advisement.

452.    On September 12, 2013, Plaintiff filed (**Exhibit 141**) Petitioner Sarah A. Oulton's

Opposition to Motion to Allow Special Personal Representative Fees and Payment of Creditors'

Claims.

453.    On September 12, 2013, the Middlesex County Probate court allowed Couture's

Motion to Allow Special Personal Representative Fees and Payment of Creditor's Claim

(**Exhibit 142**).

454.    On September 30, 2013, a Statement of Account (**Exhibit 143**) yielding a balance

of $158.70 was mailed from Brookline Credit Union to Carol Oulton.

455.    On October 5, 2013, Plaintiff filed  Motion to Disqualify the Law Firm of Keough

+ Sweeney, Ltd., Plourde Bogue Moylan & Marino, LLP, and Dennis R. Brown, P.C. from this

case (**Exhibit 144**).

128

456.    On October 15, 2013,, Attorney Masterson transmitted the lawsuit: Colonial

Health Group-Westridge, LLC v. Michael Couture, Esq. Special Personal Representative of the

Estate of Carol Jane Oulton — Docket No.: MICV2013-03501-J (Exhibit 145)

457.    When Attorney Couture provided a copy of this lawsuit to Attorney Bartley

Attorney Couture withheld both the Stipulation of Dismissal (dismissing the suit with prejudice,

forfeiting all rights of appeal) and the Summons (with waiver of service of process).

458.    On October 16, 2013, Dennis R. Brown, P.C. replied to Petitioner Sarah Oulton's

Motion to Disqualify the Law Firms of Keough + Sweeney, Ltd., Plourde Bogue Moylan &

Marino, LLP and Dennis R. Brown, P.C. (Exhibit 146)

459.    On October 16, 2013, Attorney Curley filed an Opposition of Plourde Bogue

Moylan & Marino, LLP (Exhibit 147) to Petitioner Sarah A. Oulton's Motion to Disqualify the

Law Firms of Keough + Sweeney, Ltd., Plourde Bogue Moylan & Marino, LLP, and Dennis R.

Brown, P.C.

460.    On October 17, 2013, a hearing was held before Judge DiGangi at the Middlesex

County Probate Court (Exhibit 148).

**SARAH OULTON:** I filed a Motion to Disqualify three of the law firms that have been
involved in this case based on the fact that I've been represented by two of them in the
past and I'm a former client, and under Rule 1.9 they have duties to me, as their former
client.

**JUDGE DIGANGI:** Who, who represented you in the past?

**SARAH OULTON:** Jerome Sweeney did. Attorney Jerome Sweeney did, and
Attorney Dennis Brown, and Attorney Lisa Vecchio have represented me in the past,
and their involvement in this current matter is complicated. You heard, in fact, on July
25th, Your Honor, you disqualified Mr. Sweeney from being the Personal
Representative of my mother's estate. And by disqualified I mean you denied him that
opportunity, and in your comments to him – I'll paraphrase – but you even stated, "[w]e
must avoid the, even the appearance of impropriety." And given the prior relationship
he had with me as a client...

129

**SARAH OULTON:** I'll quote, if I may, I'll quote you, Your Honor.  May I quote you for the record, please?

**JUDGE DIGANGI:** I always like to hear what I said.  Go ahead.

**SARAH OULTON:** Okay.  You said, *"In reality, I can understand where somebody might say there might be a conflict of interest in this case.  I just want to avoid the image of impropriety.  I think, to keep this clean, I think we need to get somebody else."*

**JUDGE DIGANGI:** It sounded brilliant to me, I don't know about you guys.  What do you want to say?

**MELISSA CURLEY:** Your Honor, I represent, uh, Mr. Sweeney, and I'm from the firm Plourde Bogue Moylan and Marino.  That's one of the firms which Petitioner seeks to disqualify.  Our firm represents Mr. Sweeney in his Petition, uh, for appointment as Personal Representative.  Our firm has no prior history with the Oulton family, our firm has never represented Ms. Oulton, and there is no direct conflict under Rule 1.7.  Uh, secondly our firm has no association with Keough and Sweeney.  We have no affiliations with that firm so there's no disqualification of our firm under Rule 1.10.  Um, if I might continue by way of background.  Uh, our firm filed a Petition for informal, um, administration of the estate.  Um, Ms. Oulton objected to that petition and subsequent to that, Ms. Oulton filed a petition for formal administration.  Uh, our firm, on behalf of Mr. Sweeney, filed an objection to that and, as Ms. Oulton has stated, the court appointed a temporary Personal Representative, uh, that was responsive to a creditor issue.  Um, Michael Couture was appointed and, uh, the creditor issue since that time has been resolved.  Uh, I believe this motion has been filed in advance of the status review which is scheduled for the 31st of this month?  At that time, the court will consider... will consider the continued appointment of Mr. Couture whom, upon information and belief, does not wish to continue as the Personal Representative.  Uh, he's filed motions for fees.  Ms. Oulton has filed an objection to his motion for fees and perhaps that has something to do with it.  Needless to say, I believe this motion was filed as a baseless attempt to discredit our firm and to further be smudge Mr. Sweeney in advance of the status review and perhaps the court's consideration, at that time, of his appointment as the Personal Representative.

**JUDGE DIGANGI:** What's the conflict that you state that this firm has?

**SARAH OULTON:** The conflict, Your Honor, is that through their representation of my former attorney they have gained information about me that they otherwise would not have had.

**JUDGE DIGANGI:** Well, I'll make this easy for you folks.  Why don't you call the BBO and find out if they feel that...

**SARAH OULTON:** I have called the BBO, Your Honor.

**JEROME SWEENEY:** Your Honor, I've looked through my records and nowhere that I have been able to find any representation for Sarah Oulton.  The sole... in... I, I've

known her for many years, as I have known the family for more than 40 years. I was intimate friends with them. Uh, Sarah came to my office sometime, I believe, in 2005, called me and was in dire financial problems, asked me for some advice on her student loan application. I assisted her in that respect. I didn't consider it a legal representation. I never billed her. I never collected from her. I never asked for any money from her. I believe she asked if I would, uh, act as a, um, a represent... a, um, oh... sponsor her, at least, uh, gi... use my name. Regrettably, I think I must have because I've been inundated with Dunning notices ever since, which I haven't responded to, but that was my involvement with Sarah, but in no way did I ever appear for her, did I ever...

**JUDGE DIGANGI**: And you're being represented?

**JEROME SWEENEY**: Yes, Your Honor.

**MELISSA CURLEY**: Correct, Your Honor.

**JEROME SWEENEY**: But not as an attorney.

**JUDGE DIGANGI**: Allright. As I said, call the BBO. If they feel that there's a conflict let the court know. Let the moving party know.

**MELISSA CURLEY**: Okay. **JUDGE DIGANGI**: If they don't feel that there's a conflict, you might want to get a letter from them indicating that. As soon as you get that letter, let me know and I'll, I'll act, either way on the, uh, request.

461.    On October 17, 2013, Attorney Sweeney-2 mailed Plaintiff the Opposition of Jerome V. Sweeney II to Petitioner's Motion to Disqualify the Law Firms of Keough + Sweeney, Ltd., Plourde Bogue Moylan & Marino, LLP, and Dennis R. Brown, P.C.]. (**Exhibit 149**)

462.    Attorney Sweeney-2 deceptively sent this Opposition in an envelope that had a return address of "Law Offices of Jerome V. Sweeney," to likely distance himself from the law firm of Keough + Sweeney, Ltd. The business address, however, was the same address used by Keough + Sweeney, Ltd. (171 Milk Street, Suite 30, Boston, MA 02109) and as of October 17, 2013, there was no record of a business entity called "Law Offices of Jerome V. Sweeney" in The Commonwealth of Massachusetts. Moreover, the Board of Bar Overseers had no such listing in its records.

131

463.    On October 31, 2013, a hearing was held before Judge DiGangi at the Middlesex

County Probate and Family Court (**Exhibit 150**).  During the hearing the following statements

were made by the noted parties:  All parties were sworn and stated the following:

**JUDGE DIGANGI**:  What's before me today, please?

**DEBORAH MASTERSON**:  Your Honor, you put the SPR on for a review this
morning.  It's been 90 days.  I represent the creditor whose claims have been satisfied in
full, so I have filed a Motion to Dismiss the SPR.

**JUDGE DIGANGI**:  Okay.

**DEBORAH MASTERSON**:  But my understanding is that there's also a Motion to
Intervene, to substitute the Petitioner which I would not oppose.  I'm just seeking to
extract **Marlborough Hills** from this.

**JUDGE DIGANGI**:  Anybody have any objection to that Motion?

**MOST**:  No, Your Honor.

**SARAH OULTON**:  Your Honor?

**JUDGE DIGANGI**:  Yes.

**SARAH OULTON**:  I, I'm wanting to put on the record I'm waiving the notice
requirements for this Motion.  I wasn't served notice of it – ten days by mail or seven
days by hand prior to this date – but I'm happy that the Motion get heard today to speed
things along.  I object, however, to the dismissal of **Special Personal Representative
Couture** for the simple fact that he has not fulfilled his duties as Personal
Representative in this case.  Specifically, under 190B, Section 3-703, he had a duty of
loyalty and impartiality to all parties involved in the Estate.  I've not heard one thing
from him.  I've not seen an Accounting.  I'm a Devisee.  I'm not some, you know,
disinterested party.  And when, in fact, he was appointed as SPR on July 25th, um, both
he and **Ms. Masterson** testified under oath that they would be disinterested – that he
was a disinterested third party.  As you know, he submitted a bill last month, um, for
11.3 hours, all of which was spent with the three other Devisees and **Mr. Sweeney**,
whom you disqualified as, as, as Personal Rep in the matter before you on July 25th.  So
for those reasons, I, I am objecting to his dismissal at this time until he provides an
Accounting and, perhaps, I inherit something that was in my mom's Will.

**JUDGE DIGANGI**:  Is there an Accounting some place?

**MICHAEL COUTURE**:  Well, my Accounting's not due yet, but I will file it.

**JUDGE DIGANGI**:  And you'll provide....

132

**MICHAEL COUTURE:** Absolutely.

**JUDGE DIGANGI:** ... everybody with a copy, is that correct?

**MICHAEL COUTURE:** Absolutely. Yes, so....

**JUDGE DIGANGI:** Anybody else want to be heard?

**DEBORAH MASTERSON:** [To **Melissa Curley** (unintelligible)... the intervention.]

**MELISSA CURLEY:** Your Honor, we filed a Motion to Intervene, uh, subject to the present Special, uh, Personal Representative's resignation, so I don't know if that's properly before the court....

**JUDGE DIGANGI:** How are you folks? What are you intervening? Who are you intervening for?

**MELISSA CURLEY:** Uh, my understanding is that the present SPR intends to resign. I'm not sure that's before the court now at this time, subject to his Accounting, so perhaps the Motion to Intervene is premature now.

**JUDGE DIGANGI:** Well who, who are you planning on intervening for?

**MELISSA CURLEY:** Intervene and have, uh, **Jerome Sweeney the Second** appointed as successor SPR. There are other known creditors of the Estate. There are assets that have been identified that need to be marshaled, um, and the creditors need to be paid. **Mr. Sweeney** is nominated under the Will, as been stated, uh, the alternate nominee was **Jerome Sweeney the Third**, none of the heirs at law, uh, are nominated under the Will of the Decedent, uh, there's not been a conflict established as of the date hereof, and there's been no showing that he is unsuitable for the appointment.

**SARAH OULTON:** Pardon, Your Honor, we still have before us the matter of the Motion that I filed and you heard on October 17th with respect to the disqualification of **Jerome V. Sweeney**....

**JUDGE DIGANGI:** Ah, we'll get into that....

**SARAH OULTON:** Okay.

**JUDGE DIGANGI:** ... in a minute

**SARAH OULTON:** Okay.

**JUDGE DIGANGI:** .... but I'm going to allow your Motion.

**DEBORAH MASTERSON:** My Motion to Dismiss?

**JUDGE DIGANGI:** Yes.

133

**DEBORAH MASTERSON:** Thank you. So he doesn't have to resign, right? Because....

**JUDGE DIGANGI:** No, he doesn't have to resign. He still has to give an Accounting.

**MICHAEL COUTURE:** Absolutely.

**JUDGE DIGANGI:** I mean, subject to that Accounting. So...

**DEBORAH MASTERSON:** Sure.

**JUDGE DIGANGI:** But I'm allowing the Motion to....

**DEBORAH MASTERSON:** Thank you.

**JUDGE DIGANGI:** Beside the Motion to Intervene? Do we need to hear that right now or are we gonna wait? Who's gonna....

**DEBORAH MASTERSON:** Well, I think, procedurally, if I... if the SPR has been dismissed there's nothing to intervene into because that's gone. I, I'm a bit confused, so....

**JUDGE DIGANGI:** Well, we didn't want to grant the Motion, right? We grant the Motion....

**DEBORAH MASTERSON:** Are you granting my Motion to Dismiss?

**JUDGE DIGANGI:** Yup.

**DEBORAH MASTERSON:** And you've allowed that? So there's nothing alive to have her intervene into. I think she'd have... or you could....

**JUDGE DIGANGI:** Well, let me ask you this....

**DEBORAH MASTERSON:** ....withdraw my Motion if you're inclined to have

**JUDGE DIGANGI:** Are the creditors, are these other creditors, have they been timely, uh, noticed? What other creditors are there?

**CAROL HLADICK:** Pharmaceuticals and, um, various, um, doctors.

**JUDGE DIGANGI:** How much are those?

**CAROL HLADICK:** Um, the pharmaceuticals...

**JUDGE DIGANGI:** ... things?

**CAROL HLADICK:** ... run about thirty four hundred and then the doctors are, various doctors are co-payments.

134

**JUDGE DIGANGI:** How much, uh, how much is in this Estate?

**CAROL HLADICK:** All.....

**NANCY WILLIAMS:** [unintelligible, whispering to **Carol Hladick** and **Michael Couture**, all of whom are responding to **Nancy Williams**]

**JUDGE DIGANGI:** How much is in the Estate?

**MICHAEL COUTURE:** Around a hundred thousand.

**JUDGE DIGANGI:** What are you, what are you looking to get out of this?

**SARAH OULTON:** Me?

**JUDGE DIGANGI:** Yeah, you.

**SARAH OULTON:** I simply wanted a disinterested third party. I filed that Motion in April, Your Honor. Because....

**JUDGE DIGANGI:** For what purpose?

**SARAH OULTON:** Because they had unlawfully excluded me from my folks' lives through lies and...

**JUDGE DIGANGI:** Well...

**SARAH OULTON:** ... and, and that type of thing....

**JUDGE DIGANGI:** What are you hoping to get out of the residuary of this Estate?

**SARAH OULTON:** An, an honest Accounting, sir, of where the money went. As I have mentioned in, in a prior pleading they had my folks execute Powers of Attorney from the Alzheimer's Unit of the nursing home, which is....

**JUDGE DIGANGI:** Why do you feel, do you feel that you're entitled to more than a fourth of this Est, Estate?

**SARAH OULTON:** No, but as, as I...

**JUDGE DIGANGI:** So what's the problem here? **WHY CAN'T YOU JUST GET THIS CASE DONE AND GET IT OVER WITH?**

**SARAH OULTON:** I'd love to.

**JUDGE DIGANGI:** All these people want to divide

**SARAH OULTON:** I would love to with a disinterested....

135

**JUDGE DIGANGI:** Sir. Ma'am.

**SARAH OULTON:** Okay.

**JUDGE DIGANGI:** What's the problem with this gentleman continuing to serve and pay everybody off? Is there a problem with that?

**MICHAEL COUTURE:** No, and I...

**JUDGE DIGANGI:** I have no problems with your service, sir, so if you, as the SPR, if you want to get all the, uh, all the debts in this case, put 'em under one roof, get 'em paid off, give everybody and Accounting, and we'll divide everything by four after that, and **GET IT DONE.**

**DEBORAH MASTERSON:** [Muttered to **Sarah Oulton**, "<u>Why can't you just accept a check and move on</u>?" and **Sarah Oulton** responded, "Any check **Mr. Couture** cuts must comport with a thorough and accurate Accounting, which was due in September, by the way."]

**MICHAEL COUTURE:** That's o.... that's.... that's more...

**SARAH OULTON:** I'm happy with that, Your Honor. Thank you, Your Honor.

**DEBORAH MASTERSON:** So we'll substitute the Petitioner.

**JUDGE DIGANGI:** Yeah. Allright?

**ALL:** Thank you.

**DEBORAH MASTERSON:** [unintelligible] **Jerome**, and then **Mike** will be [unintelligible]. Is that Allright?

**JUDGE DIGANGI: LET'S JUST GET THIS DONE!!!**

**SARAH OULTON:** Right.

**DEBORAH MASTERSON:** So the Petitioner... so I can withdraw my Motion to...

**JUDGE DIGANGI:** You can withdraw your Motion. I'll... I'll disallow it.

**DEBORAH MASTERSON:** Okay, there ya go. Or I can withdraw it and then Jerome can be, can intervene to nominate **Mike**. Assuming you're willing to do it.

**JEROME SWEENEY:** Sure! Yes!

**DEBORAH MASTERSON:** And you willing to do it for another ninety days?

**JEROME SWEENEY:** Yes!

136

**JUDGE DIGANGI:** PLEASE, LET'S JUST GET THIS DONE!

**JEROME SWEENEY:** Yes!

**JUDGE DIGANGI:** Allright?

**NANCY WILLIAMS:** Thank you, Your Honor.

**JUDGE DIGANGI:** GIVE ME THE PAPERWORK AND LET'S GET IT DONE.

**JEROME SWEENEY:** LET'S GET IT DONE!

**NANCY WILLIAMS:** Thank you very much.

**JUDGE DIGANGI:** I DON'T KNOW WHY THIS WASN'T DONE A LONG TIME AGO, LIKE, TEN POUNDS OF PAPER AGO.

**DAVID OULTON:** YES, SIR!

**JUDGE DIGANGI:** Allright.

**JEROME SWEENEY:** Thank you.

**JUDGE DIGANGI:** Give me the paperwork. That'll be allowed. Allright? Ninety days continuance.

**NANCY WILLIAMS:** Thank you, Your Honor.

**JUDGE DIGANGI:** How much time do you think you're gonna be able, uh, need to close this out?

**MICHAEL COUTURE:** I would say 60 days.

**JUDGE DIGANGI:** I'll give ya 90 days, just to make sure this [unintelligible], allright?

**MICHAEL COUTURE:** Allright.

**JUDGE DIGANGI:** Continued for 90 days. Allright. January 30th.

**DEBORAH MASTERSON:** [Muttering unintelligibly to others]

**ALL:** Thank you, Your Honor.

464.   On October 31, 2013, Attorney Curley filed a Motion of Jerome V. Sweeney II to

Intervene as Substitute Petitioner for Colonial Health Group-Westridge, LLC d/b/a Marlborough

Hills Healthcare (**Exhibit 151**).

465.   Attorney Curley perjured herself stating, "All interested persons were present

having no objection to this motion." Plaintiff objected to this third attempt by Attorney

Sweeney-2 to regain control of the Estate of Carol Jane Oulton.

466.   On October 31, 2013, Attorney Curley also filed a Motion to Intervene in Petition

for Appointment of Special Personal Representative Colonial Health Group-Westridge, LLC

d/b/a Marlborough Hills Healthcare (**Exhibit 152**). In an incredible (and unethical) fourth

attempt to get Attorney Sweeney-2 appointed as Personal Representative of the Estate of Carol,

Attorney Curley, who is not counsel for Colonial Health Group-Westridge LLC, files this motion

as though she is, in fact, representing Colonial. Attorney Curley wrote,

> Now comes Jerome Sweeney the Petitioner (**NOTE** – title says
> Colonial is petitioner) in this action who moves this honorable
> court as follows: — (Curley's handwritten statement follows) —
> The creditor of the Estate of Carol Jane Oulton, Colonial Health
> Group Westbridge (WRONG) LLC filed a petition for the
> appointment of Special Personal Representative on June 10, 2013.
> The court granted Colonial's petition and appointed Michael
> Couture as Special Personal Representative to preserve estate
> assets and to remit payment to said creditor, Colonial. As of the
> date hereof Colonial has been paid. The court appointed Special
> Personal Representative wishes to resign and Jerome Sweeney II
> wishes to intervene for purposes of being named the Special
> Personal Representative to address the remaining creditors of the
> Estate pending his appointment as Personal Representative per
> section 3-203(c) (1).

467.   On November 18, 2013, the firm of Plourde Bogue Moylan & Marino, LLP

prepared an invoice (**Exhibit 153**) to Jerome V. Sweeney, one of several executors de son tort

intermeddling in the Oultons' estates. This invoiced billed for the following items:

138

## PLOURDE, BOGUE, MOYLAN & MARINO, LLP

50 Exchange Terrace, Suite 320
Providence, RI 02903
Tel (401) 453-0550
Fax (401) 421-7806

Invoice submitted to:
Jerome V Sweeney, II, Esq.
171 Milk Street, Ste. 30
Boston, MA 02109

November 18, 2013

Invoice #    130908

Page         1

Professional Services

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 3/7/2013 | SR | Conference with Tom Moylan; set up new file for client; draft transmittal letter to probate court to commence proceedings. | 0.90 | 90.00 |
| 3/7/2013 | TJM | Attention to file, review financial information and estate planning documents forwarded by decedent's daughter, phone conference with Nancy Williams, prepare documents needed to open probate. | 2.90 | 870.00 |
| 3/12/2013 | SR | Scan in all tax info and financial info provided by client; prepare letters to heirs, Medical Division, and Veterans Affairs to transmit notice of petition and send all via certified mail return receipt requested with copies to Jerome V. Sweeney, II. | 1.60 | 160.00 |
| 3/12/2013 | TJM | Review email sent from Nancy Williams to Jerry Sweeney containing question regarding probate proceedings for Carol Oulton; respond to client's email and address all questions. | 0.50 | 150.00 |
| 3/22/2013 | SR | Update Cover letter, prepare packet of probate docs to be sent via fedex to Probate Court for filing; search for year purchased home and amount purchased for Income Tax Return. | 0.60 | 59.61 |
| 5/3/2013 | SR | Telephone call with Kathleen at the Probate Court regarding issues with Estate; | 0.25 | 25.00 |
| 5/10/2013 | TJM | Attention to file, conference with Jerome Sweeney to discuss motion filed by Sarah Oulton, review motion. | 1.40 | 490.00 |
| 5/10/2013 | JVS | Travel to probate court to review file and discuss issues with clerk. | 2.00 | 300.00 |
| 5/14/2013 | TJM | Prepare Notice of Appearance and Objection to Motion; Phone conference with Nancy; Conference with paralegal. | 1.90 | 665.00 |
| 6/14/2013 | SR | Review police detail invoices sent from Jason Port, scan and file. | 0.20 | 20.00 |

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

Jerome V Sweeney, II, Esq.                                                                    Page    2

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 7/2/2013 | TJM | Review petition to admit Will filed by Sarah Oulton, review Creditor's motion, research MA UPC, research law considering suitability of personal representative, review prior evidence concerning unsuitability of Petitioner, conference with Petitioner's siblings, prepare and file affidavit of objections. | 6.20 | 2,170.00 |
| 7/3/2013 | SR | Attention to forwarding copy of Affidavit and exhibits sent to probate court for filing to heirs at law via certified mail return receipt requested. | 0.80 | 80.00 |
| 7/22/2013 | TJM | Draft opposition to creditor motion for appointment of special personal representative. Conference with Jerome Sweeney regarding same. | 1.40 | 490.00 |
| 7/23/2013 | SR | Draft letter to probate court to transmit opposition to motion for filing via Fed Ex; draft letter to Attorney Masterson to transmit copy of Opposition being filed with probate court and fax a copy of the same. | 0.60 | 60.00 |
| 7/24/2013 | TJM | Review motion for extension of time filed by Sarah Oulton,  conference with Jerome Sweeney, prepare for motion hearing. | 1.30 | 455.00 |
| 7/25/2013 | JVS | Attend Motion for Appointment of Special Personal Representative. | 6.00 | 900.00 |
| 7/25/2013 | TJM | Attention to file, phone conference with Jerry Sweeney regarding hearing. | 0.40 | 140.00 |
| 9/23/2013 | TJM | Phone conference with Michael Couture, Special Personal Representative, regarding Sarah's objection to his  motion for fees. | | 0.30 NO CHARGE |
| 10/16/2013 | MLC | Review Motion and Opposition to Disqualification; review docket and Rules of Civil Procedure on Service of Opposition (timing); telephone call with Thomas Moylan, Esq. regarding background, etc. | 1.37 | 321.17 |
| 10/18/2013 | MLC | Review letter to BBO print and fax to BBO and advise that it's needed in Court at time of status review on 10/31. | | 0.20 NO CHARGE |
| 10/17/2013 | MLC | Preparation for hearing - notes; Attend hearing on Motion to Disqualify PBMM/Jerome Sweeney, II Esq.; meet with Thomas Moylan, Esq. and Jerry Sweeney, Esq. regarding same; go to Mass BBO per Court Order and request information on getting no conflict/disqualification letter; advise Thomas Moylan, Esq. of contact Bruce Eisenhut and fax for sending letter. | 2.80 | 658.00 |
| 10/17/2013 | MLC | Travel time to and from Boston for hearing. | | 2.00 NO CHARGE |
| 10/30/2013 | TJM | Additional research issues involving suitability of personal representative. | 2.00 | 700.00 |
| 10/31/2013 | MLC | Court Appearance - Status Review - Motion to Intervene/Substitute Petitioner/Motion to Intervene as Successor SPR (this was continued to 1/30/13) | 2.50 | 587.50 |
| 10/30/2013 | MLC | Review file and new Probate Court Forms/Legal Research from Thomas Moylan, Esq.; Telephone call with Michael Couture, Esq. regarding procedural steps and what to file; discussions with Thomas Moylan, Esq. | 1.25 | 293.75 |
| 11/7/2013 | SR | Telephone call with Nancy Williams regarding preparing packet to be sent to executor. | 0.17 | 16.67 |

*[handwritten note:] contents of "Packet to be sent to Executor" ?*
*Who is Executor to whom this refers ?*

*Oulton v. Hladick, et al. -- Verified Complaint and Demand for Jury Trial*

Jerome V Sweeney, II, Esq.                                                                    Page   3

| | | Hours | Amount |
|---|---|---|---|
| 10/18/2013 TJM | Per Order of Judge, draft letter to BBO requesting ruling on whether Ploudra, Bogue, Moylan & Marino, LLP was disqualified from representing Jerry Sweeney. | 1.10 | 385.00 |
| | For professional services rendered | 42.64 | $10,033.70 |
| | Additional Charges : | | |
| 3/12/2013 | Certified mail to heirs, Veterans, and Medical Assistance to give Notice of Petition | | 36.86 |
| 3/22/2013 | Middlesex County Probate Court - open probate | | 405.00 |
| | FedEx-probate docs to court for filing | | 14.06 |
| 3/26/2013 | Middlesex County Probate Court - Certificate of Appointment | | 10.00 |
| 4/19/2013 | Notice of Petition for Informal Appointment to heirs, Division of Medical Assistance and Veterans Affairs. | | 36.68 |
| 7/3/2013 | certified mail - notice of Affidavit of Objection | | 32.68 |
| 7/8/2013 | FedEx to Middlesex Probate & Family Court | | 15.40 |
| 7/23/2013 | FedEx-Opposition to Motion to Probate Court | | 15.40 |
| 9/24/2013 | Middlesex Probate & Family Court - copy of Probate file | | 15.00 |
| 10/17/2013 | Parking Expense and travel expense (train/cab). | | 40.50 |
| 10/31/2013 | Parking Expense/Train Ticket/Cab from South Station | | 45.50 |
| | Total additional charges | | $666.86 |
| | Total amount of this bill | | $10,763.56 |
| | Balance due | | $10,763.56 |

468.   Here, PBMM is billing the Estate of Carol $10,753.56 for its representation of

Sweeney -2 in his desperate attempts to be appointed as Personal Representative of the Estate of

Carol so that he can continue to hide the misappropriation of funds, etc.

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

469.    In the entry dated May 10, 2013, PBMM is attempting to bill $300 to pay Attorney Sweeney-2, PBMM's purported client for time spent traveling to Probate Court to speak with the clerk.

470.    This invoice, furthermore, also contains reference to the Natick Police Details that the Sibling Defendants and others hired for the Oultons' wakes, funerals, and burials.

471.    On December 18, 2013, Hansom Federal Credit Union sent a letter to Michael Couture (Exhibit 154) transmitting checks payable to the estate of Carol Oulton in the amount of $2036.52 regarding account 262631 and $1015.52 regarding account 262630.

472.    On December 20, 2013, a Transaction Receipt (Exhibit 155) stating that the Oultons' Middlesex Bank Accounts are closed was sent to Carol Hladick at her residence. The receipt refers to two bank accounts. The first account ending in 8081 was closed on December 20, 2013, with an amount withdrawn of $38,245.13. The second account ending in 0156 was also closed on December 20, 2013, with a withdrawn amount of $155.03.

473.    On December 24, 2013, Attorney Couture mailed a letter (Exhibit 156) to Plaintiff transmitting Claim for Death Benefits for the Federal Employees Group Life Insurance (FEGLI) through MetLife. Included in this packet

Death Certificate of Carol Jane Oulton

Appointment papers naming Attorney Couture as Special Personal Representative

Copies of letters received by Agency.

474.    On December 26, 2013, Couture sent an email (Exhibit 157) to David Bartley Subject: Follow Up to 12-10-2013

> "My goal was to prepare everything in one package. Attached are as follows:
>
> 1. Invoices for Services to PBMM on behalf of Attorney Jerome

142

Sweeney

2. Other various outstanding balances

3. Mirick O'Connell Accounting of Oulton IOLTA

4. Mirick O'Connell Explanation of Closing Proceeds HUD and Deed

5. Estate of Carol Oulton Balance Sheet - Standard

6. Estate of Carol Oulton Balance Sheet – Detailed

7. Invoice and Proof of Payment

The Balance Sheet detail has all transactions however it is somewhat confusing because it totals the transfer between the Checking and Savings accounts. The bills paid to date include the fees approved by the court (Mirick O'Connell, Marlborough Hills, and my fees as PR). The only other bill paid is the Corporate Bond. I intend to pay the monument and excavation invoice to Ackerman this week. All other invoices require court approval. I am expecting in the process of surrendering Donald Oulton's Life Insurance estimated payment of $139,250 and Carol Oulton's Met Life shares, value unknown."

I will update you with any additional transactions. I am expecting in the process of surrendering Donald Oulton's life insurance (estimated payment of $139, 250.00) and Carol Oulton's MetLife Shares (value unknown)

475.    On January 9, 2014, a check (**Exhibit 158**) in the amount of $1,560.37 was issued from MetLife payable to Michael Couture in his capacity as person representative for the Estate of Carol Oulton.

476.    On January 10,2014 Attorney Couture issued a check (**Exhibit 159**) in the amount of $1806.25 payable to Ackerman Monument. The Check is drawn from Century Bank on the account of the estate of Carol Jane Oulton. Included with **Exhibit 159** is Ackerman's invoice

477.    On January 10, 2014, Couture issued a check (**Exhibit 160**) in the amount of $450.00 to Allen Bush Jr.

143

478.    On January 13, 2014, Michael Couture, in his capacity as special personal representative of the estate of Carol Oulton, received a payment (Exhibit 161) in the amount $139,986.38 from The Office of Federal Employees Group Life Insurance. The benefits were in the name of Donald Oulton.

479.    On January 20, 2014, after discovering that documents were missing from the case file for In Re The Estate of Carol Jane Oulton, Plaintiff, through counsel, prepared a motion (Exhibit 162) for an order to restore case file in its entirety along with a supporting affidavit.

480.    On January 20, 2014, Plaintiff, through counsel, prepared a motion (Exhibit 163) to strike the written affidavit of objections of creditor Colonial Health Group-Westridge, LLC, D/B/A Marlborough Hills Healthcare center and the affidavit of objections of Jerome Sweeney II pursuant to G.L. Chapter 190B Section 1-401(e)

481.    On January 21, 2014, Attorney Gerard M. Mahaney, the named executor under the wills of the Oultons, prepared an affidavit (Exhibit 164). The affidavit states that Attorney Mahaney was a personal friend of the Oultons. Mr. Mahaney was not notified of the death of the Oultons until December 6, 2013, when he received a phone call from David Bartley.
Mr. Mahaney states that until this date he was unaware that he was named to serve as successor executor to his older brother John Mahaney. Mahaney states that at no time prior to being advised by Bartley was he made aware of his nomination. He further states that no person has contacted him or asked him to fulfill the duties incumbent upon him via the will of Carol Oulton and that he would have served if asked or notified.

482.    On January 21, 2014, Michael Couture in his capacity as personal representative for the estate of Carol Oulton, received a check (Exhibit 165) in the amount of $72.23 from MetLife.

144

483.   On January 24, 2014, at 9:40 p.m. Attorney Couture sent an email (Exhibit 166)

to David Bartley containing the following:

> David,
> I am attaching the inventory and a draft accounting for the Oulton
> estate. The inventory is accurate-I will sign and deliver it. The
> accounting has a $.60 discrepancy so I will go through this again to
> find it. This is a draft accounting and I can bring an updated
> version Thursday.
>
> Schedule C on the accounting reflects a current account balance of
> $290,211.09. I will file a motion for partial distribution of $70,000
> per heir of Carol Oulton, for a total partial disbursement of
> $280,000.00.
>
> I am also attaching the backup draft accounting for your files, you
> may already have some of these. 1. Mirick O'Connell accounting
> of funeral/burial expenses and delivery of remainder assets to
> personal representative 2. Check from Mirick to personal
> representative 3. Delivery of funds from Hansom credit union
> accounts x2 4. Middlesex Savings Printout for acct #8081 5.
> Brookline Municipal Credit Union (December 2012 and October
> 2013 statements) 6. Federal employees life insurance payment 7.
> MetLife check for sale of common stock 8. Check to Ackerman
> Monument 9. Check to Allen Bush

484.   The Bank Records provided by Attorney Couture (Exhibit 167) appear to be

forged and upon information and belief not an accurate reflection of the Oultons' Bank accounts

at Century Bank.

485.   On January 27, 2014, Michael Couture signed under the penalties of perjury an

inventory (Exhibit 168) in the estate of the Estate of Carol Jane Oulton listing the following

items:

> Peoples United Bank Acct. #7262  IOLTA Account at Mirick
> O'Connell $216,026.29
>
> Middlesex savings Bank #8081 $38.230.64 and account # 0156
> $154.91

145