Jerome V Sweeney, II, Esq.

Page 2

|  |  |  | Hours | Amount |
|---|---|---|---|---|
| 7/2/2013 | TJM | Review petition to admit Will filed by Sarah Oulton, review Creditor's motion, research MA UPC, research law considering suitability of personal representative, review prior evidence concerning unsuitability of Petitioner, conference with Petitioner's siblings, prepare and file affidavit of objections. | 6.20 | 2,170.00 |
| 7/3/2013 | SR | Attention to forwarding copy of Affidavit and exhibits sent to probate court for filing to heirs at law via certified mail return receipt requested. | 0.80 | 80.00 |
| 7/22/2013 | TJM | Draft opposition to creditor motion for appointment of special personal representative. Conference with Jerome Sweeney regarding same. | 1.40 | 490.00 |
| 7/23/2013 | SR | Draft letter to probate court to transmit opposition to motion for filing via Fed Ex; draft letter to Attorney Masterson to transmit copy of Opposition being filed with probate court and fax a copy of the same. | 0.60 | 60.00 |
| 7/24/2013 | TJM | Review motion for extension of time filed by Sarah Oulton, conference with Jerome Sweeney, prepare for motion hearing. | 1.30 | 455.00 |
| 7/25/2013 | JVS | Attend Motion for Appointment of Special Personal Representative. | 6.00 | 900.00 |
| 7/25/2013 | TJM | Attention to file, phone conference with Jerry Sweeney regarding hearing. | 0.40 | 140.00 |
| 9/23/2013 | TJM | Phone conference with Michael Couture, Special Personal Representative, regarding Sarah's objection to his motion for fees. | | 0.30 NO CHARGE |
| 10/16/2013 | MLC | Review Motion and Opposition to Disqualification; review docket and Rules of Civil Procedure on Service of Opposition (timing); telephone call with Thomas Moylan, Esq. regarding background, etc. | 1.37 | 321.17 |
| 10/18/2013 | MLC | Review letter to BBO print and fax to BBO and advise that it's needed in Court at time of status review on 10/31. | | 0.20 NO CHARGE |
| 10/17/2013 | MLC | Preparation for hearing - notes; Attend hearing on Motion to Disqualify PBMM/Jerome Sweeney, II Esq.; meet with Thomas Moylan, Esq. and Jerry Sweeney, Esq. regarding same; go to Mass BBO per Court Order and request information on getting no conflict/disqualification letter; advise Thomas Moylan, Esq. of contact Bruce Eisenhut and fax for sending letter. | 2.80 | 658.00 |
| 10/17/2013 | MLC | Travel time to and from Boston for hearing. | | 2.00 NO CHARGE |
| 10/30/2013 | TJM | Additional research issues involving suitability of personal representative. | 2.00 | 700.00 |
| 10/31/2013 | MLC | Court Appearance - Status Review - Motion to Intervene/Substitute Petitioner/Motion to Intervene as Successor SPR (this was continued to 1/30/13) | 2.50 | 587.50 |
| 10/30/2013 | MLC | Review file and new Probate Court Forms/Legal Research from Thomas Moylan, Esq.; Telephone call with Michael Couture, Esq. regarding procedural steps and what to file; discussions with Thomas Moylan, Esq. | 1.25 | 293.75 |
| 11/7/2013 | SR | Telephone call with Nancy Williams regarding preparing packet to be sent to executor. | 0.17 | 16.67 |

*contents of "Packet to be sent to Executor" ?
Who is Executor to whom this refers ?*

*Oulton v. Hladick, et al. -- Verified Complaint and Demand for Jury Trial*

Jerome V Sweeney, II, Esq.                                                                Page   3

| | | Hours | Amount |
|---|---|---|---|
| 10/18/2013 TJM | Per Order of Judge, draft letter to BBO requesting ruling on whether Ploudra, Bogue, Moylan & Marino, LLP was disqualified from representing Jerry Sweeney. | 1.10 | 385.00 |
| | For professional services rendered | 42.64 | $10,033.70 |

Additional Charges :

| | |
|---|---|
| 3/12/2013 Certified mail to heirs, Veterans, and Medical Assistance to give Notice of Petition | 36.86 |
| 3/22/2013 Middlesex County Probate Court - open probate | 405.00 |
| FedEx-probate docs to court for filing | 14.00 |
| 3/26/2013 Middlesex County Probate Court - Certificate of Appointment | 10.00 |
| 4/19/2013 Notice of Petition for Informal Appointment to heirs, Division of Medical Assistance and Veterans Affairs. | 36.68 |
| 7/3/2013 certified mail - notice of Affidavit of Objection | 32.68 |
| 7/8/2013 FedEx to Middlesex Probate & Family Court | 15.40 |
| 7/23/2013 FedEx-Opposition to Motion to Probate Court | 15.40 |
| 9/24/2013 Middlesex Probate & Family Court - copy of Probate file | 15.00 |
| 10/17/2013 Parking Expense and travel expense (train/cab). | 40.50 |
| 10/31/2013 Parking Expense/Train Ticket/Cab from South Station | 45.50 |
| Total additional charges | $666.86 |
| Total amount of this bill | $10,763.56 |
| Balance due | $10,763.56 |

468.    Here, PBMM is billing the Estate of Carol $10,753.56 for its representation of

Sweeney -2 in his desperate attempts to be appointed as Personal Representative of the Estate of

Carol so that he can continue to hide the misappropriation of funds, etc.

469. In the entry dated May 10, 2013, PBMM is attempting to bill $300 to pay Attorney Sweeney-2, PBMM's purported client for time spent traveling to Probate Court to speak with the clerk.

470. This invoice, furthermore, also contains reference to the Natick Police Details that the Sibling Defendants and others hired for the Oultons' wakes, funerals, and burials.

471. On December 18, 2013, Hansom Federal Credit Union sent a letter to Michael Couture (Exhibit 154) transmitting checks payable to the estate of Carol Oulton in the amount of $2036.52 regarding account 262631 and $1015.52 regarding account 262630.

472. On December 20, 2013, a Transaction Receipt (Exhibit 155) stating that the Oultons' Middlesex Bank Accounts are closed was sent to Carol Hladick at her residence. The receipt refers to two bank accounts. The first account ending in 8081 was closed on December 20, 2013, with an amount withdrawn of $38,245.13. The second account ending in 0156 was also closed on December 20, 2013, with a withdrawn amount of $155.03.

473. On December 24, 2013, Attorney Couture mailed a letter (Exhibit 156) to Plaintiff transmitting Claim for Death Benefits for the Federal Employees Group Life Insurance (FEGLI) through MetLife. Included in this packet

Death Certificate of Carol Jane Oulton

Appointment papers naming Attorney Couture as Special Personal Representative

Copies of letters received by Agency.

474. On December 26, 2013, Couture sent an email (Exhibit 157) to David Bartley Subject: Follow Up to 12-10-2013

> "My goal was to prepare everything in one package. Attached are as follows:
>
> 1. Invoices for Services to PBMM on behalf of Attorney Jerome

142

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

Sweeney

2. Other various outstanding balances

3. Mirick O'Connell Accounting of Oulton IOLTA

4. Mirick O'Connell Explanation of Closing Proceeds HUD and Deed

5. Estate of Carol Oulton Balance Sheet - Standard

6. Estate of Carol Oulton Balance Sheet – Detailed

7. Invoice and Proof of Payment

The Balance Sheet detail has all transactions however it is somewhat confusing because it totals the transfer between the Checking and Savings accounts. The bills paid to date include the fees approved by the court (Mirick O'Connell, Marlborough Hills, and my fees as PR). The only other bill paid is the Corporate Bond. I intend to pay the monument and excavation invoice to Ackerman this week. All other invoices require court approval. I am expecting in the process of surrendering Donald Oulton's Life Insurance estimated payment of $139,250 and Carol Oulton's Met Life shares, value unknown."

I will update you with any additional transactions. I am expecting in the process of surrendering Donald Oulton's life insurance (estimated payment of $139, 250.00) and Carol Oulton's MetLife Shares (value unknown)

475.    On January 9, 2014, a check (**Exhibit 158**) in the amount of $1,560.37 was issued from MetLife payable to Michael Couture in his capacity as person representative for the Estate of Carol Oulton.

476.    On January 10,2014 Attorney Couture issued a check (**Exhibit 159**) in the amount of $1806.25 payable to Ackerman Monument. The Check is drawn from Century Bank on the account of the estate of Carol Jane Oulton. Included with **Exhibit 159** is Ackerman's invoice

477.    On January 10, 2014, Couture issued a check (**Exhibit 160**) in the amount of $450.00 to Allen Bush Jr.

143

478.    On January 13, 2014, Michael Couture, in his capacity as special personal representative of the estate of Carol Oulton, received a payment (Exhibit 161) in the amount $139,986.38 from The Office of Federal Employees Group Life Insurance. The benefits were in the name of Donald Oulton.

479.    On January 20, 2014, after discovering that documents were missing from the case file for In Re The Estate of Carol Jane Oulton, Plaintiff, through counsel, prepared a motion (Exhibit 162) for an order to restore case file in its entirety along with a supporting affidavit.

480.    On January 20, 2014, Plaintiff, through counsel, prepared a motion (Exhibit 163) to strike the written affidavit of objections of creditor Colonial Health Group-Westridge, LLC, D/B/A Marlborough Hills Healthcare center and the affidavit of objections of Jerome Sweeney II pursuant to G.L. Chapter 190B Section 1-401(e)

481.    On January 21, 2014, Attorney Gerard M. Mahaney, the named executor under the wills of the Oultons, prepared an affidavit (Exhibit 164). The affidavit states that Attorney Mahaney was a personal friend of the Oultons. Mr. Mahaney was not notified of the death of the Oultons until December 6, 2013, when he received a phone call from David Bartley.
Mr. Mahaney states that until this date he was unaware that he was named to serve as successor executor to his older brother John Mahaney. Mahaney states that at no time prior to being advised by Bartley was he made aware of his nomination. He further states that no person has contacted him or asked him to fulfill the duties incumbent upon him via the will of Carol Oulton and that he would have served if asked or notified.

482.    On January 21, 2014, Michael Couture in his capacity as personal representative for the estate of Carol Oulton, received a check (Exhibit 165) in the amount of $72.23 from MetLife.

144

483.   On January 24, 2014, at 9:40 p.m. Attorney Couture sent an email (Exhibit 166)

to David Bartley containing the following:

> David,
> I am attaching the inventory and a draft accounting for the Oulton
> estate. The inventory is accurate-I will sign and deliver it. The
> accounting has a $.60 discrepancy so I will go through this again to
> find it. This is a draft accounting and I can bring an updated
> version Thursday.
>
> Schedule C on the accounting reflects a current account balance of
> $290,211.09. I will file a motion for partial distribution of $70,000
> per heir of Carol Oulton, for a total partial disbursement of
> $280,000.00.
>
> I am also attaching the backup draft accounting for your files, you
> may already have some of these. 1. Mirick O'Connell accounting
> of funeral/burial expenses and delivery of remainder assets to
> personal representative 2. Check from Mirick to personal
> representative 3. Delivery of funds from Hansom credit union
> accounts x2 4. Middlesex Savings Printout for acct #8081 5.
> Brookline Municipal Credit Union (December 2012 and October
> 2013 statements) 6. Federal employees life insurance payment 7.
> MetLife check for sale of common stock 8. Check to Ackerman
> Monument 9. Check to Allen Bush

484.   The Bank Records provided by Attorney Couture (Exhibit 167) appear to be

forged and upon information and belief not an accurate reflection of the Oultons' Bank accounts

at Century Bank.

485.   On January 27, 2014, Michael Couture signed under the penalties of perjury an

inventory (Exhibit 168) in the estate of the Estate of Carol Jane Oulton listing the following

items:

> Peoples United Bank Acct. #7262  IOLTA Account at Mirick
> O'Connell $216,026.29
>
> Middlesex savings Bank #8081 $38.230.64 and account # 0156
> $154.91

Hanscom Federal Credit Union #2630 $2,032.49 and account #2631 $1073.41

Brookline Municipal Credit Union #5400 $158.60

MetLife stock 29 shares $953.81

486.    NOTE - Attorney Couture lists the wrong Docket No.: MI 13P182EA on this

document.

487.    On January 27, 2014, Michael Couture sent an email (Exhibit 169) to David

Bartley transmitting Motion for Partial Distribution and Motion for Fees. The email states the

following:

> I am attaching a motion for partial distributions and a motion for fees. The invoice attached is through December. I can bring a finalized January invoice at the hearing. I am also attaching a motion to extend the appointment of SPR for sixty days.
>
> I received another deposit today from MetLife- the un-cashed divided distributions. I will update the draft accordingly. I called the pension department and left another message with the rep assigned to my application for death benefits.
>
> Finally, I have received your motion regarding the missing file. Middlesex is somewhat notorious for missing files.

488.    Attorney Couture provided Attorney Bartley with a copy of his Invoice dated

January 1, 2014.

489.    The Invoice lists, among other things, telephone calls with the co-conspirators

(Curley, Port, Masterson, Moylan, Williams, et al.), and the amount Attorney Couture is

claiming in this Invoice is $4,996.45.

146

 LAW GROUP

440 Broadway
Somerville, MA 02145
Tel: (617) 841-4000
Fax: (617) 629-7500

Michael R. Couture, Esq.
Winston Law Group, LLC
440 Broadway
Somerville, MA 02145

Invoice Date: January 27, 2014
Invoice No.: 22802
Client/Matter No.: 7360.000
Client/Matter Name: Carol Jane Oulton
Page: 1

RE: Conservatorship

## For Professional Services

|  |  | Hours |  |
|---|---|---|---|
| **08/23/2013** JB | Filed Motion for SPR Fees at Middlesex Probate/Scheduled Motion for Hearing. | 0.80 | 140.00 |
| **08/28/2013** GM | Telephone conference with clerk regarding rescheduling hearing for motion of fees. | 0.20 | 25.00 |
| **08/29/2013** GM | Preparation of Notice of Hearing and letters to interested parties via certified mail. | 1.00 | 125.00 |
| **09/12/2013** MC | Travel to Middlesex Probate Court for hearing before Judge DiGangi. Meeting with Sarah Oulton, review Opposition from Sarah. Meeting with Sarah following hearing. Follow up telephone conference with Atty. Masterson. | 2.00 | 500.00 |
| **09/20/2013** MC | Telephone conference with Jason Port, re: motion for fees. | 0.20 | 50.00 |
| **09/23/2013** MC | Telephone conference with Atty. Tom Moylan. | 0.10 | 25.00 |
| **09/30/2013** GM | Coordinate invoices and process payment to facilities. | 0.20 | 25.00 |
| **10/07/2013** GM | Preparation of letter and certified mailing to Attorney Masterson. | 0.30 | 37.50 |
| **10/09/2013** MC | Telephone conference with Atty. Tom Moylan, re: substitute judgment. | 0.10 | 25.00 |

147

*Oulton v. Hladick, et al. -- Verified Complaint and Demand for Jury Trial*

Michael R. Couture, Esq.

| | Invoice Date: | January 27, 2014 |
|---|---|---|
| | Invoice No. | 22802 |
| | Client/Matter No.: | 7360.000 |
| | | Page: 2 |

| | | | Hours | |
|---|---|---|---|---|
| 10/22/2013 | MC | Telephone conference with Deb Masterson, re: motions to intervene. | 0.20 | 50.00 |
| 10/30/2013 | MC | Draft Prepare Inventory. Telephone conference with Atty. Melissa Curley. | 0.00 | 200.00 |
| 10/31/2013 | MC | Travel to Middlesex Probate for hearing before Judge DiGangi. Meeting with parties and discuss creditors and accountings. | 3.00 | 750.00 |
| 11/07/2013 | MC | Email to Sarah Oulton, re: cooperation with administration of estate. | 0.40 | 70.00 |
| 11/09/2013 | MC | Email to Atty. Jason Port for documents. | 0.10 | 17.50 |
| 11/20/2013 | MC | Review invoice from Atty. Moylan. Email to Tom Moylan with request for statements. | 0.40 | 70.00 |
| 11/21/2013 | MC | Telephone conference with Nancy Williams, re: ascertaining various bank accounts and outstanding creditors. | 0.50 | 87.50 |
| 11/26/2013 | MC | Read and reply to email from Sarah Oulton and from Atty. Bartley. | 0.10 | no charge |
| 12/03/2013 | MC | Set up telephone conference with Attorney Bartley. | 0.10 | no charge |
| 12/09/2013 | MC | Review file for bank statements. Telephone conference with representatives from Brookline Credit Union, Middlesex Savings, and Hanscom Credit Union (3x). Telephone conference with federal employee pension and federal employee group life insurance. Review paperwork. Telephone conference with Carol Hladick, re: update. Telephone conference with Atty. Gerry Mahaney, re: status of Will and Codicil. Instructions for clerk to order five original death certificates for both Carol and Donald Oulton. Instructions to law clerk to retrieve certified copy of temporary orders that expire on Jan. 31. | 5.00 | 875.00 |
| 12/09/2013 | MC | Telephone conference with Atty. David Bartley. Arrange for order of death certificates for Carol and Donald. | 0.20 | 35.00 |
| 12/10/2013 | MC | Telephone conference with Atty. Bartley and Sarah Oulton, discuss several issues and housekeeping items for administration of estate. | 0.70 | 175.00 |
| | MC | Coordinate life insurance and other accounts, prepare instructions to law clerk. | 1.00 | 175.00 |

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

|  | Invoice Date: | January 27, 2014 |
|---|---|---|
|  | Invoice No. | 22802 |
|  | Client/Matter No.: | 7360.000 |
| Michael R. Couluro, Esq. |  | Page: 4 |

Previous Balance                                                                $2,712.50

**Payments Received**

Payment Received Thru 01/27/2014                                              -2,712.50

BALANCE NOW DUE                                                                $4,996.45

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

Invoice Date: January 27, 2014
Invoice No. 22802
Client/Matter No.: 7360.000
Page: 3

Michael R. Couture, Esq.

| | | Hours | |
|---|---|---|---|
| 12/17/2013 MC | Read and reply to email from Atty. Bartley. | 0.10 | 17.50 |
| 12/18/2013 MC | Meet with clerk on life insurance and retirement funds project. | 0.30 | 52.50 |
| 12/19/2013 MC | Telephone conference with Nancy Williams, re: various items. | 0.40 | 70.00 |
| 12/20/2013 MC | Travel to Middlesex Probate Court in Cambridge to obtain original Letters and Decree. Travel to Middlesex Bank in Framingham to meet with bank officer, deliver original probate documents, and close out accounts. | 2.00 | 350.00 |
| 12/24/2013 MC | Meeting with clerk to review mailings for life insurance and benefits application. Detailed email to Atty David Bartley, re: status update on tasks. | 0.50 | 87.50 |
| 12/28/2013 MC | Travel to Century Bank for Medallion from bank officer Jeannie Scarpa on MetLife surrender forms. | 0.50 | 87.50 |
| MC | Prepare response for Atty. Bartley, including profit and loss for estate account, copies of invoices, copy of Atty. Sweeney's invoice, HUD from sale of home, correspondence from Mirick O'Connell, and other items of administration. | 1.50 | 262.50 |
| 12/30/2013 MC | Discussion with clerk, regarding obtaining original death certificate. | 0.10 | 17.50 |
| | **Total Fees** | **22.60** | **4,402.50** |

### Timekeeper Recap

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Michael Couture | 13.00 | $175.00 | $2,276.00 |
| Michael Couture | 7.10 | 250.00 | 1,775.00 |
| Joshua Bearce | 0.80 | 175.00 | 140.00 |
| Giselle Menendez | 1.70 | 125.00 | 212.50 |

### Disbursements

| | | |
|---|---|---|
| 09/12/2013 | Checks For Less- checks | 25.95 |
| 09/12/2013 | East Cambridge Garage- parking | 10.00 |
| 10/31/2013 | Parking - East Cambridge parking garage | 4.00 |
| 12/08/2013 | Vitalcheck: Oulton, Donald- death certficate | 277.00 |
| 12/06/2013 | Oulton, Carol Jane- death certificates | 277.00 |
| | **Total Disbursements** | **593.95** |

| | |
|---|---|
| TOTAL DUE THIS INVOICE | 4,996.45 |

490.  In January 28, 2014, Attorney Bartley sent an email (**Exhibit 170**) to Attorney

Port cc: Attorney Couture, bcc Plaintiff, with Subject matter:  Oulton Estate Questions for Mirick

O'Connell.  The email contains the following questions:

*Oulton v. Hladick, et al. - Verified Complaint and Demand for Jury Trial*

a. See HUD 1 at line 505. Would you explain, as you wrote in the letter, the "payoff to Mirick O'Connell for the outstanding mortgage provided to our firm to cover future legal expenses in the amount of $7,025. First what mortgage? Second, what 'future' expenses were provided and charged? Third, seeing how Mr. and Mrs. Oulton both died less than a month later, I'd like to know if there are monies left over. Can you provide an invoice for services? That would help.

b. On The HUD 1 (see line 702), the Jowdy Group was paid a settlement of $17,575.00 at closing, which represents the standard 5% commission. This amount was reduced, as your letter points out, by the initial $6,000 deposit. It seems to me, that if true, it was overpaid by $6,000 (i.e. this was the amount held in escrow). Your 11/29/2012 letter states that the net commission due totaled $11,575.00 but the HUD 1 reads differently. I think this can be readily clarified if you would provide me a copy of the cancelled check showing payment to this real estate firm.

C. Please explain the PLAN of MA/RI application fees. Is there an invoice from PLAN which you can provide to me showing Mirick O'Connell in fact paid PLAN $1,500. Did your firm finance a pooled trust for the Oultons with the proceeds of the sale?

D. If its not too much trouble, would you provide your firm's engagement letter and or service of agreement with the Oultons and/or their designee? I see that Nancy Williams is the one to whom the 11/29/12 letter was mailed.

e. Per the SPR's accounting and the M/O accounting, your firm held $216,026.20 in its IOLTA on behalf of M/M Oulton. However the sale proceeds per the HUD 1 were $208,896.45. This is an increase of $7,129.84. Can you advise me as to what this increase represents? It may be the return of the prepaid legals and/or the PLAN application fee but these two, in total, amount to $8,525.00 ($7025 + $1500). Please advise.

f. As for the payments made by M/O: Would you please provide the invoices from the vendors justifying these expenses? FYI: I do have documentation from Attorney Couture for 2 of the expenses namely the cemetery association and the monument company but I do not have the other two (funeral home and caterer).

g. In your HUD 1, there's $102.031.96 paid to Colonial Health Group. Is there an itemized invoice for this amount you can provide? If so, please do. ..

h. NOTE -- Attorney Couture was still the appointed Special Personal Representative as of the date of this letter, and Attorney Bartley copied Attorney Couture on this email, but Attorney Couture did not reply to any of the posed questions.

491. On January 28, 2014, at 5:24 p.m. Jason Port sent an email (**Exhibit 171**) to

Attorney Bartley — cc: Attorney Couture — Subject: Oulton Estate Questions for Mirick

O'Connell. This email stated

151

I would be happy to assist the Oulton family in any way I can, however I do not think any authority exists for me to provide you with any documentation or information from client files. The only individual who may have any sort of authority or privity to request the desired information is the Special Personal Representative, and I believe that that authority may need to be requested directly from the Probate Court. If you think I am mistaken please let me know.

492.   On January 29, 2014, a string of emails (Exhibit 172) were sent between

Attorney Couture and Attorney Bartley, Plaintiff's counsel, in which Attorney Bartley asked the

following questions and Couture's response followed:

**Bartley: My client accepts the partial distribution buts forfeits no rights in so doing.**

**Bartley: Will you bring the checkbook to court and make check payable to Plaintiff.**

Couture:  Our accounting department processes the checks (I wouldn't bring them with me).  I can request that they prepare the checks today and I will bring them to court tomorrow, and deliver them pursuant to the allowance of the motions.  I will request that each heir signs a receipt.  I will forward a receipt to you tonight and bring it with me tomorrow.

**Bartley: Please advise why the smaller amount?  A prior email indicated you'd make a $70,000 distribution per devisee.  The estate will not owe tax to the Commonwealth and filing an estate tax return should not take more than an hour to 2 to prepare and file.**

Couture:  You are right, I did first indicate a $70,000 distribution. Because I cannot close out the estate, I must make sure there are sufficient assets to cover all expenses, regardless of how remote. Atty. Sweeney may seek to have his invoice paid.  While I do not think he will, and if he did, I do not think it would be allowed, I cannot make such assumptions.  I do not know if the estate will owe an income tax or not, but the income is above the minimum requirement to file a return.  The Met Life surrender amount are all capital gains and the life insurance also accumulated interest.  I agree the income tax, if any, will be small.  There will not be an estate tax so I do not intend to file an estate tax return.  I am only concerned that there are funds to pay creditors.  I assume that once the taxes are filed I can file the accounting and distribute the remainder assets.

152

**Bartley:  Yes my client objects to payment to Preferred Pharmacy Solutions**

Couture:  Ok

**Bartley:  Relative to your willingness to send court files in your possession would you please send: 1. Atty. Masterson's petition to have you appointed SPR 7/25/13**

Couture:  Ok

**Bartley:  Atty. Masterson's petition to terminate your appointment 10/31/13**

Couture:   You may be mistaken.  She did not file a petition to have me removed.  She may have filed a motion to substitute petitioner so that she could drop out (but I believe this was actually filed by Melissa from Tom Moylan's office), but I do not think this motion went anywhere or if it was even filed.  I know that I do not have a copy of any such motion because it was handwritten at the hearing and copies were not given to anyone- or at least that is my recollection.  There was some administrative confusion as to who will be petitioner, the status of the will contest, etc.  So Judge DiGangi gave orders to have me close out the estate.

**Bartley:  A copy of the lawsuit served on you by creditor Marlborough Hills**

Couture:  Ok

**Bartley:  A copy of the lawsuit served on you by Mirick O'Connell**

Couture:  Mirick O'Connell did not serve a lawsuit on me.

493.   On January 30, 2014, a hearing was held before Judge Abber at the Middlesex County Probate and Family Court (Exhibit 173).  The parties at the hearing included were Plaintiff, Attorney Bartley for Plaintiff, C. Hladick, N. Williams, D. Oulton, Attorney Couture, and Attorney Curley for Attorney Sweeney-2.  During the hearing the following statements were made by the noted parties:

**JUDGE ABBER:**  Okay.  Who's who here?  You're the Special Personal Representative....

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

**MICHAEL COUTURE:** That's right. So, if I could give a brief summary?

**JUDGE ABBER:** Could you?

**MICHAEL COUTURE:** Um... I'll try. Um, I was appoint... I was nominated by the creditor, a nursing home. So there's actually cross-petitions for an allowance of a Will, I believe, with Ms. Oulton and with Attorney Jerry Sweeney, who I believe, um, my sister represents, and the nursing home filed a petition for me to be appointed so they could perfect their claim within the one-year statute of limitations. That happened. I was appointed. My job initially was really only to be a placeholder to be sued. That happened. After my, uh, 30 days... 90 days expired the previous judge, Judge DiGangi, more or less ordered me to close out the Estate. And this is the 90 days after that. After October 31st was the last hearing that we had when he extended me for 90 days there were other assets that we discovered and other issues, so the Estate has not been closed but we're close. One of my motions before you...

**JUDGE ABBER:** How can a Special close out an Estate?

**MICHAEL COUTURE:** Well, that was... that's a good question, Your Honor. But that was something that Judge DiGangi...

**JUDGE ABBER:** (Laughing) I don't know that you can.

**MICHAEL COUTURE:** Well, I had...

**MELISSA CURLEY:** If, if I could expand. I think the purpose of the...

**JUDGE ABBER:** Okay, but wait. Who do you represent?

**MELISSA CURLEY:** I represent Jerome Sweeney who petitioned...

**JUDGE ABBER:** And who is he?

**MELISSA CURLEY:** He petitioned to be the "Temporary Personal Representative." And that...

**JUDGE ABBER:** So...

**MELISSA CURLEY:** ... has not...

**JUDGE ABBER:** So Miss Oulton died without a Will?

**MELISSA CURLEY:** She died with a Will.

**JUDGE ABBER:** With a Will.

**MELISSA CURLEY:** ... which appointed Mr. Sweeney. He stands as priority.... [Curley does not finish her false testimony.]

154

**JUDGE ABBER:** What is Mr. Sweeney's relationship to the Decedent?

**MELISSA CURLEY:** A long-standing friendship going back to, um, they served together in war and they just had a long-standing relationship. He's, he's known the family for over 30 years.

**JUDGE ABBER:** She died leaving four children, three of whom are here before me?

**MULTIPLE PEOPLE:** Four.

**JUDGE ABBER:** Four? Okay. And then you filed a petition as well, on behalf of, I'm sorry, Miss Williams?

**DAVID BARTLEY:** Um, um, um, I represent Miss Oulton, Your Honor.

**JUDGE ABBER:** Oh, Miss Oulton. Sarah Ann Oulton.

**DAVID BARTLEY:** That's true, Your Honor.

**JUDGE ABBER:** Okay. And did you file a petition as well?

**DAVID BARTLEY:** Uh, no, Your Honor. I, I, I filed, uh, uh, three motions that are on for today. I, I...

**JUDGE ABBER:** I understand the motions on for today. I don't understand why... okay, so you filed a petition. But I was told there's a cross-petition as well....

**MELISSA CURLEY:** Miss Oulton. MISS SARAH OULTON filed a petition to disqualify Jerome Sweeney. She did, and to appoint, uh, a third party.

**JUDGE ABBER:** Okay.

**MELISSA CURLEY:** And so, those are the cross-petitions the Special Personal Representative is referring to and the basis for her disqualification, well, she asserted that...

**JUDGE ABBER:** So it wasn't a petition she filed. A petition essentially to disqualify Mr. Sweeney. And an objection to the allowance of your petition?

**MELISSA CURLEY:** Correct.

**DAVID BARTLEY:** Uh, Your Honor. Uh, well, let me just clarify my sister's, uh, comment. And, and you... and the documentation is in the file. And I know you're, you're in this late. I'm in this late. So, so, you're in this late. My client filed a petition for a disinterested third party to serve as the, as the PR. She never filed for herself, Your Honor. Mr. Sweeney, my honorable brother, is a stranger to this matter except for the fact he drafted a Will. He drafted a Codicil. The Codicil and the Will in question, April 19, 2001, are in the file. Mr. Sweeney's CODIL represents a PRIOR DATED WILL. Now, he came in here before this with a great story: "A SCRIVENER'S

155

ERROR." Your Honor, a "scrivener's error." So he tried to... well, in the Codicil, Mr. Sweeney, as a successor PR, on the Codicil that was invalid, that represented a prior Will, Your Honor that is not in front of you today. The prior...

**JUDGE ABBER:** So, who struck the Codicil?

**DAVID BARTLEY:** The, the, Codicil's irrelevant, Your Honor. So, so, what we're talking about is the April 19, 2001, Will. Now, to your question about who can serve as a PR, I have, in the Will itself....

**JUDGE ABBER:** I, I didn't even ask that question, Counsel.

**DAVID BARTLEY:** Okay, I'm sorry, Your Honor.

**JUDGE ABBER:** Let's go back to what you said. He filed this petition seeking the allowance of a Will with a Codicil, correct?

**MELISSA CURLEY:** Yes.

**JUDGE ABBER:** What was the date on the Will?

**DAVID BARTLEY:** April 19, 2001, Your Honor, is, is the Will in front of you.

**JUDGE ABBER:** Is the Will that was the subject of your petition?

**MELISSA CURLEY:** Correct, Your Honor.

**JUDGE ABBER:** And the Codicil was dated when?

**MELISSA CURLEY:** It was dated thereafter. I'd have to check my notes for the date of the Codicil.

**JUDGE ABBER:** And does that Codicil reference a different Will?

**MELISSA CURLEY:** It referenced the Will, but the dates do not line up.

**JUDGE ABBER:** Okay. And if I struck the Codicil is your objection to the Codicil or to that Will as well?

**DAVID BARTLEY:** Uh, no, uh, hold on, to which Will, Your Honor? Just let me clarify your question.

**JUDGE ABBER:** There's only one Will before me, right?

**DAVID BARTLEY:** And that's the Will, I do not object to that Will.

**JUDGE ABBER:** Okay, but you object to the Codicil?

**DAVID BARTLEY:** I don't even object to the Codicil. The Codicil refers to a prior dated Will. So I...

**JUDGE ABBER:** What is the subject of the Codicil?

**MELISSA CURLEY:** It, the, the sole purpose of the Codicil was to change who would be the Executor of the Decedent. And the prior identified Executor was also an attorney. At no point did the Decedent nominate a family member and I, unfortunately Mr. Sweeney's not here to ask the history but I think there was simply a change of attorneys, perhaps the prior attorney was retiring.

**JUDGE ABBER:** And what are... You are unrepresented, the three of you?

**DAVID OULTON, NANCY WILLIAMS, CAROL HLADICK:** Yes.

**JUDGE ABBER:** And what is your position on who should be in charge of this Estate?

**NANCY WILLIAMS:** Our opinion was that, um, Jerry Sweeney was the person our parents nominated so, when it became apparent that my sister was going to contest that and lead to this process that we are involved in we said, "Let the Court do what the Court wants to do." We come to court every single time to stand here. We have respessed... respectfully asked that the delays and all the, we don't have anything to do with that, sir.

**JUDGE ABBER:** Okay.

**NANCY WILLIAMS:** And so we...

**JUDGE ABBER:** So you take no position on who should be the Personal Representative of the Estate?

**NANCY WILLIAMS:** I believe, my opinion at this point, I think we would agree, and I don't understand the ins and outs of "Special" but, um, I only know this man from the couple of phone calls he's given us to tell us what he's done as an agent of the Court. The other judge, I, I, just, we're just here kind of respecting the process hoping to wrap things up....

**JUDGE ABBER:** Would you have any objection if I appoint him to be the Personal Representative of the Estate?

**DAVID OULTON:** No, Your Honor.

**JUDGE ABBER:** Would your client have any objection to him being the Personal Representative of the Estate?

**DAVID BARTLEY:** Uh (long sigh)....

157

**NANCY WILLIAMS:** Because he reports to you, doesn't he, sir?

**JUDGE ABBER:** Well, not exactly.

**NANCY WILLIAMS:** Okay.

**JUDGE ABBER:** He reports to you four first.

**DAVID BARTLEY:** Your Honor?

**JUDGE ABBER:** And then if there's a problem, to me.

**DAVID BARTLEY:** Your Honor? Prior to answering, may I just have a 30 second caveat...

**JUDGE ABBER:** Sure.

**DAVID BARTLEY:** ... with the Court's permission? In, I just, clarification. In the Will at bar, the April 21, 2001, Will, there are two successor Executors.

**JUDGE ABBER:** Who is the original Executor?

**DAVID BARTLEY:** Um, it was an "I love you Will," so the, the spouse would have been the, the original.

**JUDGE ABBER:** Okay.

**DAVID BARTLEY:** Okay, so, so, um...

**JUDGE ABBER:** And who are the successors?

**DAVID BARTLEY:** Um, there are, ironically, two brothers. Um, one brother – and they're both from Natick – one brother, Attorney Mahaney, he passed away. The second brother, Attorney Gerald [sic] Mahaney, he's still with us. I have an Affidavit....

**JUDGE ABBER:** Brother of who?

**DAVID BARTLEY:** Of, of, of, I'm sorry, sir. There were two successor Executors. They are, in fact, real-life brothers. And so, one was an attorney....

**JUDGE ABBER:** But attorneys?

**DAVID BARTLEY:** Yeah, and they're both attorneys.

**JUDGE ABBER:** Not a family member?

**DAVID BARTLEY:** Cor... Oh, exactly, I'm sorry, they're, they're both attorneys. They're real-life brothers from Natick. Um, one passed away. The second brother,

Attorney Gerald [sic] Mahaney, is still alive. And so he, per the Will, Your Honor, should, I think (laughs) be technically the, the Personal Repre....

**JUDGE ABBER:** And you've reached out to him?

**DAVID BARTLEY:** In fact, I have, Your Honor.

**JUDGE ABBER:** And would he serve?

**DAVID BARTLEY:** In fact, I have an Affidavit from Attorney Mahaney saying, in fact, he would serve.

**PEOPLE SPEAKING OVER EACH OTHER**

**DAVID BARTLEY:** Okay, I'm sorry, Your Honor, I apologize.

**MICHAEL COUTURE:** Could I, uh? I'd like to look at that.

**JUDGE ABBER:** I'm sorry?

**MICHAEL COUTURE:** I'd like to look at the Affidavit if, uh,

**JUDGE ABBER:** Well....

**MICHAEL COUTURE:** ... if possible, but...

**JUDGE ABBER:** Listen. This is the problem that everybody's having. 'Cause I have a number of motions here, that some I can't do. One is disbursements. Special Personal Representatives are not gonna disburse money because that opens you up to liability that I'm not going to have you open up. I'm more inclined to end the Special and appoint a permanent here because, whether it's you or somebody else, you could file your Accounting, you'll be relieved of all liability, you have your lien perfected, your job has been fulfilled at this point in time because your job to marshal the Estate....

**MICHAEL COUTURE:** Right.

**JUDGE ABBER:** ... is only until the appointment until somebody else. And you can't close out an estate, with all due respect to the prior judge, under the UPC, you can't.

**MICHAEL COUTURE:** I agree.

**JUDGE ABBER:** So the fact of the matter is it now comes down to a position of who should be appointed? As far as I'm concerned if I have family members who object to Mr. Sweeney and there's an issue with the Codicil, I don't know that I'm gonna allow the Codicil, and then it goes to Mr. Moynihan [sic]. Now, I don't know why you want to pay somebody – a third party to get – Counsel, hear me out. I don't know why you would want to pay a third party to go through all of this, charge a fee. If I have somebody who, who's done the work, done the work, and it seems he's done absolutely

159

everything necessary to get in line, I'll ask, I'll ask you again, when you ask me for a 30 second caveat, is there any reason that I shouldn't appoint him?

**DAVID BARTLEY:** (Laughs) At, at, at this point, I, just so you know, my honorable brother has paid out, he's paid out creditors from, from the Estate...

**JUDGE ABBER:** Creditors, he has a right to.

**DAVID BARTLEY:** Okay, jus so, just so you know. So I will say that, that at this point I do not have an objection to my brother serve, serving out in this role.

**JUDGE ABBER:** Okay. And what would be your position?

**MELISSA CURLEY:** Well, we're here for a number of reasons. There have been motions filed that we've had to defend against. And then, the, as the original petition was filed, the family didn't object to it. I think their primary objection is the delay and the motion practice that's gone on, which is sort of been a distracter. I don't think three....

**JUDGE ABBER:** Well, one family member certainly objected!

**MELISSA CURLEY:** She objected. And she's objected to Mr. Couture. She's objected to his fees. She's objected to everything that's gone on so far in this process. And...

**JUDGE ABBER:** So why would Mr. Sweeney want this headache?

**MELISSA CURLEY:** [LONG PAUSE] He was saying he wanted to simply fulfill his fiduciary duty. Um, you know, our firm has been, uh, she's moved to disqualify our firm, conflict of interest, that was discussed extensively at the last hearing and the Court said, "Well, if the sole reason is because we're.... "

**JUDGE ABBER:** I can't rule on that if it was discussed at the last hearing.

**MELISSA CURLEY:** There was no ruling.

**JUDGE ABBER:** I can certainly, I can certainly, if there wasn't a ruling on the motion, turn it back over to Judge DiGangi....

**MELISSA CURLEY:** That's fine.

**JUDGE ABBER:** ... and, and see if he's gonna rule on the motion, maybe he has to pull the tape, so on and so forth. But if your client is not willing... will you serve, by the way?

**MICHAEL COUTURE:** I will!

160

**JUDGE ABBER:** If he isn't going to object, you're gonna have a trial date – <u>real quick</u> – because these people are entitled to their money, and he's not disbursing it and opening himself up to any liability here.

**MELISSA CURLEY:** Your Honor, we don't object to that.

**JUDGE ABBER:** Okay.

**MELISSA CURLEY:** I'm, I'm simply saying that we weren't the <u>basis</u> for the delay!

**JUDGE ABBER:** All right. Can you fill out a bond? I'll appoint you as the Personal Representative on the Estate. We won't extend the Special.

**MICHAEL COUTURE:** Okay.

**JUDGE ABBER:** <u>Now</u> you can close out the Estate. You can file a First and Final Account as the Special, and then take up your role as the Personal. Finish it off, get these people their money, we can close this out. So, I'm going to need a Decree. Let me just see what I have here. Did you file an original Decree? Did anyone?

**MELISSA CURLEY:** I'm not sure, Your Honor. I was given a check in the event that Mr. Sweeney was appointed....

**JUDGE ABBER:** I have an <u>Order</u> but not a Decree.

**[UNINTELLIGIBLE MUTTERING BY MULTIPLE PEOPLE]**

**JUDGE ABBER:** A Decree? No, for Personal Representative. Now, he had a corporate surety here. What did the bond say as far as, uh, the Will say as far as sureties?

**[UNINTELLIGIBLE MUTTERING BY MULTIPLE PEOPLE]**

**JUDGE ABBER:** "Serve without bond in any jurisdiction." Is there any issue if he serves without surety on behalf of your client, as an attorney?

**DAVID BARTLEY:** I, I think he should serve with a surety.

**JUDGE ABBER:** With surety!

**DAVID BARTLEY:** With sureties, Your Honor.

**JUDGE ABBER:** Personal or corporate?

**MICHAEL COUTURE:** I would, Your Honor, I would, I would get corporate sureties.

161

**JUDGE ABBER:** Okay, then this is what I'm gonna do. Before I address any of these motions. I'll set this down for a date certain. I don't know when you're back here or... oh, where are you coming from?

**MICHAEL COUTURE:** Somerville.

**JUDGE ABBER:** Somerville. Okay. Uh, 'cause I could do it at a different time that's more convenient to you so not everyone's waiting, not that anyone else has appeared. It would appear to me that I'm going to appoint you, um, and if you want to get an assent of everyone, you can do so. I'm going to appoint him as the Special, ah, as the <u>Personal</u> Representative. I'm not extending the Special today. I'll need a corporate bond, um, and then I can sign all that and you can get going on that.

**MICHAEL COUTURE:** All right.

**JUDGE ABBER:** When do you think you can get that corporate bond back to me?

**MICHAEL COUTURE:** Tomorrow.

**JUDGE ABBER:** You, you can do it that quick?

**MICHAEL COUTURE:** Yeah. Yeah.

**JUDGE ABBER:** All right. Tomorrow is a "Lobby Day" for me so I have no court personnel, so I can't do it tomorrow.

**MICHAEL COUTURE:** All right.

**JUDGE ABBER:** Um, when are you back here?

**MICHAEL COUTURE:** Well, um, I don't have, uh, my calendar. Maybe, uh, I mean, I'm close, Your Honor. I can get the bond at any time.

**JUDGE ABBER:** You want to come Monday?

**MICHAEL COUTURE:** I believe I could come Monday.

**JUDGE ABBER:** Why don't you do 2:00 o'clock and I'll get you in and out? I'll keep the file in the courtroom.

**MICHAEL COUTURE:** Yes! Yes, Your Honor. So no worries.

**JUDGE ABBER:** Okay. So you're going to have a proposed Decree...

**MICHAEL COUTURE:** Yup.

**JUDGE ABBER:** ... and I'll have a bond with corporate sureties.

**MICHAEL COUTURE:** Yes.

162

**JUDGE ABBER:** Okay. And that's with your assent, your assents, and Mr. Sweeney's assent, is that correct?

**MELISSA CURLEY:** Yes, Your Honor.

**JUDGE ABBER:** I have a motion for a Special, for the SPR to make partial distribution to heirs. I'm not allowing that. Um, as far as his fees? File the Accounting. I have no problem with it but everybody... is anybody objecting to his fees?

**DAVID BARTLEY:** (Groans) We, we just were served on it, Your Honor. We'd, we'd like to have that continued if we could.

**JUDGE ABBER:** Well, it will be part of his Account, so, um, that's fine. You can do that. Um, I think I have to extend the Order appointing you until Monday if, uh, you're going to get back, just so there isn't a break in this.

**MICHAEL COUTURE:** I agree!

**JUDGE ABBER:** Okay, so I'll do that. I have your motion to disqualify this law firm. I don't know if that's moot, or if you want it to go back to Judge, uh, DiGangi for a ruling on it, but, if it's, isn't it really moot at this point?

**MELISSA CURLEY:** [unintelligible]

**DAVID BARTLEY:** Well, uh.... I don't think it is moot, Your Honor.

**JUDGE ABBER:** Well, I'll give that to Judge DiGangi. It will certainly be moot with the appointment, correct?

**DAVID BARTLEY:** Well, uh, with the appointment it would be.

**JUDGE ABBER:** I have a motion to strike the written affidavit of the creditor and, uh, the Affidavit of Objections of Mr. Sweeney. That would also be moot, would it not?

**DAVID BARTLEY:** No, no Your Honor, that is, that is not moot!

**JUDGE ABBER:** If I strike the written Affidavit of Objections of the creditor, what happens?

**DAVID BARTLEY:** It would be a great benefit to my, to my client.

**JUDGE ABBER:** How so?

**DAVID BARTLEY:** My client is about to take the Mass. Bar Exam. As you know, that there is a character and fitness review. And those Affidavits, Your Honor, they are well, one, they're not relevant, because they speak about a different matter, but they are completely slanderous based upon not personal knowledge, but based upon hearsay, Your Honor. I believe they're still in the file, um...

163

**JUDGE ABBER:** Are you asking that they be impounded or stricken?

**DAVID BARTLEY:** Impounded.

**JUDGE ABBER:** Well, you've gotta comply with the Standing Order. Because whether I strike them or not, they're still part of the file and part of the public record. If you want to impound them, you have to comply with the Standing Order.

**DAVID BARTLEY:** Fair enough, Your Honor. Thank you.

**JUDGE ABBER:** And a motion to restore the case file in its entirety. Now, I've read this and you're alleging that certain documents are missing from the file? If that's the case, you need to address that with the Register of Probate. That is not an issue for this Court. We do not maintain these files. The Register of Probate is in charge of maintaining the <u>file</u>. You have to go through her if you feel that this file is not complete.

**DAVID BARTLEY:** Okay, Your Honor.

**JUDGE ABBER:** I mean, that happens often because public access is here so they can address it through the scanning of documents.

**DAVID BARTLEY:** Your Honor, thank you.

**JUDGE ABBER:** So let me rule on all those motions. I do need, uh, excuse me, Attorney Hammond, I do need an extension of the, uh, Special. Yes. We're gonna do it through Tuesday, just to be on the safe side. The motion to restore is not acted upon. No action. I'll put "The issue must be addressed through the Register of Probate."

**DAVID BARTLEY:** Okay, Your Honor.

**JUDGE ABBER:** [LONG PAUSE WHILE JUDGE ABBER COMPLETES PAPERWORK] <u>Motion for the SPR to make partial distributions is denied</u>. But once you're appointed, Counsel, you can make those as you deem fit. <u>No action on this, on the motion for your fees</u>. <u>To be addressed through the Accounting</u>. If you get, um, authority, as the, uh, PR, and assent to that – your fees from everyone after you review it – you may pay yourself. If you need to put it in your Account, specifically, <u>when that Account is allowed, that will also give you authority to pay</u>. But if you feel you want it just on that issue alone, rather than the whole account, I have no issue with you paying yourself so long as you have the, uh, assent of everybody once they look at it. Yeah.

[LONG PAUSE WHILE JUDGE ABBER COMPLETES PAPERWORK]

(Coughs)

[LONG PAUSE WHILE JUDGE ABBER COMPLETES PAPERWORK]

Okay, anyone have any questions for me?

164

**MELISSA CURLEY:** No, Your Honor.

**JUDGE ABBER:** Okay, thank you, Counsel, I appreciate you willing to serve in this capacity, and I'll see you on, uh, Monday.

494. Judge Abber issued an Order (Exhibit 174) Allowing Attorney Couture's Motion

to Extend Order Appointing Special Personal Representative — Probate Court. In

support of this motion Couture stated "I was notified of additional assets among

several institutions subsequent to the hearing held on October 31, 2013, thereby

causing more time than anticipated to marshal assets, make distributions to heirs,

and file the first and final accountings."

495. On January 30, 2014, Judge Abber issued an Order (Exhibit 175) Denying

Petitioner Sarah A. Oulton's Motion for a Ruling on Petitioner Sarah A. Oulton's Motion to

Disqualify the Law Firms of Keough + Sweeney, Plourde Bogue Moylan & Marino, LLP, and

Dennis R. Brown, P.C. Argued on October 17, 2013. Judge Abber said that Judge DiGangi

should enter the ruling on this matter.

496. On January 30, 2014, Judge Abber signed the order for motion to allow special

personal representative fees. It was ruled on and determined that no action. To be addressed

through the accounting (Exhibit 176).

497. On January 30, 2014, Carol Hladick entered a Notice of Appearance Pro se

(Exhibit 177) in the Matter of The Estate of Carol Oulton.

498. On January 30, 2014, Nancy Williams entered a Notice of Appearance Pro se

(Exhibit 177) in the Matter of The Estate of Carol Oulton.

499. On January 30, 2014, David Oulton entered a Notice of Appearance Pro se

(Exhibit 177) in the Matter of The Estate of Carol Oulton.

500.     On January 30, 2014, Judge Abber issued an Order Extending Special Personal
Representative to 2014-02-05 (Exhibit 178).

501.     On January 30 2014, Attorney Moylan filed motion for amendment of petition for
formal probate of will and appointment of PR (Exhibit 179).

502.     On February 3, 2014, a Decree of Dismissal on Petition for Appointment of
Special Personal Representative in the Estate of Carol Jane Oulton (Exhibit 180) was issued.

503.     Attorney Couture prepared order and Judge Abber ordered that Couture's
transition to Personal Representative be contingent on Attorney Couture's filing of a "First and
Final Accounting" for the role he played as Special Personal Representative of the Estate of
Carol Jane Oulton

504.     Attorney Couture did not comply with Judge Abber's order. He did not file any
Accounting with respect to his Special Personal Representative duties.

505.     On February 19, 2014, Attorney Couture prepared an Invoice for Special Personal
Representative duties. The invoice lists phone calls with all of the co-conspirators

(Port,Sweeney, Winston, Moylan, et al.) — $2,910.00 — Total due: $7,906.45



WINSTON LAW GROUP

440 Broadway
Somerville, MA  02145
Tel: (617) 841-4000
Fax: (617) 628-7500

| | |
|---|---|
| Michael R. Couture, Esq.<br>Winston Law Group, LLC<br>440 Broadway<br>Somerville, MA  02145 | Invoice Date:   February 19, 2014<br>Invoice No.:   22860<br>Client/Matter No.:   7350.000<br>Client/Matter Name:   Carol Jane Oulton<br>Page:  1 |

RE:  Conservatorship

### For Professional Services

| | | Hours | |
|---|---|---|---|
| 01/02/2014 | | | |
| MC | Read and reply to email to assistant, re: Oulton marriage certificate. | 0.10 | 17.50 |
| 01/20/2014 | | | |
| MC | Telephone conference with Attorney David Bartley. Review regulations on expenses incident to the estate and forward to Atty. Bartley with email. | 0.30 | 52.50 |
| 01/21/2014 | | | |
| MC | Telephone conferences with Pension department, re: status of application. Telephone conference with Carol at Hanscom Federal. Prepare draft accounting and Inventory. | 2.00 | 350.00 |
| 01/22/2014 | | | |
| MC | Telephone conference with Hanscom Federal. Additional work on accounting. | 0.40 | 70.00 |
| 01/24/2014 | | | |
| MC | Review email from Atty. Bartley. Research connection between Preferred Pharmacy and Colonial Health. Detail email reply to Atty. David Bartley. | 1.00 | 175.00 |
| MC | Forward accounting and inventory to Atty. Bartley with attachments and verifications along with detailed email. | 3.00 | 525.00 |
| 01/27/2014 | | | |
| MC | Court time pending appearance before Judge DiGangi at Middlesex Probate Court | 2.00 | no charge |
| MC | Telephone conference with Carol Hladick. Telephone messages and email messages to Pension department for update. Email to Atty. Moylan. Prepare motions for fees and partial distributions. Email motions to Atty. Bartley along with updated Inventory. | 3.00 | 525.00 |

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

| | | Invoice Date: | February 19, 2014 |
| --- | --- | --- | --- |
| | | Invoice No. | 22860 |
| | | Client/Matter No.: | 7360.000 |
| Michael R. Couture, Esq. | | | Page: 2 |

| | | | Hours | |
| --- | --- | --- | --- | --- |
| **01/28/2014** | | | | |
| MC | Review request from Atty. Bartley to Atty. Port. Telephone conference with Atty. Port. Meeting with Atty. Winston, re: confidentiality of SPR. | | 0.70 | 122.50 |
| MC | Telephone conference with Atty. Tom Moylan, re: Income tax returns and status of attorney's fees. | | 0.30 | 52.50 |
| **01/29/2014** | | | | |
| MC | Telephone conference with Jerry Sweeney, re: status with bill and motion for disqualification. | | 0.30 | 52.50 |
| MC | Travel to Brookline Credit Union to deliver conservatorship paperwork and to close out account. Email to Atty. Bartley with answers to questions. Telephone conference with Nancy Williams, re: update. Email to Nancy Williams motions and inventory, accounting. Request checks for partial distributions from accounting department. Telephone conference with Carol Hladick and forward documentation for hearing. | | 3.10 | 542.50 |
| **01/30/2014** | | | | |
| GM | Preparation of Probate Bond Application. | | 0.20 | 25.00 |
| MC | Travel to Middlesex Probate Court for hearing. Telephone conference with Atty. Jason Port. | | 2.10 | 367.50 |
| **01/31/2014** | | | | |
| MC | Telephone conference with Jeff from AA Dority, re: bond discrepancy. | | 0.10 | 17.50 |
| | *Total Fees* | | 16.60 | 2,895.00 |

**Timekeeper Recap**

| Timekeeper | Hours | Rate | Total |
| --- | --- | --- | --- |
| Michael Couture | 16.40 | $175.00 | $2,870.00 |
| Giselle Menendez | 0.20 | 125.00 | 25.00 |

**Disbursements**

| | | | |
| --- | --- | --- | --- |
| 12/30/2013 | Brookline Records: marriage certificate | | 15.00 |
| | *Total Disbursements* | | 15.00 |
| | TOTAL DUE THIS INVOICE | | 2,910.00 |
| | *Previous Balance* | | $4,996.45 |
| | **BALANCE NOW DUE** | | $7,906.45 |

**Previous Balance Detail**

| 0-30 | 31-60 | 61-90 | 91-120 | 121-180 | 181+ |
| --- | --- | --- | --- | --- | --- |
| 4,996.45 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

506.    On February 25, 2014, Attorney Couture sent Plaintiff a letter (<u>Exhibit 181</u>)

transmitting Check #114 drawn on Century Bank, in the amount of $67,500.00. Attached to

Attorney Couture's distribution check payable to Plaintiff was a "Receipt of Partial Distribution"

stating

> In consideration of this payment before final settlement of the
> estate of said Carol Jane Oulton, I do hereby agree that I will hold
> harmless the said Michael R. Couture, individually and in his
> aforesaid capacity as Personal Representative from any claims
> which may be made against him as a result of such distribution and
> will indemnify him individually and in his aforesaid capacity from
> any loss which may be incurred by reason of his making such
> payment to me; provided, however, that the aggregate amount of
> any payments made by me hereunder shall not exceed $67,500.00.

Plaintiff did not sign the indemnification requested by Attorney Couture.

507.    Attorney Couture had not rendered any Accounting as of February 25, 2014. In

defiance of the January30, 2014, Court Order, Attorney Couture issued Partial Distributions to

Plaintiff, C. Hladick, N. Williams, and D. Oulton in violation of the Court Order.

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, SS

Probate and Family Court Department
Docket No. MI13P1828EA

In Re:      Carol Jane Oulton

)
)
)

### Receipt of Partial Distribution

I, Sarah A. Oulton, hereby acknowledge receipt from Michael R. Couture, as Personal Representative of the Estate of Carol Jane Oulton as a partial distribution of $67,500.00 which represents the partial distribution of the property to which I am entitled as heir to the Estate Carol Jane Oulton.

In consideration of this payment before final settlement of the estate of the said Carol Jane Oulton, I do hereby agree that I will hold harmless the said Michael R. Couture, individually and in his aforesaid capacity as Personal Representative from any claims which may be made against him as a result of such distribution and will indemnify him individually and in his aforesaid capacity from any loss which may be incurred by reason of his making such payment to me; provided, however, that the aggregate amount of any payments made by me hereunder shall not exceed $67,500.00.

Witness my hand and this seal this _____ day of _____, 2014

_____
Sarah A. Oulton

508.    On March 10, 2014, Attorney Couture transmitted an Invoice dated March 10, 2014, showing a balance allegedly owing of $8,256.45.

170



**WINSTON** LAW
GROUP

440 Broadway
Somerville, MA  02145
Tel: (617) 841-4000
Fax: (617) 629-7500

Michael R. Couture, Esq.
Winston Law Group, LLC
440 Broadway
Somerville, MA  02145

| | |
|---|---|
| Invoice Date: | March 10, 2014 |
| Invoice No.: | 22921 |
| Client/Matter No.: | 7360.000 |
| Client/Matter Name: | Carol Jane Oulton |
| | Page:  1 |

RE:  Conservatorship

### For Professional Services

|  |  | Hours |  |
|---|---|---|---|
| **02/03/2014** | | | |
| MC | Pick up bond from AA Dority, deliver to Cambridge Probate Court. | 1.00 | 175.00 |
| **02/06/2014** | | | |
| MC | Email follow up to Atty. Bartley, re: status of bond and Mirick O'Connell. | 0.20 | 35.00 |
| **02/10/2014** | | | |
| MC | Read and reply to email from Nancy Williams. | 0.10 | 17.50 |
| MC | Read and reply to email from Atty. Bartley, re: follow up on general matters. | 0.10 | 17.50 |
| MC | Read and reply to email from Nancy Williams, status of checks. | 0.10 | 17.50 |
| **02/20/2014** | | | |
| MC | Read and reply to email from Nancy Williams, re: status of decree and distributions. | 0.10 | 17.50 |
| MC | Telephone conference with David Bartley, re: status of new Letters and distributions. Email with Nancy Williams, re: same. | 0.10 | 17.50 |
| **02/25/2014** | | | |
| MC | Edit Receipts and Assents. Email to Nancy Williams, re: status of checks and receipts. Instructions for assistant. Email to David Bartley. | 0.30 | 62.50 |
| | Total Fees | 2.00 | 350.00 |

### Timekeeper Recap

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Michael Couture | 2.00 | $175.00 | $350.00 |

TOTAL DUE THIS INVOICE                                          350.00

*Oulton v. Hladick, et al. - Verified Complaint and Demand for Jury Trial*

|  |  |  |  | Invoice Date: | March 10, 2014 |
|---|---|---|---|---|---|
|  |  |  |  | Invoice No. | 22021 |
|  |  |  |  | Client/Matter No.: | 7360.000 |
| Michael R. Couture, Esq. |  |  |  |  | Page:  2 |

Previous Balance $7,808.45

**BALANCE NOW DUE** $8,256.45

| Previous Balance Detail | | | | | |
|---|---|---|---|---|---|
| 0-30 | 31-60 | 61-90 | 91-120 | 121-180 | 181+ |
| 2,910.00 | 4,958.45 | 0.00 | 0.00 | 0.00 | 0.00 |

509.    On June 4, 2014, Michael Couture an Invoice dated March 10, 2014, showing a

balance allegedly owing of $9,436.45:

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*



**LAW GROUP**

440 Broadway
Somerville, MA 02145
Tel: (617) 641-4000
Fax: (617) 629-7500

Michael R. Couture, Esq.
Winston Law Group, LLC
440 Broadway
Somerville, MA 02145

| | |
|---|---|
| Invoice Date: | June 4, 2014 |
| Invoice No.: | 23142 |
| Client/Matter No.: | 7360.000 |
| Client/Matter Name: | Carol Jane Oulton |
| | Page: 1 |

---

RE: Conservatorship

### For Professional Services

| | | Hours | |
|---|---|---|---|
| 03/08/2014 GM | Follow up on Receipts of Distribution; Telephone conference with David Oulton. | 0.20 | 25.00 |
| 03/28/2014 MC | Review tax forms and invoice from Atty. Moylan. | 0.10 | 17.50 |
| 04/03/2014 MC | Review tax returns with CPA Whitney Clayton and email to Atty. Tom Moylan for status on PR for Donald. | 0.30 | 52.50 |
| 04/04/2014 MC | Read and reply to email to Nancy Williams, re: status of matter. | 0.10 | 17.50 |
| 04/08/2014 MC | Telephone conference with Preferred Pharmacy, re: status of bill and to send to children. | 0.10 | 17.50 |
| 05/09/2014 MC | Review letter and correspondence from Atty. David Bartley. Telephone follow up with Treasury Department on missing money. | 0.30 | 52.50 |
| MC | Read and respond to email from Carol Hladick, re: invoice from Preferred Pharmacy and general update. Read and respond to email from Atty. David Bartley. | 0.20 | 35.00 |
| 05/12/2014 MC | Prepare response letter to Atty. Bartley and Sarah Oulton. Review statements. Edit accounting. Detailed email to Atty. Oulton, re: interim status of information. | 4.50 | 787.50 |
| 05/13/2014 MC | Telephone conference with Hanscom Credit Union and Middlesex Savings | | |

*Oulton v. Hladick, et al. – Verified Complaint and Demand for Jury Trial*

Invoice Date:    June 4, 2014
Invoice No.      23142
Client/Matter No.: 7360.000
Michael R. Couture, Esq.                                      Page:  2

|  | Hours |  |
|---|---|---|
| for missing statements. Telephone conference with accounting department for reconciliation of estate account bank statements. Email information to Ms. Funk at Middlesex Savings. Email to Atty. Bartley. | 1.00 | 175.00 |
| **Total Fees** | 6.80 | 1,180.00 |

### Timekeeper Recap

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Michael Couture | 6.60 | $175.00 | $1,155.00 |
| Gisele Menendez | 0.20 | 125.00 | 25.00 |

TOTAL DUE THIS INVOICE                                        1,180.00

*Previous Balance*                                           $8,256.45

**BALANCE NOW DUE**                                          $9,436.45

### Previous Balance Detail

| 0-30 | 31-60 | 61-90 | 91-120 | 121-180 | 181+ |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 350.00 | 2,910.00 | 4,956.45 | 0.00 |

510.    On August 19, 2014, Attorney Couture mailed, to All Four Heirs of Carol Oulton,

a letter (**Exhibit 182**) stating, among others,

> I am writing to provide a detailed update regarding your late
> mother's estate.....Because the court vacated my initial
> appointment as Special Personal Representative, I am providing a
> revised (note revised) Inventory in my capacity as Personal
> Representative. This inventory indicates a date of death balance of
> $257,677.16. The inventory includes five bank accounts owned by
> your mother by right of survivorship from your late father, Donald
> Oulton. The inventory also includes her MetLife stocks and the
> funds held at Mirick O'Connell in its escrow account.
>
> I am also attaching my interim accounting. The accounting
> contains three schedules; A, B and C. Schedule A includes
> balance of the Inventory plus all income and assets received from
> date of death through July 10, 204(sic). Schedule B includes all
> expenses and distributions paid from the estate (including those
> made by Mirick O'Connell prior to my appointment). Schedule C

174

includes the balances in the fiduciary accounts held at Century Bank on July 10, 2014. Note that all other accounts have been closed and transferred to the Century Bank accounts. There is a total of $12, 103.67 in these accounts.

I am currently waiting on two final deposits before I can file my first and final accounting and petition for complete settlement. The first is the income tax return of $16,295.00 from the joint tax return for 2012. This return was prepared by Atty. Moylan filed by me in April, 2014. I am expecting this refund shortly and my accountant is following up with the IRS. The second deposit is $2,486.19 from the Commonwealth's Unclaimed Property Division. The unclaimed property derived from a life insurance policy with MetLife that had not remainder beneficiary I am also expecting this deposit at any time and I will follow up with this division for an update. Lastly, I did receive the final distribution from the Office of Personal Management on May 30, 2014, in the amount of $3,009.30. This payment represents your mother's entitlement to a death pension as the beneficiary of your father.

I would also like to update you on the expenditures of the estate. First, I have paid my firm, Winston Law Group, $9,436.45, on June 5, 2014, for services rendered since the first payment made in September 2013. I am attaching my invoice. Please notify me if you object to this fee, and specifically, which line item(s) on the invoice that you are objecting to. Please also review the accounting thoroughly and advise if you have objections to a particular line item before I file the first and final accounting.

Finally, I am attaching a copy of an invoice from Attorney Thomas Moylan. As you are aware, Atty. Moylan initially provided an invoice for $10,753.56 for his time and expenses representing Atty. Jerome Sweeney. I denied Payment to Atty. Moylan for this invoice because there was unanimous objection by the heirs and because these services did not necessarily benefit your mother's estate.

Atty. Moylan submitted a new invoice for $2,044.20. This invoice includes his out of pocket expenses and services that did benefit the estate. Specifically, he prepared and submitted the petition for probate and paid the court filing fees. Although contested, this was necessary to commence the probate proceedings. This invoice also includes the preparation of the 2012 tax returns which were unusually complicated because of the passing of both your mother and father in 2012. This return resulted in the $12,103.67 income tax refund owed to the estate

175

> Unless I receive unanimous objection to this fee, I intend to issue a
> payment to Atty. Moylan for the $2,044.20 before I file my
> accounting.

511.   Attorney Couture defied the Court Order of January 30, 2014, in making the

distributions to Winston Law and Plourde Bogue Moylan & Marino LLP.

512.   The "Interim Inventory" provided by Attorney Couture (Exhibit 183) contains the

wrong docket number, once again.

513.   On December 24, 2014, Attorney Couture mailed a letter (Exhibit 184) to

Plaintiff transmitting a check in the amount of $5,000.00 and stating that this is the DRAFT of

the First and Final Accounting and enclosing a proposed assent.

> I request that you sign your assent before a witness and return the
> original to me so that I may file assents with the court. The
> Middlesex Probate Accounting Department should approve the
> accounting more expeditiously with the unanimous assents filed...I
> must now file my petition for complete settlement with my final
> accounting.  You will see on schedule A the final deposits from the
> Commonwealth and the IRS on lines 86 and 87 respectively.  Once
> my petition is allowed, the court will discharge me of my
> responsibilities and liabilities and at that point the estate is
> officially closed.  If I do not receive assents from each party, the
> Court will issue a citation and there will be an opportunity to
> object and be heard before the court.
> [emphasis added]

514.   Attorney Couture admits that the Accounting of December 24, 2014, is his first

Accounting in the 514 days since he was appointed Special Personal Representative on July 25,

2013.

515.   Attorney Couture enclosed an Assent and told Plaintiff that "the Middlesex

Probate Accounting Department should approve the accounting more expeditiously with the

unanimous assents filed.

176

516.    Plaintiff did not sign the Assent that Attorney Couture enclosed with his letter of December 24, 2014.

517.    Attorney Couture also enclosed a "Petition for Order of Complete Settlement" but the Petition was not completed.

518.    On July 2, 2015, Attorney Coreen Goodwin entered notices of appearance (Exhibit 185) in docket # MI13P2822EA In re Estate of Donald Oulton·and docket # MI13P1828EA In re Estate of Carol Oulton. Facts beginning at Attorney Goodwin's notice of appearance entries.

519.    On or around June 19, 2015, Attorney Goodwin mailed 93A demand letters to Defendants.

520.    On June 26, 2015, The Law Firm of PBMM sent Attorney Goodwin a response to her 93A demand letters (Exhibit 186)

521.    On July 1, 2015, The Law Firm of Peabody and Arnold LLP, sent a response to Attorney Goodwin's demand letter, on behalf of Attorney Deborah Masterson (Exhibit 187). The response states that Attorney Masterson was, "retained by Marlborough Hills in May of 2013. This was the first time Masterson had anything to do with the Oultons. A review of an invoice, submitted by Mirick O'Connell (described above), and paid from the estate, clearly shows that Attorneys at Mirick O'Connell where conversing and conspiring with Attorney Masterson on "PROBATE ISSUES" beginning at least as early as April 10, 2013.

522.    It is noteworthy that the Mirick O'Connell attorneys' conversations about the Oultons' "PROBATE ISSUES" had begun while the Oultons were still alive.

523.    On July 8, 2015, Attorney Goodwin mailed a request for documentation, in the Estate of Donald Oulton, to Attorney Sweeney-2 (Exhibit 188). Attached to this request for

· 177

documentation was Attorney Goodwin's notice of appearance in both of the Oulton estate

matters, i.e., In Re The Estate of Donald Paul Oulton and In Re The Estate of Carol Jane Oulton.

524. On July 8, 2015, Attorney Goodwin mailed a request for documentation, in the In

Re The Estate of Carol Jane Oulton to Attorney Couture (Exhibit 189). Attached to this request

was Attorney Goodwin's notice of appearance in both of the Oulton estate matters, i.e., In Re

The Estate of Donald Paul Oulton and In Re The Estate of Carol Jane Oulton.

525. On July 13, 2015, The Law Firm of Lynch & Lynch, sent a response to Attorney

Goodwin's demand letter, on behalf of Keller Williams Realty and Mr. Jowdy (Exhibit 190).

The response states that:

> . . . pertinent documents concerning the listing of the subject
> property (54 MacArthur Road, Natick, MA) were signed by
> Donald P. Oulton and Carol J. Oulton, as sellers of the subject
> property, on September 1, 2012. In this regard, Donald and Carol
> Oulton signed a listing agreement, relationship disclosure form,
> consent to designate agency, property transfer notification
> certification, and seller's description of property addendum.
> NOTE – the documents were, in fact, signed by N. Williams, who
> had been appointed Attorney-In-Fact for Donald and Carol through
> the use of void Powers of Attorney executed when Carol and
> Donald lacked capacity to contract.

526. On July 16, 2015 Mirick O'Connell mailed Attorney Goodwin a response to the

demand letter (Exhibit 191).

527. On July 17, 2015, Morrison Mahoney LLP, sent a response to Attorney Goodwin,

on behalf of Athena Health Care Systems, MA III, L.L.C ("Athena") (Exhibit 192). The

response states,

> Your letter mistakenly assumes that Athena was involved in the
> operation and/or management of Marlborough Hills at the time of
> events referenced, in your letter. It was not, and bears no liability
> whatsoever for the events set forth in your letter, and has no
> personal knowledge of the same...We would note that your client
> has no standing under Massachusetts law to assert claims on behalf

178

of her parents' respective estates, and it would appear that your
client's claims for infliction of emotional distress are time barred.

528.   On July 20, 2015, The Law Firm of Morrison Mahoney LLP, sent a response to

Attorney Goodwin's demand letter, on behalf of Keough + Sweeney, Ltd and all the Lawyers at

Keough + Sweeney identified in the demand letters (**Exhibit 193**). The response states,

> We do not know the date your letter was delivered to respondents
> and therefore we do not know when their response is due. Further,
> because this office was first contacted and retained only recently,
> because respondents currently are unavailable to provide us with a
> complete response to the factual statements in your letter, and
> because we are unable to review all the relevant documents or
> otherwise fully investigate your claim, we are not in a position to
> concede or deny some of the factual allegations contained in your
> letter.

529.   The response further states,

> Your belief that the Oultons estate plan was deficient, in addition
> to lacking any allegation identifying the alleged deficiency, is
> irrelevant with respect to respondents given that respondents
> played no role in developing or implementing the Oultons estate
> plan."
> [emphasis added]

530.   Again, the response later states,

> As noted above, the respondents deny any involvement in the
> Oultons estate plans.
> [emphasis added]

531.   In stark contrast with Morrison Mahoney's 2015 assertions, Attorney Sweeney

had already informed the court (on July 25, 2013) that he was the drafter of the Oultons' Wills.

He further falsely stated to the court that he was also the named executor.

532.   Attorney Moylan and Attorney Curley, who represents Attorney Sweeney-2 in

Attorney Sweeney-2's desperate attempts to retain control over the Estate of Carol (to ignore the

30-Day Survivorship Clause in Donald's Will, which he drafted), also have  purposely not been

179

truthful with the court. In all court filings and court appearances Attorneys Moylan and Curley have fraudulently represented that Attorney Sweeney-2 has a legal right to control the Estate of Carol.

533.    Plaintiff is the only party in this case who contacted Attorney Gerard Mahaney – the lawfully appointed Executor of the Estate of Carol – to inform Attorney Mahaney that Carol died and named Attorney Mahaney as Executor – and only Plaintiff has consistently sought the appointment of a disinterested third party fiduciary to analyze the Oultons' assets, ascertain the extent of the theft that has occurred in this case, and take steps to reverse the damage.

534.    On July 20, 2015, The Law Firm of Fuller, Rosenberg, Palmer & Beliveau, LLP sent a response to Attorney Goodwin's demand letter on behalf of Dennis Brown and Lisa Vecchio (**Exhibit 194**). The response stated, inter alia, that "The allegations about the conflict of interest issues are disturbing, given that they are entirely untrue, and stated with that knowledge. My clients have already provided prior affidavits indicating that they had indeed advised Ms. Oulton that Dennis Brown had, on one isolated occasion, reviewed a previously drafted divorce agreement for David Oulton....My clients properly advised Ms. Oulton of that fact... During that initial meeting my clients also informed Ms. Oulton about Dennis Brown's longstanding representation of the Natick Firefighters Union, whose membership included Ms. Oulton's brother-in-law A. Hladick." Ms. Oulton denies that Attorney Brown and Lisa Vecchio informed her of..........The affidavits of D. Brown and L. Vecchio are not sufficient to overcome the burden on counsel, through Rule 1.6(a), to not represent conflicted clients...... Furthermore, Ms. Oulton was never informed of D. Brown's representation of the Natick Firefighters Union. Had this fact been made known to her she certainly would not have retained this office who represented one of the very family members she was.......Finally, Brown and

180

Vecchio did not procure from all three conflicted parties the Conflict Waiver that is required of counsel representing conflicted clients under Rule 1.6(a)(2).

535.    On July 23, 2015, Morrison Mahoney LLP, mailed a response to Attorney Goodwin's demand letter on behalf of Winston Law Group and Attorney Couture (Exhibit 195). This response stated, inter alia, Attorney Couture had no contact or communications with Jason Port, Mirick O'Connell DeMallie & Lougee, or any other person or firm involved in the matters of Sarah, Donald, Or Carol Oulton, or Sarah's siblings prior to Carol Oulton's death. Furthermore, Attorney Couture had no relationship with Attorney Port prior to Attorney Couture's appointment as Special Personal Representative in this matter, personal or otherwise. Attorney Couture did know Attorney Sweeney prior to this matter, through a social club, but only spoke with him a few times previously and no communications were about the Oultons..... Specifically Attorney Couture needed to contact Attorney Port and Mirick because they held the proceeds from the sale of the Oultons house in its IOLTA account." The response contains a footnote her which states, "Upon information and belief, the proceeds from the sale of the Oultons house was held in Mirick's IOLTA account because Attorney Port and Mirick planned on applying for Medicaid on behalf of the Oultons and paying Marlborough Hills' bill, but the Oultons passed away prior to competing those tasks. The response goes on to state "Attorney Couture communicated with Attorney Sweeney and Keough and Sweeney regarding the Oultons past tax returns completed by Attorney Sweeney.

536.    On August 5, 2015, Morrison Mahoney LLP, mailed a response to Attorney Goodwin's demand letter on behalf of Attorney M. Couture and Winston Law Group (Exhibit 196). This letter failed to comply with the 30 day response period permitted under 93A. The response stated, inter alia, that "This office represents Attorney Couture and the Winston Law

181

Group. Please send any correspondence addressed to Attorney Couture or the Winston Law Group, concerning the estates of Carol Jane Oulton or Donald P. Oulton to our attention and refrain from responding to them directly."

537. On October 8, 2015, The Andover Companies, sent a response to Attorney Goodwin's demand letter, as the insurers of John Everett & Sons, Inc. et al (**Exhibit 197**). This response failed to comply with the 30 day response period under chapter 93A. The response stated, "Our investigation has revealed that at no time were our insureds involved in obtaining any type of police detail for the funeral or the wake. Rather, our insureds have indicated that the arrangements were made by Carol Hladick and Nancy Williams, daughters of the deceased, to arrange the wake and funeral as they had requested. There is information that there was a non-uniformed police officer at the funeral home but our insureds vehemently denies being involved with obtaining any such police detail. In regard to your client being unlawfully barred from attending the wake and funeral, our insured again, denies this allegation and at no time did our insured have anything to do with who did or did not attend the wake or funeral. You also allege in your demand letter that our insured's employees, Reeves, Davis and Falvey, defamed your client by openly discussing the wake and funeral via phone calls. Again, after discussing this matter with our insured's employees, we deny that any such conversations took place in which your client was defamed. Rather, our insured's employees said that they were just giving out general information about the wake and the funeral as they would to anybody, whether they were identified or not identified.

538. On November __, Plaintiff's Counsel filed a Ex Parte Motion for Enlargement of Period of Time Within Which to Object to Petition for Order of Complete Settlement.

182

539.    A hearing on Plaintiff's Motion for Enlargement of Period of Time Within Which
to Object to Petition for Order of Complete Settlement.is set for January 28, 2016.

## V.    CAUSES OF ACTION

### COUNT ONE
### Conspiracy
### (All Defendants)

540.    Plaintiff hereby avers and restates the above paragraphs of this Verified
Complaint and Demand for Jury Trial as if fully restated herein.

541.    As described above, Defendants acted in concert and joined together in an
unlawful and unfair manner, pursuant to a common design to threaten, coerce, intimidate, injure,
defraud, convert from, distress, and defame Plaintiff, and to interfere with Plaintiff's
constitutional right to the enjoyment of her life, liberty, and property.  Each Defendant knew, or
in the exercise of reasonable care should have known about the conduct of the others and the
common tortious scheme.

542.    Each Defendant gave substantial assistance and/or encouragement to the other
Defendants, with the knowledge that this assistance contributed to the common plan to defame
Plaintiff, bar Plaintiff from visiting her parents, and undermine the value of Plaintiff's interest in her
parents' real and personal property.

543.    In a conspiracy, each Defendant is responsible for the defamatory, tortious, and
wrongful acts of the other defendants.

544.    Defendants, individuals and licensed professionals, acted jointly in a common
scheme to threaten, intimidate, injure, defraud, convert from, distress, and defame Plaintiff, and
to interfere with Plaintiff's constitutional right to the enjoyment of her life, liberty, and property
according to standing laws.

183

545.    As a direct and proximate result of the Defendants' civil conspiracy, Plaintiff was threatened, coerced, intimidated, injured, defrauded, converted from, distressed, and defamed, and plaintiff was deprived of her secured state statutory and constitutional rights.

546.    Defendants are each jointly and severally liable in damages to Plaintiff.

## COUNT TWO
### Defamation
### (All Defendants)

547.    Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein

548.    Beginning in November 2011, various defendants published false statements of fact of and concerning Plaintiff, knowing they were false or with reckless disregard as to their falsity. In so doing, these Defendants held Plaintiff up to public scorn and ridicule and damaged Plaintiff's character and reputation, as a result. Many of these Defendants' statements were defamatory and/or defamatory per se. Specifically:

549.    In November 2011, Defendants C. Hladick, A. Hladick, N. Williams, and D. Oulton, after seeing Plaintiff's handwriting in the Oultons' checkbook ledger, jumped to the unfounded and incorrect conclusion that Plaintiff had been misappropriating the Oultons' funds in the prior year. Upon reaching this inaccurate conclusion about Plaintiff, in November 2011 the Oulton Siblings began publishing false statements of fact of and concerning Plaintiff, knowing they were false and with reckless disregard to their falsity.

550.    On or about January 18, 2012, Defendants C. Hladick, Lt. Hladick, D. Oulton, and N. Williams falsely informed the Marlborough Police that Plaintiff had stolen the Oultons' automobile. Defendants knew that Plaintiff had not stolen the vehicle yet Defendants published these false and defamatory statements.

184

551. In December 2012, following the deaths of Carol and Donald, Defendants N. Williams and C. Hladick defamed Plaintiff by in their efforts to unlawfully ban Plaintiff from the Oultons' wakes, funerals, and burials by publishing statements that they knew were false, or by making statements with reckless disregard as to their falsity, to employees of the Natick Police Department, the John Everett Funeral Home, St. Linus Church, and Glenwood Cemetery.

552. In December 2012, during the Oultons' wakes, Cunningham, Falvey, Kelley, and Simpson made defamatory statements about Plaintiff as they exercised their roles as "dress men" and Everett Funeral Home employees handling the Oultons' wakes, funerals, and burials. In accordance with directions given to the staff of the John Everett Funeral Home, the dress men assigned to the Oultons' funeral and the Natick Police employees on hand to prevent Plaintiff from attending the wakes, funerals, and burials, carried photographs of Plaintiff with them and were ready to eject Plaintiff if Plaintiff dared attend the Oultons' services. These Defendants made false statements of fact about Plaintiff, knowing they were false or with reckless disregard to their falsity. Employees of both the John Everett Funeral Home and the Natick Police Department knew or should have known that there was no court order barring Plaintiff from paying her final respects to her parents. The Natick Police knew or should have known that Plaintiff has no criminal background. The statements made by the Everett Funeral Home employees in performing the tasks required to unlawfully bar Plaintiff from the Oultons' wakes, funerals, and burials were defamatory and/or constituted defamation *per se*, for which the Everett Funeral Home is liable, under the doctrine of *respondeat superior*.

553. In December 2012, following the deaths of Carol and Donald, Defendants N. Williams and C. Hladick defamed the Plaintiff in the course of their their efforts to bar the Plaintiff from the Oultons' wakes, funerals, and burials by publishing statements that they knew

185

were false, or by making statements with reckless disregard as to their falsity, to employees of the Natick Police Department, the John Everett Funeral Home, St. Linus Church, and Glenwood Cemetery.

554.    On February 26 and 27, 2013, additional defamatory statements about Plaintiff were published orally. At approximately 9:00 a.m. on February 26, 2013, Plaintiff called Everett Funeral Home to get some general information about the services provided by Everett Funeral Home and the general policies and practices in effect. Plaintiff did not identify herself on the phone, nor was she asked to do so. Plaintiff spoke with Reeve and Davis on the morning of February 26, 2013, and was shocked to hear both Everett Funeral Home employees speaking freely and willingly about the Oultons' wakes, funerals, and burials, even referring to the family by name. When asked by Plaintiff, "[w]hat could be done to keep an unwanted person away from a wake or funeral?" Reeve and Davis spoke freely about the Oultons' ceremonies and defamed Plaintiff in the process. Reeve and Davis informed Plaintiff that Everett Funeral Home and its staff worked in concert with the Natick Police to keep Plaintiff, and they willingly described how undercover police were stationed in Everett Funeral Home while the Dress Men carried photos of Plaintiff in order to identify her if Plaintiff dared to attend her parents' funerals.

555.    3:40 p.m. Ms. Oulton called Everett Funeral Home to get additional information about the Oultons' wakes and funeral services, and in that second call she spoke with Mr. Falvey. Mr. Falvey did not ask Plaintiff to identify herself so she did not do so. Falvey, without knowledge that he was speaking with Plaintiff, was as willing to reveal private details about the Oultons' funerals and publish defamatory statements about Plaintiff that Davis and Reeve had been the day before. In revealing private details about the Oultons' wakes, funerals, and burials, Defendant Falvey reiterated what Defendants Davis and Reeve revealed about Plaintiff, and all

three revealed that additional publication of the defamatory statements were made in order to achieve the goal of keeping Plaintiff away from the Oultons' wakes, funerals, and burials. Defendant Falvey stated that Plaintiff was "dangerous" and "unstable" and that all dress men were told to spread the word and "be on the lookout" for Plaintiff at the services. In order to achieve the goal of keeping Plaintiff away from the Oultons' services, these employees of the John Everett Funeral Home published false statements about Plaintiff. Falvey revealed that the Funeral Director assigned to the Oultons' wakes, funerals, and burials was Cunningham, and Falvey informed Plaintiff that Cunningham had coordinated the effort to keep Plaintiff away from the Oultons' wakes, funerals, and burials. In addition, Defendant Falvey revealed that Defendants Kelly and Simpson also published defamatory statements about Plaintiff in the effort to unlawfully bar Plaintiff from the Everett Funeral Home.

556.   The aforesaid words tended to injure the honesty, integrity, morality, and reputation of Plaintiff and to thereby expose Plaintiff to public contempt and ridicule, and to injure and damage Plaintiff.

557.   The words so spoken by the defendant were and are utterly false, malicious, and defamatory.

558.   At the time the words were spoken, defendant knew or could have ascertained with the exercise of reasonable care that the statements made were untrue.

559.   By reason of the aforesaid acts of the defendant, in and about the speaking and publishing of the slanderous, libelous, false, malicious, and defamatory words and statements, the plaintiff was and is greatly and permanently injured and damaged in her good name and reputation, and was and is exposed to public contempt, hatred, and ridicule, and has been further damaged in her business of entering the lawyering field.

187

## COUNT THREE
### Invasion of Right to Privacy
### (Everett Funeral Home,

560.     Defendants, through their actions described above, interfered with Plaintiff's right to privacy.

561.     Said interference was unreasonable, substantial, and serious in violations of Plaintiff's rights under M.G.L.A. c. 214, § 1B.

562.     As a result of Defendants' actions, Plaintiff has suffered severe emotional distress, damage to her reputation and to her professional career, suffered mental pain, anguish, and humiliation, and was otherwise damaged.

## COUNT FOUR
### Forgery
### (Keough + Sweeney, Ltd., Attorney Sweemey-2, Marlborough Hills, Michael Lincoln, Winston Law Group, Attorney Neal Winston, Attorney Michael Couture)

563.     Plaintiff **hereby** avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

564.     Attorney Jerome Sweeney attempted to offer before the court a fraudulent codicil. As the drafter of the Oultons' will, Sweeney was required to offer the codicil at the same time as the will. In addition an original copy of the codicil was never produced. \

565.     Upon information and belief, Carol's letter saying she doesn't want Sarah to visit with her was forged; Carol Oulton thereafter painstakingly wrote a letter in her own hand stating she did want Plaintiff in her life and that Carol wanted Plaintiff's help.

566.     Upon information and belief, bank records provided by Attorney Couture to Plaintiff and her counsel were forged. There are inconsistencies in the statements, the photocopy quality is poor, the dates in the documents do not comport with the bank statement cycle, and amounts in the account change, from month to month, without explanation.

188

## COUNT FIVE
### Unjust Enrichment
**(Colonial Health Group-Westridge, LLC, Keough + Sweeney, Ltd., Attorney Sweemey-2. AttorneySweemeu-3, Attorney S. Keough, , Mirick O'Connell DiMallie & Lougee LLP, Attorney Jason A. Port, Attorney Arthur P. Bergeron, Alex Jowdy, Plourde Bogue Moylan & Marino LLP, Attorney Thomas Moylan, Attorney Melissa Curley, the Law Office of Deborah C. Masterson, Attorney Deborah Masterson, Winston Law Group, Attorney Neal Winston, Attorney Michael Couture)**

567.   Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

568.   M.G.L.A c. 215 §39 allows for the probate court to ascertain and determine the amount due any person for services render by any person in connection with the administration of the estate. The Probate court is without authority to award money under section 39 except for services rendered to the estate for matters enumerated in the statue.

569.   On November 20, 2012 Mirick O'Connell was unjustly enriched when they received $7000 from the sale of the Oulton home for future legal services. The Oultons died a month later, never having received future legal services.

570.   The Law Firm of Mirick O'Connell was unjustly enriched when it continued to bill the estate of Carol Oulton for the representation of C. Hladick and N. Williams.

571.   The Jowdy group was unjustly enriched when they were over paid $6000 in the sale of the Oulton Residence. The Settlement charges for the sale of the residence included (1) a broker's commission in the amount of $17,575.00 which was reduced by the initial deposits held by the Jowdy Group in the amount of $6,000.00, bringing a net commission due of $11,575.00; However the HUD 1 form for the sale of the Oulton residence states that Jowdy received a payment of $17,575. That payment in addition to the $6,000 payment resulted in an unjust enrichment.

189

572.    M.G.L.A c. 215 §39 allows for the probate court to ascertain and determine the
amount due any person for services render by any person in connection with the administration
of the estate. The Probate court is without authority to award money under section 39 except for
services rendered to the estate for matters enumerated in the statue. Such services do not include
services rendered and expenses incurred in the opposition to the appointment of an executor or
other fiduciary.

573.    On May 26, 2013 an invoice (188) was sent to Michael Couture from Plourde
Bogue Moylan & Marino, LLP in the amount of $2,044.20. The invoice billed for preparation of
decedent's final tax returns in the amount of $750, Preparation of petition for informal probate of
will, Appointment of Personal Representative, Bond, Military Affidavit, Notice of Informal
probate, notice of informal probate and Order of Informal Probate of Will in the amount of
$750.00. In addition, the invoice also billed for expenses for Probate fees in the amount of
$430.00, Federal express in the amount of $44.86 and certified mail in the amount of $69.34.
The total due on the invoice was $2,044.20 and Attorney Couture paid this invoice from the
estate of Carol Oulton. The Law Firm of PBMM was unjustly enriched when it billed the estate
of Carol Oulton for these expenses. There was a named executor in the Will who was never
contacted and who was available and willing to serve as executor. In addition, the Oultons had
previously paid $60 a year to have their taxes prepared. $750 dollars to prepare taxes is an
unreasonable amount. A CPA was also paid out of the estate for the Oultons' tax preparation.

574.    On August 2, 2013 Mirick sent an invoice (**Exhibit 214**) to the Estate of Carol
Jane Oulton c/o Michael Couture. This invoice contains numerous expenses that neither
benefited the estate nor were permitted by law. The Mirick O'Connell invoice billed inter alia,
for calls with Attorney Sweeney who is neither a party to the estate matters nor a beneficiary, the

190