discussion of probate issues with numerous individuals and calls with Attorney Masterson. These expenses did not benefit the estate and were not permitted under M.G.L.A c. 215 §39.

575. The Law Firm of Mirick O'Connell was paid $1500 to establish a PLAN account for the Oultons. There is no evidence that the $1500 was actually paid to PLAN. A PLAN account was never opened for the Oultons. Instead the Oultons' assets remained in the IOLTA account of Mirick for seven months before being turned over to Attorney Couture in his role as SPR of the Estate of Carol Jane Oulton.

576. Under M.G.L.A c. 215 §39, payment for compensation and expenses of an attorney for services rendered to the estate is to be instituted by a petition.

577. Attempting to probate a will or a codicil, are services that are found by the court to be of no benefit to the estate.

578. Attorney Couture was unjustly enriched when he received an unreasonable payment for the administration of the estate.

### COUNT SIX
### Fraud
### Fraudulent Conveyance
(C. Hladick, A. Hladick, N. Williams, Mirick O'Connell DiMallie & Lougee LLP, Attorney Jason A. Port, Attorney Arthur P. Bergeron)

579. Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

580. The powers of attorney allegedly signed by Donald and Carol Oulton were invalid. Therefore the Conveyance of the Oulton residence was fraudulent because Defendants knowingly and willfully used powers of attorney that were prepared and executed when the Oultons lacked capacity.

581. The powers of attorney fraudulently procured are void as a matter of law because they were not properly witnessed.

## COUNT SEVEN
### Declaratory Judgment
(C. Hladick, A. Hladick, N. Williams, Colonial Health Group-Westridge, LLC, Michael Lincoln, Andrea Edwards, Donna DelCid, Karen Speroni, Christine French, Denise Stephenson, Mirick O'Connell DiMallie & Lougee LLP, Attorney Jason A. Port, Attorney Arthur P. Bergeron)

582. This is an action for a declaratory judgment pursuant to M..G.L. c.231A, for the purpose of determining a question of actual controversy between the parties as more fully appears below.

583. Plaintiff here by avers and restates the above paragraphs of this Complaint as if fully restated herein.

584. There exists a justiciable controversy regarding whether the Power of Attorney for Donald was valid, as it appears to have been signed while Donald lacked capacity to execute it or was, at the very least, the result of undue influence.

585. The POA was executed in the absence of any witnesses and notarized by Mirick O'Connell Attorney Port.

586. Donald had a well-documented history of chronic alcoholism, fragile health, difficulty managing his finances, and dementia prior to his admission to Marlborough Hills Alzheimer's unit. Donald's lack of capacity was documented by Nurse Supple and numerous other medical professionals who cared for Donald prior to his admission to Marlborough Hills. The Marlborough Hills Admission Agreement executed on behalf of Donald in December of 2011 was executed on Donald's behalf by C. Hladick, Donald's Health Care Agent. His Health Care Agent may act when he lacked capacity, therefore, her execution of a contract with Marlborough Hills indicates that she was aware that Donald lacked capacity at the time of his admission to Marlborough Hills.

587. Beginning on December 25, 2011, Marlborough Hills staff members Andrea Edwards, Donna DelCid, Denise Stephenson, Karen Speroni, Christine French, Sauda Matovi, and Michael Lincoln had informed Plaintiff that Plaintiff could neither visit nor communicate with Donald "because the health care proxy had been invoked."

588. There also exists a justiciable controversy regarding whether the Power of Attorney for Carol was valid, as it appears to have been signed while Carol lacked capacity to execute it, and was, at the very least, the result of undue influence. Marlborough Hills omits all mention of Carol's admission on November 30, 2011, in its billing records.

589. The POA was executed in the absence of any witnesses and notarized by Mirick O'Connell Attorney Port.

590. There is a justiciable controversy over whether the signature on the Marlborough Hills Admission Agreement that Carol allegedly signed in March of 2012 is valid or was forged.

591. Carol had a well-documented history of chronic alcoholism, fragile health, and difficulty managing her finances prior to her admission to Marlborough Hills. Immediately prior to Carol's admission to Marlborough Hills on November 30, 2011, Carol had survived a life-threatening coma. Within 24 hours of Carol's admission to Marlborough Hills, Carol was overdosed on Lorazepam by the staff of Marlborough Hills, which put Carol in an "unresponsive" state and a second coma at UMass Memorial Hospital in Worcester. Carol suffered organ failure in May of 2012 and Attorney Port informed Plaintiff, that Carol's doctors do not believe she has long to live.

592. Beginning on December 25, 2011, Marlborough Hills staff members Andrea Edwards, Donna DelCid, Denise Stephenson, Karen Speroni, Christine French, Sauda Matovi,

and Michael Lincoln had informed Plaintiff that Plaintiff could neither visit nor communicate with Carol "because the health care proxy had been invoked."

593. There exists justiciable controversy regarding whether the 2012 deed conveying the Oulton Residence to Cynthia Bracciale is valid.

594. There exists a justiciable controversy as to whether the 2012 transfer effectuated a valid conveyance, and subsequently, whether the conveyance to Cynthia Bracciale is defective and should be voided. Plaintiff therefore seeks declaratory judgment pursuant to M.G.L. c. 231A [CONFIRM] that any purported conveyance by the 2012 deed conveying the Oulton Residence to Cynthia Bracciale is invalid.

595. There exists a justiciable controversy as to whether Mirick O'Connell Attorneys Port and Bergeron represented Carol and Donald or whether they, in fact, represented N. Williams and C. Hladick. Mirick O'Connell attorneys have billed the Estate of Carol for services rendered to their "clients" after Donald and Carol died.

596. There exists a justiciable controversy as to whether N. Williams and C. Hladick breached their fiduciary duty by their self-dealing in all matters related to the Oultons and their estates.

## COUNT EIGHT
### Intentional Infliction of Emotional Distress
### (All Defendants)

597. Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

598. From November 2011 through the present time, the Defendant intentionally or with knowledge or reason to know that his conduct would cause emotional distress, caused the Plaintiff extreme emotional distress.

599. The Defendants' conduct as described above was extreme and outrageous, beyond all bounds of decency, and intolerable in a civilized community.

600. The Defendant's conduct caused the Plaintiff severe emotional stress of a nature that no reasonable person could be expected to endure.

601. As a direct and proximate result of the conduct of the Defendants as described herein, the Plaintiff has suffered physical and emotional injures, and other actual, consequential, and incidental damages which proof at the time of trial will reveal.

602. On December 25, 2011, Plaintiff phoned Carol Oulton, only to discover that Carol's phone had been disconnected. At this time Marlborough Employees informed the Plaintiff that she was no longer able to contact or visit with her parents. The Marlborough Hills employees had no lawful basis for unlawfully banning Plaintiff from contact with her parents. This unlawful separation from the Oultons, caused Plaintiff (enter language from IIED).

603. From December 25, 2011, through the present time, given that the civil conspiracy underlying this case is still ongoing in the Middlesex County Probate and Family Court, Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of their conduct, described at length above.

604. Defendants' conduct, as described above, was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

605. Defendants' actions caused Plaintiff emotional distress of a nature that no reasonable person could be expected to endure.

606. As a direct and proximate result of the conduct of the Defendant as described herein, Plaintiff has suffered physical and emotional injures, and other actual, consequential, and incidental damages which proof at the time of trial will reveal.

607. Considering both Donald in words, notes, and phone calls asked and begged to see Plaintiff, and Carol, in words and in her own shaky hand handwrote a plea to allow Sarah to see her without limitations and help her, as well as the removal of the telephones, and the confiscation of Donald's pen and paper, Plaintiff was in great emotional distress that both she and her parents were unsuccessful to be/speak with each other.

608. The suffering and the isolating treatment of Donald and Carol Oulton in their last months of life caused the Plaintiff extreme emotional distress.

## COUNT NINE
### Negligent Infliction of Emotional Distress
(Keough + Sweeney, Ltd., Attorney Sweemey-2. AttorneySweemeu-3, Attorney S. Keough, Colonial Health Group-Westridge, LLC, Michael Lincoln, Andrea Edwards, Donna DelCid, Karen Speroni, Christine French, Denise Stephenson, The Marlborough Police Department, Marlborough Police Lieutenant Thomas Bryant, Marlboro Police Lieutenant David Giorgi, Marlborough Police Officer Robert Insani, Mirick O'Connell DiMallie & Lougee LLP, Attorney Jason A. Port, Attorney Arthur P. Bergeron, Martha White, The Town of Natick Police Department, John Everett & Sons Funeral Home, Joseph Everett, Dennis Cunningham, Susan Davis, Maureen Reeve, Brian Falvey, Luke Simpson, Richard Kelly)

609. Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

610. The Defendant's negligence as described above caused the Plaintiff to suffer extreme emotional distress, as would a reasonable person under the circumstances, which resulted in physical harm to the Plaintiff manifested by objective symptoms, including but not limited to physical symptoms related to severe anxiety, mental anguish, and emotional distress.

611. The Defendant's conduct caused the Plaintiff to suffer severe emotional stress of a nature that no reasonable person under the circumstances could be expected to endure.

612. Defendants Lincoln, Quieros, Speroni, DelCid, French, Matovu, Stephenson, Everett, Cunningham, Falvey, Davis, Kelly, Simpson, Reeve, and Davis were negligent, as described above, which caused Plaintiff to suffer extreme emotional distress, which resulted in

physical harm to Plaintiff manifested by objective symptoms, including but not limited to physical symptoms related to severe anxiety, mental anguish, and emotional distress.

613. The Defendants' conduct caused the Plaintiff to suffer severe emotional stress of a nature that no reasonable person under the circumstances could be expected to endure.

614. Given that these Defendants are professional licensees within The Commonwealth of Massachusetts or are employed in facilities that are licensed and regulated, these Defendants knew or should have known that the actions they took against Plaintiff – suddenly and unlawfully denying Plaintiff contact with her Parents, with whom Plaintiff had been extremely close, making defamatory statements against Plaintiff designed to hurt and damage Plaintiff and her reputation, and denying Plaintiff from the Oultons' wakes, funerals, and burials – would result in extreme emotional distress.

615. The distress caused by Defendants in this case was reasonably foreseeable, either because a reasonable person would have suffered distress under the circumstances to which Defendants subjected Plaintiff.

616. As a direct and proximate result of the conduct of the Defendants' actions, as described above, Plaintiff has suffered physical and emotional injuries, and other actual, consequential and incidental damages, which proof at the time of trial will reveal.

### COUNT TEN
### Breach of Fiduciary Duty
### (Attorney Couture)

617. Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

618. On June 5, 2014, Couture in violation of section 3-504 Supervised Administration; Powers of Administration Powers of Personal Representative, paid Mirick O'Connell without prior order of the court. Section 3-504 states, "Unless restricted by the court,

a supervised personal representative has, without interim orders, approving exercise of a power, all powers, of person representatives under this code, but the personal representative shall not exercise power to make any distribution of the estate without prior order of the court. Any other restriction on the power of a personal representative which may be ordered by the court and must be endorsed on the personal representative's letters of appointment and, unless so endorsed, is ineffective as to persons dealing in good faith with the personal representative."

619. On June 5, 2014, Attorney Couture also paid his own invoice in the amount of $9,436.45 without having procured assents from all heirs.

620. Attorney Couture was under court order issued January 31, 2014, to close out the Special Personal Representative matter, <u>file his First and Final Accounting</u>, and not make any distributions without the unanimous consent of the heirs.

621. Attorney Couture, in the 881 days he has held his position as fiduciary, filed his first Accounting only after he learned of this pending lawsuit. For more than two years he did no accounting, refused to provide Plaintiff with information and evidence to which Plaintiff has a right, and has been unresponsive to Plaintiff's counsel.

622. Most recently, in October 2015, despite knowing that Plaintiff has been represented by counsel for more than two years, Attorney Couture violated Massachusetts Rule of Professional Conduct 4.2 and transmitted his Citation on Petition to Close directly to Plaintiff. Plaintiff, who is represented by counsel, does not check her Post Office Box on a regular basis and, as a result of Attorney Couture's willful and knowing ethical violation, Plaintiff missed an important deadline by which to file her Objection to Attorney Couture's Petition

## COUNT ELEVEN
**Fraudulent Inducement**
(Mirick O'Connell DiMallie & Lougee LLP, Attorney Jason A. Port, Attorney Arthur P. Bergeron)

198

623. Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

624. On April 20, 2012 Plaintiff received an email from Attorney Vecchio and Attorney Port wrote to Plaintiff to try to fraudulently induce her to withdraw her petition to seek a third party conservator for her parents with false promises that if Plaintiff did so, and only if she did so, could she see her parents again (exhibit 124).

625. Plaintiff ultimately did dismiss her petitions for conservatorship based on the promise of restored visitation with her parents, but C. Hladick withheld her permission nonetheless.

626. Long their primary caregiver, Plaintiff was unjustly barred from being a comfort to her parents in the last months of their lives. Faced with possibly never seeing them again, Plaintiff withdrew the motion for the appointment of an impartial conservator. The compromise was a ploy, never to be realized. Plaintiff never saw her parents again

## COUNT TWELVE
### Conversion
(C. Hladick, N. Williams, D. Oulton, Lt. Hladick)

627. Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

628. Plaintiff stood to inherit a one quarter share in the Estate of Donald and the Estate of Carol, and that inheritance included a one-quarter interest in the Oultons' personal property. Between January 8, 2012, the last date on which Plaintiff retrieved the Oultons' mail from the Oulton Residence, and **September ___, 2012**, the date on which the sale of the deed to the Oulton Residence was conveyed to Cynthia Bracciale, the Sibling Defendants removed all of the Oultons' personal property, including their automobile, from the Oulton Residence. The Sibling

Defendants converted for their own use the one-quarter interest in the Oultons' personal property that Plaintiff stood to inherit.

629. As a one-quarter devisee under the will of Carol and the will of Donald, plaintiff, at the time of the conversion, had a general or special property interest in the goods converted by the Sibling Defendants. The Sibling Defendants intentionally, willfully, and knowingly exercised acts of ownership, control, or dominion over personal property to which the Sibling Defendants had no right of possession at the time.

## COUNT THIRTEEN
### Formal Removal of Personal Representative (MPC 265)
(Attorney Couture)

630. Pursuant to M.G.L. c.190B § 3-61

631. (Sarah A. Oulton v. Attorney Sweeney-2 and Attorney Couture)

632. Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

633. Attorney Couture was appointed Special Personal Representative ("SPR") of the Estate of Carol on July 25, 2013.

634. Attorney Couture has intentionally:

    a. disregarded several Orders of the Court to provide an Accounting in his capacity as SPR, as described above,

    b. mismanaged the estate as described above;

    c. made improper disbursements from the Estate of Carol as described ;

    d. failed to perform duties pertaining to the office.

635. Attorney Couture was hand-picked by Defendants Marlborough Hills and Attorney Masterson for the sole purpose of maintaining control of the Estate of Carol so that a disinterested, third-party fiduciary would not discover the financial wrongdoing by the intermeddlers, i.e., the Mirick O'Connell attorneys, Plourde Bogue Moylan & Marino attorneys, Attorney Sweeney-2, the Sibling Defendants,O and Marlborough Hills. Attorney Couture has not represented the best interests of the Estate of Carol, evidenced by his payment of Marlborough Hills' invoices in the absence of valid contracts between Marlborough Hills and the Oultons, his disbursement of funds to unjustly enrich his co-Defendants in this case, his signing a Stipulation of Dismissal of the lawsuit filed against the Estate of Carol <u>with prejudice</u>, and hiding of the misappropriation of the assets of the Estate of Carol.

636. Despite being appointed Personal Representative of the Estate of Carol, Attorney Couture refused to file a single Accounting with the Court until after he learned that this lawsuit would be filed.

637. Attorney Couture failed to publish a Notice to Creditors.

638. Attorney Couture has improperly disbursed assets from the Estate of Carol and has comingled the assets of the Estate of Carol with the assets of the Estate of Donald.

639. Attorney Couture made a substantial disbursement to Defendant Mirick O'Connell despite the fact that Mirick O'Connell did not file a lawsuit against the Estate.

640. For the reasons set forth above and described elsewhere in this Verified Complaint and Demand for Jury Trial, Plaintiff requests that the Court remove Attorney Couture as Personal Representative of the Estate of Carol and Attorney Sweeney-2 as Proposed Personal Representative of the Estate of Donald and appoint disinterested third party fiduciaries in their place to administer the Estate of Donald and the Estate of Carol.

641. **COUNT FOURTEEN**
Deceit/Fraudulent Misrepresentation
(Marlborough Hills, Michael Lincoln, Keough + Sweeney, Ltd., Attonrey Sweeney-2)

642. Plaintiff hereby avers and restates the above paragraphs of this Verified Complaint and Demand for Jury Trial as if fully restated herein.

643. Michael Lincoln's affidavit to the court, signed under the pains and penalties of perjury, stated that the Plaintiff was never banned from visits with her father. Numerous employees of Marlborough Hills nursing home had completely banned the Plaintiff from the premises. Mr. Lincoln's affidavit further states that says Plaintiff was continuing to visit with her father and had only been banned from visiting Carol Oulton. Plaintiff had attempted to bring her father a cell phone and clothes and was denied access to him and staff refused to deliver the items to Donald Oulton, despite Mr. Oulton's need for clothes.

644. The affidavit of Dr. Kumar, signed under the pains and penalties of perjury, states that Carol Oulton has been managing her finances without issue. In fact, a review of the Oultons' bills show that numerous services had been disconnected, or canceled due to non-payment, including, the car insurance, the home owners insurance, Donald's BBO registration, the water and sewer service, and others.

645. Attorney Jerome Sweeney falsely claimed to be the personal representative named in the wills as the nomination to be the personal representative. In fact, Attorney Sweeney was not named or nominated in the wills to be personal representative. Mahaney was named in the wills as the appointed executor, but he was never contacted or notified of this appointment.

646. Sweeney 2 told probate court that the estate of Carol had to be probated before the estate of Donald.

647. Michael Lincoln's affidavit to the court, signed under the pains and penalties of perjury, contained the false statement that Plaintiff was not banned from Marlborough Hills before January 18, 2012. (See paragraph 25 in complaint.)

648. Attorney Port made numerous false declarations before the court when he claimed that he represented Donald and Carol (rather than C. Hladick and N. Williams), proffered misleading and incomplete Police reports, and continued to offer the MDEO report filed against Plaintiff, despite the fact that he knew that the malicious complaint filed by Edwards and Marlborough Hills against Plaintiff was ruled "unsubstantiated" by Springwell.. Every time Attorney Port offered this misleading and defamatory report to the court as evidence against the Plaintiff, he also included Mr. Lincoln's affidavit. As the Director of Marlborough Hills, Lincoln also knew that the MDEO was determined to be unfounded.

649. Attorney Port offered to the court that the Oultons were not experiencing difficulties paying the bills. Yet the Oultons struggled <u>for years</u> to keep their bills paid, due to their chronic alcoholism and health problems, and on March 25, 2012, the Oultons' homeowners insurance was canceled due to non-payment.

650. The will of Donald Oulton contained a 30-Day Survivorship Clause. Attorney Masterson purposely withheld the fact of this survivorship clause from the probate court for the sole in order that the nursing home could be paid without issue.

651. The dates on Donald Oulton's Will and Codicil are <u>handwritten</u> without initials of Dad.

652. Attorney Sweeney and Attorney Moylan stated in their petitions to the Court that the children are not devisees under the Will of Donald Oulton, when, in fact, ONLY the children inherit under Dad's Will because Mom did not survive him by the necessary 30 days.

COUNT FIFTEEN
**Executor De Son Tort Liability**

653.   On December 28, 2012 Mirick O'Connell issued a check (**Exhibit 176**) to Dolphin Seafood Restaurant in the amount of $3,745.50 drawn from an Attorney IOLTA account at People's United Bank, a check (**Exhibit 176**) to Alan Bush in the amount of $1,800.00, a check (**Exhibit 176**) to John Everett and Sons in the amount of $23,731.69, and a check (**Exhibit 176**) to Glenwood Cemetery Association in the amount of $2,300.00. Mirick O'Connell had no authority either legally or under the will to distribute any of the Oultons' funds. By holding the Oultons' assets in the Mirick O'Connell IOLTA account and then by paying alleged creditor's Mirick O'Connell became executor de son tort (an executor by its wrong).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sarah A. Oulton respectfully requests that the Court grant her the following relief:

1. Enter a declaratory judgment pursuant to M.G.L. c. 231A finding that:

(a) the Powers of Attorney for Donald and Carol were invalid because they were executed while Donald and Carol lacked capacity to execute them, were the result of undue influence as Donald and Carol lacked capacity at the time of execution, and that N. Williams and C. Hladick breached their fiduciary duty by their self-dealing in all matters related to the Oultons and their estates;

(b) Mirick O'Connell attorneys Port and Bergeron represented N. Williams and C. Hladick and that neither the Estate of Carol nor the Estate of Donald is responsible for payment for services rendered by Mirick O'Connell to N. Williams and C. Hladick, therefore all funds paid to Mirick O'Connell by the Oultons through the Mortgage to Mirick O'Connell and by Estate of Carol must be refunded to the Estate of Carol;

(c) the Marlborough Hills Admissions Agreements executed on behalf of Donald and Carol are invalid because they were executed (i) by Carol when Carol lacked capacity to enter into contracts and (ii) by C. Hladick, who had no legal authority to contract on behalf of Donald, therefore all funds paid to Marlborough Hills and Colonial by Estate of Carol must be refunded to the Estate if Carol;

(d) that the 30 day clause in the Will of Donald invalidates the inheritance by the Estate of Carol of the Estate of Donald, therefore all funds and property in the Estate of Donald which were inherited by the Estate of Carol must be refunded to the Estate of Donald;

(e) that the 2012 transfer of the Oulton Residence effectuated an invalid conveyance, and subsequently, the conveyance of the Oulton Residence to Cynthia Bracciale is defective and should be voided;

2. Enter judgment on each and every count of the Verified Complaint and Demand for Jury Trial in her favor and award her damages in the amount so assessed by the jury against each defendant, jointly and severally;

3. Enter a judgement removing Jerome V. Sweeney II as Personal Representative of the Estate of Donald and removing Michael Couture as Personal Representative of the Estate of, including an Order that the Estate of Donald and the Estate of Carol be probated with a disinterested third party appointed as fiduciary to administer the Estate of Donald and the Estate of Carol;

4. Award Plaintiff her attorney's fees and costs (including expert fees);

5. Award Plaintiff punitive, compensatory, and exemplary damages; and

6. Grant Plaintiff such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES AND CLAIMS SO TRIABLE.

Respectfully submitted,

PLAINTIFF,
SARAH A. OULTON, BY & THROUGH HER ATTORNEYS:

By: *Coreen Goodwin*
Coreen Goodwin
BBO #693188
Law Office of Coreen Goodwin
64 Donbray Road
Springfield, MA 01119
Telephone: 413-~~519-2769~~ 241-1004
Email: AttorneyGoodwin@Yahoo.com

By: *James Bailey Brislin*
James Bailey Brislin
BBO #691999
50 Holy Family Road, #412
Holyoke, MA 01040
Telephone: 413-486-0090
Email: AttyBrislin@Gmail.com

## VERIFICATION

I, Sarah A. Oulton, under the pains and penalties of perjury, do hereby verify that the facts set forth above are true to the best of my knowledge or, where indicated, are true based upon my information and belief. I have personal knowledge of these facts or the information, upon which I base my belief, has been provided to me.

_____
Sarah A. Oulton